**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MARBLES HOLDINGS, LLC, et al., | ) | Case No. 17-3309 |
| | ) | (Joint Administration Requested) |
| Debtors. | ) | |
| | ) | Honorable Timothy A. Barnes |
| | ) | |
| | ) | Hearing Date: February 8, 2017 |
| | ) | Hearing Time: 10:00 a.m. |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on Wednesday, February 8, 2017**, at 10:00 a.m.,** we shall appear before the Honorable Timothy A. Barnes of the United States Bankruptcy Court for the Northern District of Illinois, or any other judge sitting in his place and stead, at Courtroom 744 in the Dirksen Federal Building, 219 S. Dearborn Street, Chicago, Illinois, and then and there present the **MOTION FOR ORDERS: (1) AUTHORIZING THE DEBTORS AS DEBTORS-IN-POSSESSION, TO INCUR POST-PETITION SECURED INDEBTEDNESS AND USE CASH COLLATERAL ON AN INTERIM AND FINAL BASIS, (2) GRANTING SECURITY INTERESTS AND PRIORITY CLAIMS PURSUANT TO 11 U.S.C. § 364, (3) GRANTING ADEQUATE PROTECTION, AND (4) SETTING FINAL HEARING**, a copy of which is hereby served upon you.

> HOWARD L. ADELMAN, ESQ. (ARDC #0015458)
> HENRY B. MERENS, ESQ. (ARDC #6181695)
> ERICH S. BUCK, ESQ. (ARDC #6274635)
> ALEXANDER F. BROUGHAM, ESQ. (ARDC #6301515)
> ADELMAN & GETTLEMAN, LTD.
> 53 West Jackson Blvd, Suite 1050
> Chicago, Illinois 60604
> Tel (312) 435-1050
> Fax (312) 435-1059
> **Proposed Counsel for Marbles Holdings, LLC, Marbles LLC, and Marbles Brain Workshop, LLC**

813972

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MARBLES HOLDINGS, LLC, et al., | ) | Case No. 17-3309 |
| | ) | (Joint Administration Requested) |
| Debtors. | ) | |
| | ) | Honorable Timothy A. Barnes |
| | ) | |
| | ) | Hearing Date: February 8, 2017 |
| | ) | Hearing Time: 10:00 a.m. |

**MOTION FOR ORDERS: (1) AUTHORIZING THE DEBTORS AS DEBTORS-IN-POSSESSION, TO INCUR POST-PETITION SECURED INDEBTEDNESS AND USE CASH COLLATERAL ON AN INTERIM AND FINAL BASIS, (2) GRANTING SECURITY INTERESTS AND PRIORITY CLAIMS PURSUANT TO 11 U.S.C. § 364, (3) GRANTING ADEQUATE PROTECTION, AND (4) SETTING FINAL HEARING**

TO:   THE HONORABLE TIMOTHY A. BARNES,
       U.S. BANKRUPTCY JUDGE:

NOW COME Marbles Holdings, LLC, Marbles LLC, and Marbles Brain Workshop, LLC, debtors and debtors in possession (collectively, the "**Debtors**"), by and through their undersigned proposed counsel and, upon their motion (the "**Motion**"): for the entry of orders pursuant to sections 105, 361, 363, 364, 506 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Code**") and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"): (1) authorizing the Debtors to use cash collateral and to incur post-petition secured indebtedness on an interim and final basis; (2) granting security interests and superpriority claims, pursuant to section 364 of the Code; (3) granting adequate protection; and (4) setting a final hearing on the Motion to consider the entry of a Final Financing Order (hereafter defined). In support of the Motion, the Debtors respectfully state as follows:

1

813972

**I.     STATEMENT PERTAINING TO BANKRUPTCY RULE 4001 DISCLOSURES**

This Motion seeks authority for the Debtors to obtain new financing on a revolving basis that will have a maximum borrowing limit of $900,000, will bear interest at 15%, will mature on April 30, 2017, and will be secured by liens on substantially all assets of the Debtors, which liens will be senior to the pre-existing secured debt of the Debtors. In addition, the Motion also seeks authority to allow the Debtors to use cash collateral, if applicable and if needed, and to provide adequate protection to the pre-existing secured lenders whose liens are being primed by the new financing.

For ease of reference, the specific disclosures required for this Motion by Bankruptcy Rule 4001(c)(1)(B) and Local Bankruptcy Rule 4001 are set forth in section IV below on pages 7-10, because the many of the described terms or parties referred to in those disclosures are defined or explained in the preceding sections II and III.

**II.    FACTUAL BACKGROUND**

    **A.    Chapter 11 Case**

1.     On February 3, 2017 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Code. Since the Petition Date, the Debtors have remained in possession of their assets and have continued to operate their businesses as debtors in possession in accordance with 11 U.S.C. §§ 1107(a) and 1108.

2.     Neither a trustee nor a committee of unsecured creditors has been appointed in the Chapter 11 Cases.

3.     The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (D), (K), (M) and (O). The statutory

predicates for the relief requested herein are sections 105, 361, 363, 364, 506 and 507 of the Code.

4. The nature of the Debtors' businesses, the factual background relating to the commencement of the Chapter 11 Cases, and further factual support for this Motion, are set forth in more detail in the *Declaration of Girisha Chandraraj in Support of Chapter 11 Petitions and First-Day Motions* (the "**Declaration**") filed on the Petition Date and incorporated herein by reference.[1]

### B. Financing Prior to the Chapter 11 Cases

5. Prior to the commencement of the Chapter 11 Cases, the Debtors obtained secured loans, advances and other credit accommodations pursuant to the terms and conditions set forth in (i) that certain Loan and Security Agreement between Marbles, LLC, as Borrower and Loan Party, and Marbles Holdings, LLC as Obligor and Siena Lending Group, LLC, predecessor-in-interest to Amzak Capital Management, LLC, dated as of December 29, 2015 ("**December 2015 Loan Agreement**") and all notes, security agreements, mortgages, guarantees, pledges and other agreements related thereto, as further amended, modified and in effect from time to time ("**December 2015 Loan Documents**"); (ii) that certain Loan Agreement between AMPR Marbles Investors, LLC, as lender ("**AMPR**" and together with Amzak, the "**Existing Prepetition Secured Lenders**"), and Marbles Holdings, LLC and Marbles, LLC, dated as of November 6, 2014 ("**November 2014 Loan Agreement**"), and all notes, security agreements mortgages, guarantees, pledges and other agreements related thereto, as further amended, modified and in effect from time to time ("**November 2014 Loan Documents**"); and (iii) that certain Loan Agreement between AMPR, as lender, and Marbles Holdings, LLC and Marbles,

---

[1] Any capitalized terms not otherwise defined in the Motion shall have the same meaning as ascribed in the Declaration.

3

813972

LLC, dated as of February 10, 2016 ("**February 2016 Loan Agreement**," and collectively with December 2015 Loan Agreement and November 2014 Loan Agreement, the "**Existing Prepetition Secured Credit Agreements**") and all notes, security agreements, mortgages, guarantees, pledges and other agreements related thereto, as further amended, modified and in effect from time to time ("**February 2016 Loan Documents**," and collectively with the December 2015 Loan Documents and November 2014 Loan Documents, the "**Existing Prepetition Secured Loan Documents**").

6.    The Debtors are indebted to the Existing Prepetition Secured Lenders in respect of all "Obligations" under the Existing Prepetition Secured Credit Agreements, which as of the Petition Date were in the aggregate outstanding principal amount of approximately $15,518,651.80 million, along with interest, fees and charges accrued and accruing thereon and chargeable with respect thereto (collectively, the "**Existing Prepetition Secured Indebtedness**").

7.    As of the Petition Date, the Existing Prepetition Secured Indebtedness is secured pursuant to the Existing Prepetition Secured Loan Documents by perfected, valid, binding and non-avoidable first priority liens and security interests granted by the Debtors to or for the benefit of Existing Prepetition Secured Lenders upon all of the Collateral (as defined in the Existing Prepetition Secured Loan Documents) existing as of the time immediately prior to the Petition Date, and the postpetition proceeds and products thereof (collectively, together with any other property of, among other things, each Debtor's estate in which a lien or security interest has been granted to or for the benefit of Existing Prepetition Secured Loan Parties immediately prior to the Petition Date, the "**Existing Collateral**").

8.    The Debtors admitted that the Existing Prepetition Secured Loan Documents and Existing Prepetition Secured Indebtedness are valid and enforceable and have waived, and are

4

813972

unaware of, any defenses, set-offs, or counterclaims to the claims of the Existing Prepetition Secured Lenders with respect thereto.

### C. Need for DIP Financing

9. The Debtors require immediate access to interim post-petition financing and use of Cash Collateral pursuant to section 364 of the Code and Bankruptcy Rule 4001. In the absence of this immediate access, the Debtors will be unable to continue operating their business, causing immediate and irreparable loss or damage the Debtors' estates, to the detriment of the Debtors, their estates, creditors and other parties in interest. The Debtors do not have sufficient unrestricted cash and other financing available to operate their business, maintain the estates' properties, and administer the Chapter 11 Cases absent the relief provided in this Motion.

10. The use of Cash Collateral alone would be insufficient to meet the Debtors' post-petition operating needs. Despite good faith efforts, the Debtors are unable to obtain (1) adequate unsecured credit allowable under sections 503(b)(1) or 364(c)(1) of the Code as an ordinary administrative expense, (2) unsecured credit allowable under section 364(a) or (b) of the Code, (3) unsecured credit entitled to priority under section 364(c)(1) of the Code, or (4) adequate secured credit under section 364(c)(2), (c)(3) or (d)(1) from any source other than the DIP Lender (as hereinafter defined) that would be sufficient to enable Debtors to continue their business operations. The only feasible source of secured credit available to the Debtors is the "DIP Financing" (as hereinafter defined). The Debtors require the DIP Financing to satisfy their immediate critical post-petition liquidity needs.

## III. RELIEF REQUESTED

### A. Interim DIP Financing[2]

---

[2] The DIP Financing shall be governed by the DIP Promissory Note and DIP Credit Agreement (collectively, the "**DIP Facility Loan Documents**"). In the event of any inconsistency between the DIP Facility Loan Documents and the Interim Financing Order, the Interim Financing Order will control.

5

813972

11. By this Motion, the Debtors request the entry of an interim order in the form of **Exhibit A** attached hereto, (the "**Interim Financing Order**"), approving the agreement of Amzak Capital Management, LLC ("**DIP Lender**") to advance post-petition funds, on a revolving basis, to the Debtors in the aggregate amount outstanding at any one time of up to $900,000 (the "**DIP Financing**"), pursuant to the terms of that certain Promissory Note dated as of _____, 2017 (the "**DIP Promissory Note**") and related Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement dated as of _____, 2017 (as the same now exists or may hereafter be amended, modified, ratified, extended, renewed, restated or replaced, subject to the limitations in the Interim Financing Order, the "**DIP Credit Agreement**"), copies of which are substantially in the form of that which is attached hereto as **Exhibit B**, and to allow the Debtor to use the DIP Financing and/or any cash collateral pursuant to the budget attached hereto as **Exhibit C** (the "**Initial Approved Budget**"), from the date of the Interim Financing Order through the date of the entry of a Final Financing Order (as hereafter defined), as more fully set forth in the Interim Financing Order (the "**Interim Financing Period**").

    **B.**    **DIP Financing Beyond the Interim Financing Period**

12. The Debtor further requests the entry of a final order (the "**Final Financing Order**") in form and substance acceptable to the Debtors and the DIP Lender, authorizing continued borrowing by the Debtors through April 30, 2017, to be considered at a final hearing to be scheduled by the Court.

    **C.**    **Budget for DIP Financing**

13. The Initial Approved Budget sets forth all projected cash receipts, sales and cash disbursements (by line item) on a weekly basis for the time period from and including the week ending February 9, 2017 through the week ending February 23, 2017. The Initial Approved

813972

Budget may be modified or supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) to which the DIP Lender and the Debtors agree in their respective discretion (the "**Subsequent Approved Budgets**").

### D. Negotiations in Good Faith

14. The DIP Lender and the Debtors conducted lengthy, good faith negotiations with respect to the terms and conditions of the Interim Financing Order and the Initial Approved Budget.

### E. Final Hearing

15. The Debtors further request that the Court set a final hearing on the Motion pursuant to Rule 4001(c)(2) of the Bankruptcy Rules, to consider the entry of the Final Financing Order.

## IV. FED. R. BANKR. PROC. 4001(c)(1)(B) AND L.R. 4001-2 DISCLOSURES[3]

16. The following disclosures are made pursuant to Bankruptcy Rule 4001(c)(1)(B) with respect to the terms of the DIP Financing and/or the impact of the relief sought by this Motion:

>   a. <u>Material Repayment Terms of DIP Financing</u>. The borrowing limit under the DIP Financing is $900,000, however, during the Interim Financing Period, the borrowing limit shall be $800,000. **Interim Financing Order ¶¶ a, 2.** The DIP Financing, absent a default, will bear interest at 15%, and the default rate is the rate otherwise in effect plus 4%. **DIP Credit Agreement §§2.05 & 2.06**. The Maturity Date for the DIP Financing is April 30, 2017, unless sooner terminated as a result of certain enumerated events of default arising under the DIP Credit Agreement. **DIP Credit Agreement §§2.01(b) & 7.** The DIP Financing shall be repaid through all cash receipts and the net proceeds of section 363 sales being conducted in these Chapter 11 Cases. **DIP Credit Agreement §§2.03 & 2.04**.

---

[3] References herein to the terms of the DIP Financing or the Interim Financing Order are merely a summary, and to the extent of any conflict between the summaries contained herein and the DIP Facility Loan Documents or the Interim Financing Order, those latter documents shall control.

7

813972

  b. <u>Grant of Priority or Liens under §364 for DIP Financing</u>. The DIP Lender will receive post-petition priming liens and security interests (the "**Post-Petition Liens**") on substantially all of the assets and properties of the Debtors but expressly excluding avoidance actions arising under sections 544, 545, 547, 548, 549, 550, 552(b) and 553 of the Code (the "**Avoidance Actions**") and the proceeds thereof (the "**Avoidance Action Proceeds**") to secure the DIP Financing (collectively, the "**DIP Collateral**"). **Interim Financing Order, ¶¶7-8**. The Post-Petition Liens are subject to the Carve-Out (hereafter defined), the Wind-Down Expenses (hereafter defined), and certain prior perfected liens, but superior to the Existing Liens by agreement of the Existing Prepetition Secured Lenders. **Interim Financing Order, ¶¶E(v),7,8.** All obligations under the DIP Financing shall also constitute allowed super-priority claims under section 364(c)(1) of the Code, but shall not be payable from Avoidance Actions or Avoidance Action Proceeds, and shall be subordinate to (i) the carve-out for professional fees, court costs, and budgeted expenses as defined in paragraph 22 of the Interim Financing Order (the "**Carve-Out**") and the Wind-Down Expenses as defined in paragraph 22 of the Interim Financing Order (the "**Wind-Down Expenses**"). **Interim Financing Order, ¶6**.

  c. <u>Adequate Protection or Priority for Existing Lien</u>. As adequate protection for the Existing Liens, the Existing Prepetition Secured Lenders are granted (i) a replacement lien in the Existing Collateral (excluding Avoidance Actions, Avoidance Action Proceeds, the Carve-Out, and the Wind-Down Expenses) to secure the diminution in the value of the Existing Collateral and (ii) the reimbursement of all reasonable and documented fees and expenses incurred by their professionals (the "**Adequate Protection Liens**"). **Interim Financing Order, ¶¶21,22.** The Existing Collateral is subordinate to the Carve-Out and Wind-Down Expenses. **Id.**

  d. <u>Validity of Existing Prepetition Secured Indebtedness and Existing Collateral</u>. The Debtors stipulate to the validity of the Existing Prepetition Secured Indebtedness and to the validity and first priority of the liens in the Existing Collateral to secure such debt, subject, however, to the Post-Petition Liens granted to the DIP Lender. **Interim Financing Order, ¶ [E]**.

  e. <u>No Automatic Stay Waiver</u>. The Interim Financing Order does not provide for the modification of the automatic stay.

  f. <u>No Other Certain Waivers</u>. The Motion does not seek relief to waive the Debtor's exclusive period to file a plan, or the right to request other use of cash collateral or new credit, except however, the pursuit of the latter may constitute a default under the DIP Financing.

  g. <u>No Plan of Reorganization Deadlines</u>. The Motion does not seek relief to establish deadlines for filing a plan or disclosure statement.

  h. <u>Certain Waivers in Interim Financing Order</u>. The Interim Financing Order waives certain perfection requirements that may exist under applicable non-bankruptcy law

pertaining to the priority, perfection and/or validity of the Post-Petition Liens and the lien on the Existing Collateral. **Interim Financing Order, ¶ 10**. To the extent permitted under any applicable law, the Interim Financing Order eliminates restrictions against assignment that may exist under any of the Debtors' agreements that may impair the Debtors' ability to grant liens in any of the DIP Collateral to the DIP Lender. **Interim Financing Order, ¶ 11**.

i. <u>Deadlines to Challenge Existing Indebtedness or Liens</u>. The ability to challenge the validity, perfection and amount of the liens or claims of the Existing Prepetition Secured Lenders or to otherwise assert any claims against such parties shall be forever discharged and released if such challenge is not initiated by a creditors' committee within 60 days of formation of such committee, or by any party-in-interest within 75 days from entry of the Interim Financing Order. **Interim Financing Order, ¶23**.

j. <u>Indemnification of DIP Lender</u>. Under the DIP Credit Agreement, the Debtors indemnify the DIP Lender for certain claims that may be brought that arise out of or relate to the DIP Financing. **DIP Credit Agreement §10.05**.

k. <u>§506(c) Waiver</u>. The Interim Financing Order provides that upon entry of the Final Financing Order, the estates shall waive any rights under 11 U.S.C. § 506(c) with respect to the DIP Lender, the DIP Collateral, the Existing Prepetition Secured Lenders, and the Existing Collateral, except with respect to the Carve-Out and Wind-Down Expenses. **Interim Financing Order, ¶9.**

l. <u>No Liens on Avoidance Actions</u>. The Interim Financing Order does not grant the DIP Lender or the Existing Prepetition Secured Lenders liens on Avoidance Actions. **Interim Financing Order, ¶7,8,21**.

17. To the extent not otherwise already disclosed herein, the following are additional disclosures required by Local Bankruptcy Rule 4001-2(A)(2) of certain terms contained in the Interim Financing Order or the DIP Credit Agreement:

a. <u>No Cross-collateralization</u>. The Interim Financing Order does not contain any provisions that grant cross-collateralization protection to the Existing Prepetition Secured Lenders, except as may be identified in paragraph 16(c) above.

b. <u>No Roll-ups</u>. The Interim Financing Order does not deem the Existing Prepetition Secured Indebtedness to be post-petition debt or use the DIP Financing to pay part or all of the Existing Prepetition Secured Indebtedness, other than as provided in 11 U.S.C. § 552(b) or as identified in paragraph 16(c) above.

c. <u>Carve-Out and Wind-Down Expense Limitations</u>. The Interim Financing Order does not provide for different treatment of professionals relative to one another or limit a committee counsel's use of a professional fee carve-out, except that no portion of the DIP

9

813972

Financing, the DIP Collateral, the Existing Collateral, Cash Collateral, the Carve-Out, or the Wind-Down Expenses, and no disbursements set forth in the Initial Approved Budget or in the subsequently approved budgets, shall be used for the payment of professional fees, disbursements, costs or expenses incurred in connection with (i) the assertion of any claim against the DIP Lender or the Existing Prepetition Secured Lenders, or (ii) a request to use cash collateral or obtain other financing pursuant to §364(c) or (d) without prior consent of the DIP Lender or Existing Prepetition Secured Lenders . **Interim Financing Order, ¶22**.

d. Non-consensual priming liens. The Interim Financing Order does not prime any secured lien without the consent of that lienor. **Interim Financing Order, ¶ 7**.

e. No Lender Liability Declaration. The Interim Financing Order does not contain a declaration that it does not impose lender liability on any secured creditor, including the DIP Lender.

f. Joint and Several Liability of Debtors. The Interim Financing Order provides for, or acknowledges existing, joint and several liability on the Debtors' outstanding loans with Existing Prepetition Secured Lenders for the Existing Prepetition Secured Indebtedness and with the DIP Lender for the DIP Financing. **Interim Financing Order, ¶¶E,5**.

18. Pursuant to Local Bankruptcy Rule 4001-(2)(A)(3) and (A)(4), and to the extent not otherwise described herein, the following is a summary of other essential provisions of the Interim Financing Order:

a. Use of DIP Financing and the Budget - The proceeds of the DIP Financing shall be used exclusively for the expenditures set forth in the Initial Approved Budget attached hereto as Exhibit C, and is subject to a line item variance of 15% and an aggregate variance of 10%. **Interim Financing Order, ¶4**.

b. Release Upon Payment in Full. The Interim Financing Order provides that upon payment in full of the DIP Financing, the Debtors and their estates shall release the DIP Lender from all obligations relating to the DIP Financing and the Interim Financing Order. **Interim Financing Order, ¶ 15**.

c. Cross-Default Affecting Use of Cash Collateral. The Interim Financing Order provides that the Existing Prepetition Secured Lenders may terminate the Debtors' use of cash collateral under various circumstances identified therein including, without limitation, a default under the DIP Financing. **Interim Financing Order, ¶ 20**.

V. **APPLICABLE AUTHORITY AND JUSTIFICATION FOR RELIEF REQUESTED**

10

813972

19. If a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Code, then the court, after notice and a hearing, may authorize the Debtor to obtain credit or incur debt:

> (i) with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Code;
>
> (ii) secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (iii) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

20. Further, if a debtor is unable to obtain credit otherwise, the debtor may obtain credit secured by a senior or equal lien on property of the estate that is already subject to a lien, commonly called a "priming lien." 11 U.S.C. § 364(d).

21. Rule 4001(c)(2) of the Bankruptcy Rules governs the procedures for obtaining authorization to obtain post-petition financing and provides, in relevant part:

> The court may commence a final hearing on a motion for authority to obtain credit no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 14 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed. R. Bankr. P. 4001(c). Accordingly, the Court is authorized to grant the relief requested herein.

22. The terms and provisions of the DIP Financing have been negotiated at arms' length and in good faith. In addition, the terms and provisions of the DIP Financing are fair and reasonable under the circumstances and reflect the most favorable terms upon which the Debtors could obtain the needed post-petition financing.

11

23.     As is described in the Declaration, the Debtors, having determined that financing was available only under section 364(c) and (d) of the Code, negotiated the DIP Financing pursuant to their business judgment.  Provided that this judgment does not run afoul of the provisions of and policies underlying the Code, courts grant a debtor considerable deference in acting in accordance with its business judgment.  *See In re AMR Corp.*, 485 B.R. 279, 287 (Bankr. S.D.N.Y. 2013) ("In determining whether to approve a debtor's request under section 364, a Court must examine whether the relief requested is an appropriate exercise of the debtor's business judgment."); *see, e.g., In re UAL Corp.*, No. 02-B-48191, 2002 WL 34344253 (Bankr. N.D. Ill. Dec. 11, 2002); *cf. In re Olde Prairie Block Owner, LLC*, 448 B.R. 482, 492 (Bankr. N.D. Ill. 2011) (observing that section 364 does not impose a specific standard, but due to the eventual need to use borrowed funds under section 363 of the Code, the debtor must provide an "articulated business justification") (internal citation omitted).

24.     As is described in the Declaration, the DIP Financing provides significant additional liquidity to the Debtors and thus will enable the Debtors, among other things, to (a) maintain the continuity of its operations, and (b) maximize the value of its businesses and properties.  Such financing is the sole means of preserving and enhancing the Debtor as a going concern.

25.     Accordingly, the Debtors believe that the approval of the DIP Financing is in the best interests of its estate, its creditors and all parties-in-interest, and that the Court should therefore approve the Interim Financing Order and schedule a final hearing to consider the entry of the Final Financing Order.  Moreover, for the reasons hereinabove stated, the DIP Lender should be accorded the benefits inuring under section 364 of the Code.

C.     **NOTICE OF THE MOTION**

26. Notice of the filing of this Motion and the hearing scheduled therefor has been provided by CM/ECF, overnight delivery, and/or facsimile to: (a) the Office of the United States Trustee for the Northern District of Illinois; (b) each of the Debtors' 20 largest unsecured creditors pursuant to Federal Rule of Bankruptcy Procedure 1007(d); (c) respective counsel to the Debtors' secured lenders, Amzak Capital Management, LLC and AMPR Marbles Investors, LLC; (d) the Debtors' depositary institution, JPMorgan Chase; and (e) all other parties who have requested notice and service of pleadings via the Court's CM/ECF system in any of the Chapter 11 Cases. In light of the nature of the limited, emergent relief requested, the Debtors submit that no other or further notice is required.

**WHEREFORE**, the Debtors respectfully request that the Court authorize the DIP Financing on an interim basis, enter the Interim Financing Order attached hereto, set a final hearing to consider the entry of the Final Financing Order, and grant such other and further relief as is just and proper, consistent with the terms hereof.

Respectfully Submitted,

MARBLES HOLDINGS, LLC, MARBLES LLC,
and MARBLES BRAIN WORKSHOP, LLC

By: /s/ Henry B. Merens
  One of their proposed attorneys

HOWARD L. ADELMAN, ESQ. (ARDC #0015458)
HENRY B. MERENS, ESQ. (ARDC #6181695)
ERICH S. BUCK, ESQ. (ARDC #6274635)
ALEXANDER F. BROUGHAM, ESQ. (ARDC #6301515)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd, Suite 1050
Chicago, Illinois 60604
Tel (312) 435-1050
Fax (312) 435-1059
**Proposed Counsel for the Debtors**

813972