## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MARBLES HOLDINGS, LLC, et al.,[1] | ) | Case No. 17-3309 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Honorable Timothy A. Barnes |
| _____ | ) | |

### JOINT LIQUIDATING PLAN

TO:   THE HONORABLE TIMOTHY A. BARNES,
        U.S. BANKRUPTCY JUDGE:

### INTRODUCTION[2]

MARBLES HOLDINGS, LLC, MARBLES LLC, and MARBLES BRAIN WORKSHOP, LLC, debtors and debtors in possession, and the OFFICIAL COMMITTEE OF UNSECURED CREDITORS hereby propose this Plan pursuant to the provisions of Chapter 11 of the Bankruptcy Code. Reference is made to the accompanying Disclosure Statement and exhibits thereto for a discussion of the Debtors' history, business, results of operations and properties, the post-petition liquidation of substantially all of the Debtors' assets, a summary of the assets and liabilities of the Debtors, a summary of what creditors and Equity Interest holders can expect to receive under the Plan, a summary of the procedures and voting requirements necessary for confirmation of the Plan, a discussion of certain alternatives to the Plan in the event that the Plan is not confirmed, and related information. All holders of Claims and Equity Interests should read the Disclosure Statement and the Plan carefully – and consult with their counsel and other applicable professionals – before voting to accept or reject the Plan.

As more fully described in the Disclosure Statement, the Plan must be approved by the requisite number of creditors, and the Bankruptcy Court must find that the Plan meets the applicable legal standards before it can be confirmed. If the Plan is not confirmed, the Bankruptcy Court may order the Chapter 11 Cases dismissed, or converted to liquidating cases under Chapter 7 of the Bankruptcy Code, or the Debtors or other parties in interest may propose a different plan.

The Plan proposes to substantively consolidate the Debtors' estates solely for purposes of distributions under the Plan (and not for voting purposes), and to vest all of the assets of the

---

[1] The debtors in these Chapter 11 cases, along with the last four digits of each debtor's federal taxpayer identification number, are (i) Marbles Holdings, LLC (9547); Marbles LLC (3081); and Marbles Brain Workshop, LLC (0303).

[2] Any capitalized terms used herein without a corresponding meaning after their initial use shall mean and refer to the definitions of such capitalized terms provided in Article I of this Plan.

consolidated Debtors into a single estate for distribution in accordance with the Plan, as explained in more detail in Section 8.01.

## RULES OF INTERPRETATION AND COMPUTATION OF TIME

For purposes of the Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or schedule, filed or to be filed, means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to the Plan; (d) any reference to an entity as a holder of a Claim or Equity Interest includes that entity's successors and assigns; (e) all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (f) the words "herein," "hereunder," "hereto," and others of similar import refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (h) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules (as defined below) will apply; (i) in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply; and (j) the word "including" shall not be deemed to be exclusive and shall mean "including without limitation."

## ARTICLE I

## DEFINITIONS

The definitions and rules of construction set forth in the Rules and sections 101 and 102 of the Bankruptcy Code shall apply when the terms defined or construed therein are used in the Plan. Said definitions and rules of construction shall be supplemented by the following definitions:

1.01   **503(b)(9) Claims** shall mean those Claims arising under section 503(b)(9) of the Bankruptcy Code.

1.02   **503(b)(9) Funds** shall mean $12,000 of Estate Funds dedicated to payment of any 503(b)(9) Claims, or such lesser amount sufficient to satisfy all filed 503(b)(9) Claims in full.

1.03   **2017 Tax Return Fee** shall mean $24,000 from the DIP Budget specifically earmarked for payment to the Debtors' accountant, RSM US LLP, for preparation of the Debtors' 2017 tax returns.

1.04   **A&G** shall mean Adelman & Gettleman, Ltd., the Debtors' bankruptcy counsel in the Chapter 11 Cases.

1.05   **Administrative Expense Bar Date** shall mean thirty (30) days following the Confirmation Date, the deadline by which requests for payment of (a) any Professional Fee

2

Claims arising prior to the Effective Date, and (b) any other Administrative Expense Claims arising after August 4, 2017 but prior to the Effective Date, must be filed in the Chapter 11 Cases.

**1.06     Administrative Expense Claim** shall mean any cost, claim or expense of administration of the Chapter 11 Cases entitled to priority in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Estates including, without limitation, all Professional Fee Claims to the extent Allowed by the Bankruptcy Court against the Estates under sections 330, 331 and 503 of the Bankruptcy Code, and including fees due the United States Trustee assessed against the Estates pursuant to 28 U.S.C. § 1930(a)(6).

**1.07     Administrative Expense Reserve Funds** shall mean a sufficient reserve of Estate Funds to pay any (a) accrued but unpaid U.S. Trustee Fees through the Effective Date and (b) accrued but unpaid Administrative Expenses Claims actually budgeted under the DIP Budget, including any Professional Fee Claim(s) of the Debtors' counsel and the CPO Fee Claim.

**1.08     Allowed** or **Allowed Claim** shall mean a Claim or any portion thereof (1) that has been allowed by a final and non-appealable order of the Bankruptcy Court, (2) that has been scheduled as a liquidated, non-contingent and undisputed Claim in an amount greater than zero in the Schedules for which no conflicting proof of claim has been filed and as to which no objection has been filed, or (3) that is the subject of a timely filed proof of claim that has been expressly allowed in a liquidated amount (x) in the Plan, (y) by final and non-appealable order of the Bankruptcy Court, or (z) after the Effective Date, by the Creditor Trustee in writing. Except as otherwise provided in the Plan or by order of the Bankruptcy Court, "Allowed" and "Allowed Claim" shall not include interest, fees, costs or charges on such Claim from and after the Petition Date, except as provided in section 506(b) of the Bankruptcy Code or as otherwise expressly set forth in the Plan.

**1.09     Amzak** shall mean Amzak Capital Management, LLC, the Debtors' former pre- and postpetition secured lender (and assignor of such debt to Spin Master), and an indirect Equity Interest holder in Holdings through its ownership interest in AMPR.

**1.10     AMPR** shall mean AMPR Marbles Investors, LLC, an Equity Interest holder in Holdings.

**1.11     Ballots** shall mean the ballots mailed to holders of Class 3 General Unsecured Claims for voting on whether to accept or reject the Plan.

**1.12     Bankruptcy Code** shall mean title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*

**1.13     Bankruptcy Court** shall mean the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, or any court vested with jurisdiction over the Chapter 11 Cases.

**1.14     Bankruptcy Rules** shall mean the Federal Rules of Bankruptcy Procedure, as amended and supplemented by the Local Rules adopted by the Bankruptcy Court.

**1.15** **Bar Dates** shall mean the General Bar Date and the Governmental Unit Bar Date.

**1.16** **Chapter 11 Cases** shall mean the chapter 11 cases commenced under Chapter 11 of the Bankruptcy Code by the Debtors on the Petition Date, styled *In re Marbles LLC*, Case No. 17-3308; *In re Marbles Holdings, LLC*, Case No. 17-3309; and *In re Marbles Brain Workshop, LLC*, Case No. 17-3310, jointly administered under Case No. 17-3309, all currently pending in the Bankruptcy Court.

**1.17** **Claim(s)** shall mean a claim (as defined in section 101(5) of the Bankruptcy Code) against one or more of the Debtors, including, but not limited to: (a) any right to payment from the Debtors whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from the Debtors, whether or not such right is reduced to judgment, fixed, contingent, mature, unmatured, disputed, undisputed, secured or unsecured.

**1.18** **Claims Objection Deadline** shall mean the date by which the Creditor Trustee must file and serve any objections to 503(b)(9) Claims, Priority Claims or General Unsecured Claims, which date is one hundred eighty (180) days after the Effective Date, or as extended by order of the Bankruptcy Court.

**1.19** **Claims Register** shall mean the register of all Claims filed in the Chapter 11 Cases and maintained by the Debtors' court approved noticing, claims and solicitation agent, GCG.

**1.20** **Class** shall mean any group or category into which holders of Claims or Equity Interests are classified pursuant to Article II.

**1.21** **Collateral** shall mean any property or interest in property of the Estates subject to a lien, security interest, or other encumbrance to secure the payment or performance of a claim, which lien, security interest or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state or federal law.

**1.22** **Committee** shall mean the official committee of unsecured creditors appointed in the Chapter 11 Cases on February 13, 2017 [Docket No. 72].

**1.23** **Committee Members** shall mean those persons appointed by the Office of the United States Trustee to serve as members of the Committee.

**1.24** **Committee Professional Fee Allocation** shall mean cash in the amount of $300,000 from Spin Master held in trust by PSZJ for the payment of any Allowed fees and expenses incurred by the Committee Professionals and expenses of Committee Members in the Chapter 11 Cases. The Committee Professional Fee Allocation, along with any unused portion of the Priority Claims Reserve, is a maximum limit (*i.e.*, a cap) on the fees and expenses of the Committee Professionals and expenses of Committee Members in the Chapter 11 Cases.

**1.25** **Committee Professionals** shall mean Professional Persons retained by the Committee.

4

**1.26** **Confirmation Date** shall mean the date on which the Bankruptcy Court enters the Confirmation Order.

**1.27** **Confirmation Hearing** shall mean August 30, 2017 at 11:00 a.m. (Central Time), the date and time of the hearing on the adequacy of the Disclosure Statement and confirmation of the Plan.

**1.28** **Confirmation Order** shall mean the Final Order that the Bankruptcy Court enters pursuant to section 1129 of the Bankruptcy Code confirming the Plan and approving the transactions contemplated therein, in accordance with Section 11.01.

**1.29** **CPO** shall mean the consumer privacy ombudsman appointed by the U.S. Trustee in the Chapter 11 Cases on or about April 7, 2017, tasked, in accordance with section 332 of the Bankruptcy Code, with evaluating the Debtors' applicable privacy policies governing the Debtors' customer data.

**1.30** **CPO Fee Claim** shall mean the fees and expenses incurred by the CPO in the Chapter 11 Cases.

**1.31** **Creditor Trust** shall mean the entity established pursuant to the Plan, the Creditor Trust Agreement and the Confirmation Order for the sole and exclusive benefit of the Creditor Trust Beneficiaries. The Creditor Trust shall liquidate and distribute the Creditor Trust Assets in accordance with the Creditor Trust Agreement and the Plan.

**1.32** **Creditor Trust Account(s)** shall mean one or more segregated interest-bearing trust fund accounts established by the Creditor Trustee at a federally insured depository bank(s).

**1.33** **Creditor Trust Agreement** shall mean the agreement to be executed as soon as reasonably practicable after the Confirmation Date, in a form substantially similar to the Creditor Trust Agreement attached hereto as Exhibit A, among the Debtors and the Creditor Trustee, which shall govern the obligations of the Creditor Trustee with respect to the Creditor Trust Assets.

**1.34** **Creditor Trust Assets** shall mean (a) the Creditor Trust Funds, (b) the Creditor Trust Causes of Action, (c) the Debtors' books and records pertaining to the Creditor Trust Causes of Action, (d) and all attorney-client privileges of the Debtors existing as of the Effective Date.

**1.35** **Creditor Trust Beneficiaries** shall mean the holders of Allowed Unbudgeted Expense Claims, Allowed 503(b)(9) Claims, Allowed Priority Claims, and Allowed General Unsecured Claims entitled to share in the Creditor Trust Assets.

**1.36** **Creditor Trust Causes of Action** shall mean any and all interests of the Debtors in (a) claims and causes of action arising under Chapter 5 of the Bankruptcy Code or their state law analogs, including preference and fraudulent transfer claims, (b) commercial tort claims, and (c) rights and defenses of setoff and recoupment with respect to the foregoing claims and causes of action, but excluding any claims or causes of action against the DIP Lender, AMPR or Amzak.

**1.37** **Creditor Trust Expenses** shall mean the reasonable fees and expenses incurred by the Creditor Trust and any professionals retained by the Creditor Trustee from the Creditor Trust Assets and any other administrative expenses and costs of the Creditor Trust, including bank fees, accountants and U.S. Trustee Fees.

**1.38** **Creditor Trust Funds** shall mean the Priority Claim Reserve Funds, the Plan Reserve Funds and the 503(b)(9) Funds.

**1.39** **Creditor Trust Interests** shall mean the non-transferable interests in the Creditor Trust that are issued to Creditor Trust Beneficiaries pursuant to the Plan.

**1.40** **Creditor Trustee** shall mean such person or entity, including any replacements thereof or successors thereto, as may be designated by the Committee, to serve as a custodian for the Creditor Trust and to oversee the liquidation and distribution of the Creditor Trust Assets held therein pursuant to sections 1123 and 1129 of the Bankruptcy Code, and further subject to the provisions of Article IX and the Creditor Trust Agreement. Any person or entity serving as the Creditor Trustee shall be a "disinterested person" under section 101(14) of the Bankruptcy Code.

**1.41** **Debtors** shall mean Marbles Holdings, LLC, Marbles, LLC, and Marbles Brain Workshop, LLC, debtors and debtors in possession, and each, a "**Debtor**."

**1.42** **DIP Budget** shall mean the Debtors' second amended budget [ECF No. 321], as may be amended from time to time, to the DIP Financing Order.

**1.43** **DIP Financing Order** shall mean the *Final Order (I) Authorizing the Debtors to Obtain Secured Postpetition Financing on a Super-Priority and Priming Lien Basis, (II) Authorizing the Debtors to Use Cash Collateral of Existing Prepetition Secured Lenders and Granting Related Adequate Protection* [ECF No. 210].

**1.44** **DIP Lender** shall mean Spin Master, Ltd. the Debtors' pre- and postpetition secured lender by assignment in the Chapter 11 Cases.

**1.45** **Disallowed** or **Disallowed Claim** shall mean (a) a Claim, or any portion thereof, that has been disallowed by a Final Order or by other agreement of a holder of a Claim; (b) a Claim that has been listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, a Final Order, or other applicable law; or (c) a Claim that has not been listed in the Schedules and as to which no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, a Final Order, or other applicable law.

**1.46** **Disclosure Statement** shall mean that certain Disclosure Statement submitted by the Plan Proponents in connection with the Plan.

**1.47** **Disputed** or **Disputed Claim** shall mean any Claim or portion thereof for which an objection has been filed prior to the Claims Objection Deadline.

6

**1.48**    **Disputed Claim Reserve(s)** shall mean such reserve or reserves of Creditor Trust Funds or proceeds of Creditor Trust Assets, as the case may be, established in the discretion of the Creditor Trustee for payment of any Disputed Claims in the event such Claims are ultimately Allowed.

**1.49**    **Disputed Ownership Fund** shall mean a "disputed ownership fund" within the meaning of Treasury Regulation section 1.468B-9.

**1.50**    **Distribution Dates** shall mean those dates upon which the Creditor Trustee shall make the distributions to holders of Allowed Claims described in Article IX.

**1.51**    **Effective Date** shall mean the later of: (a) thirty (30) calendar days from entry of the Confirmation Order; or (b) the date on which the Confirmation Order shall have become a Final Order, in accordance with Section 11.02.

**1.52**    **ELM** shall mean ELM Enterprises d/b/a Sign Innovation.

**1.53**    **Equity Interest** shall mean any equity interest in any Debtor, including, but not limited to, all issued, unissued, authorized or outstanding shares of stock in any limited liability company membership interests, together with any warrants, options or contract rights to purchase or acquire such interests at any time.

**1.54**    **Estate Funds** shall mean all of the Debtors' cash on deposit at its depository institution, JPMorgan Chase Bank.

**1.55**    **Estates** shall mean all property of the Debtors' estates, as defined in section 541 of the Bankruptcy Code.

**1.56**    **Final Order** shall mean an order of the Bankruptcy Court, as to which the time to appeal, petition for certiorari or motion for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue or rehear shall have been waived in writing in form and substance satisfactory to the Creditor Trustee or, in the event that an appeal, writ of certiorari or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari or motion for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Rules, may be filed with respect to such order shall not preclude such order from being a Final Order.

**1.57**    **GCG** shall mean Garden City Group, LLC, the Debtors' noticing, claims and solicitation agent in the Chapter 11 Cases.

**1.58**    **General Bar Date** shall mean May 30, 2017, the last day to file proofs of claims in the Chapter 11 Cases for pre-Petition Date Claims of non-Governmental Units against the Debtors.

**1.59**   **General Unsecured Claim** shall mean any Claim of a creditor not secured by a lien, security interest or other encumbrance on property of the Estates, arising prior to the Petition Date, that is not a Secured Claim, Administrative Expense Claim, Priority Claim, or Equity Interest.

**1.60**   **Governmental Unit** shall mean a "governmental unit" as defined under section 101(27) of the Bankruptcy Code.

**1.61**   **Governmental Unit Bar Date** shall mean shall mean August 2, 2017, the last day to file proofs of claims in the Chapter 11 Cases for pre-Petition Date Claims of Governmental Units against the Debtors.

**1.62**   **Holdings** shall mean Marbles Holdings, LLC, a Delaware limited liability company, debtor and debtor in possession.

**1.63**   **Impaired** shall mean with respect to a Claim or Class of Claims, a Claim or Class of Claims that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.64**   **IP Assets** shall mean the Debtors' intellectual intangible property and such other assets that were central to the Debtors' business, including trademarks, domain names, proprietary toys and games, and customer data; certain inventory; certain fixed assets in the Debtors' headquarters and leased warehouse; certain books and records; rights in executory contracts and unexpired leases; and other assets pertaining to the Debtors' retail, e-commerce and wholesale businesses.

**1.65**   **KTR** shall mean KTR Illinois LLC, the landlord of the warehouse the Debtors leased in Schiller Park, Illinois prior to and during the Chapter 11 Cases.

**1.66**   **Lease Rejection Orders** shall mean the orders entered by the Bankruptcy Court on February 28, 2017 [ECF No. 154] and March 28, 2017 [ECF No. 197], respectively, authorizing and approving the Debtors' rejection of the Debtors' leases of the Retail Stores pursuant to section 365 of the Bankruptcy Code.

**1.67**   **M Blocker** shall mean M Blocker Corporation, an Equity Interest holder in Marbles.

**1.68**   **M Coy** shall mean M Coy Group, LLC.

**1.69**   **Marbles** shall mean Marbles LLC, an Illinois limited liability company, debtor and debtor in possession.

**1.70**   **NOW** shall mean NOW Express, Inc., an affiliate of RIM and the owner of a warehouse in Roselle, Illinois in which the Debtors stored inventory prior to and during the Chapter 11 Cases.

**1.71**   **Objection Deadline** shall mean August 25, 2017 at 5 p.m. (Central Time), the deadline for filing any objections to the Disclosure Statement or the Plan.

**1.72**   **Petition Date** shall mean February 3, 2017.

**1.73**   **Plan** shall mean this Joint Liquidating Plan, as amended in accordance with the terms hereof or modified in accordance with the Bankruptcy Code.

**1.74**   **Plan Proponents** shall mean the Debtors and the Committee.

**1.75**   **Plan Reserve Funds** shall mean cash of approximately $248,980 provided by Spin Master for the benefit of Creditor Trust Expenses, Unbudgeted Expense Claims, Priority Claims, and General Unsecured Claims.

**1.76**   **Priority Claim Reserve Funds** shall mean cash in the amount of up to $100,000 specifically earmarked for payment of Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims, of which the first $50,000 are Estate Funds contributed by Spin Master with the second $50,000 currently being held in trust by PSZJ.

**1.77**   **Priority Claims** shall mean Priority Tax Claims and Priority Non-Tax Claims.

**1.78**   **Priority Non-Tax Claims** shall mean those Claims entitled to priority under section 507 of the Bankruptcy Code, including section 507(a)(4), (5) and (7) but excluding section 507(a)(2) and (8).

**1.79**   **Priority Tax Claims** shall mean those Claims held by a "governmental unit", as defined in section 101(27) of the Bankruptcy Code, which are entitled to priority under section 507(a)(8) of the Bankruptcy Code.

**1.80**   **Professional Fee Claims** shall mean Administrative Expense Claims held by Professional Persons.

**1.81**   **Professional Persons** shall mean persons retained or to be compensated in the Chapter 11 Cases pursuant to sections 327, 328, 330, 331, and 503(b) of the Bankruptcy Code.

**1.82**   **Pro Rata** shall mean the proportion that the amount of a General Unsecured Claim in Class 3 bears to the aggregate amount of all Claims of such Class, inclusive of any subclasses thereof (including Disputed Claims until Disallowed).

**1.83**   **PSZJ** shall mean Pachulski Stang Ziehl & Jones LLP, primary counsel to the Committee in the Chapter 11 Cases.

**1.84**   **Remaining Estate Assets** shall mean all assets of the Debtors other than the Estate Funds, the Priority Claim Reserve Funds, the Plan Reserve Funds, the Committee Professional Fee Allocation and the Creditor Trust Causes of Action.

**1.85**   **Retail Stores** shall mean the thirty-seven (37) retail stores the Debtors leased and operated in thirteen (13) states as of the Petition Date.

**1.86    RIM** shall mean RIM Logistics, Ltd., an affiliate of NOW and the Debtors' broker or agent to clear inventory through United States customs prior to and during the Chapter 11 Cases.

**1.87    Schedules** shall mean, individually or collectively, as the case may be, the Debtors' Bankruptcy Schedules (as amended) on file in the Chapter 11 Cases.

**1.88    Secured Claim** shall mean a Claim that is secured by a valid, perfected and enforceable, and non-avoidable lien, security interest or encumbrance upon Collateral, to the extent of the value, as of the Effective Date, of such lien, security interest or encumbrance as determined by a Final Order, or as otherwise agreed to in writing by the Debtors and the holder of such Claim.

**1.89    Spin Master** shall mean Spin Master, Ltd.

**1.90    Unbudgeted Expense Claim** shall mean an Administrative Expense Claim that is not provided for in the DIP Budget.

**1.91    Unimpaired** shall mean with respect to a Claim or Class of Claims, a Claim or Class of Claims that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

**1.92    U.S. Trustee Fees** shall mean fees due to the U.S. Trustee's office under 28 U.S.C. § 1930(a)(6).

**1.93    Voting Deadline** shall mean August 14, 2017 at 4:00 p.m. (Central Time), the date and time by which holders of General Unsecured Claims have to submit their Ballots to accept or reject the Plan.

**1.94    Voting Record Date** shall mean the date as of which the identity of holders of Claims is set for purposes of determining the entities entitled to receive and vote.

**1.95    WLG** shall mean The William Lawrence Group.

**1.96    Workshop** shall mean Marbles Brain Workshop, LLC, a Delaware limited liability company, debtor and debtor in possession.

**1.97    WTC** shall mean the Debtors' former Retail Store located at Westfield World Trade Center in New York City, New York.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

**2.01    Class 1.** All Allowed Priority Non-Tax Claims, further classified into subclasses as to the applicable Debtor.

**2.02    Class 2.** All Allowed Secured Claims, further classified into subclasses as to the applicable Debtor.

**2.03    Class 3**. All Allowed General Unsecured Claims, including Allowed General Unsecured Claims arising from the rejection of executory contracts and unexpired leases, and in each case, further classified into subclasses as to the applicable Debtor; but excepting those Claims or Equity Interests enumerated in the Classes 1 and 2 above, and 4 below.

**2.04    Class 4**. All Equity Interests, further classified into subclasses as to the applicable Debtor.

### ARTICLE III

### TREATMENT OF UNCLASSIFIED ADMINISTRATIVE CLAIMS
### AND PRIORITY TAX CLAIMS

**3.01    Administrative Expense Claims**. In full and complete satisfaction, discharge, and release of and in exchange for its Allowed Administrative Expense Claim, unless otherwise agreed to by the holder of an Administrative Expense Claim, each holder of an Allowed Administrative Expense Claim shall receive payment in full in cash pursuant to the terms hereof upon the later of: (a) the date of allowance by order of the Bankruptcy Court; or (b) the Effective Date. Administrative Expense Claims include, but are not limited to, Professional Fee Claims, 503(b)(9) Claims, U.S. Trustee Fees, the CPO Fee Claim, and Unbudgeted Expense Claims.

Pursuant to the Administrative Expense Bar Date, (a) any Professional Fee Claims arising prior to the Effective Date, and (b) any other Administrative Expense Claims arising after August 4, 2017 but prior to the Effective Date, must be filed no later than thirty (30) days following the Confirmation Date, unless an earlier date is set by separate Bankruptcy Court order. The Administrative Expense Bar date does not apply to 503(b)(9) Claims, U.S. Trustee Fees or any outstanding fees or expenses of GCG.

Allowed Administrative Expense Claims shall be paid prior to any payments on the Allowed Claims and Allowed Equity Interests in Classes 1, 3 and 4; provided, however, A&G or the Creditor Trustee, as the case may be, shall be entitled to make such other distributions as are required under the Plan after the Effective Date, provided further that in the event any of the Administrative Expense Claims have not become Allowed Claims prior to the Effective Date, then A&G or the Creditor Trustee, as the case may be, shall hold in suspense such amounts of the Creditor Trust Funds as are in its or her reasonable discretion sufficient to pay such Administrative Expense Claims pending the Final Order of such Administrative Expense Claims.

**3.02    Priority Tax Claims**. In full and complete satisfaction, discharge, and release of and in exchange for its Priority Tax Claim, unless otherwise agreed to by the holder of an Allowed Priority Tax Claim and the Creditor Trustee, each holder of any Allowed Priority Tax Claim shall be paid in full in cash from the Creditor Trust Funds upon the later of: (a) the date of allowance by order of the Bankruptcy Court; or (b) the Effective Date.

The Allowed Priority Tax Claims shall be paid prior to any payments on the Allowed Claims and Allowed Equity Interests in Classes 3 and 4; provided, however, the Creditor Trustee shall be entitled to make such other distributions as are required under the Plan after the Effective Date, provided further that in the event that any of the Priority Tax Claims have not

become Allowed Claims prior to the Effective Date, then the Creditor Trustee shall hold in suspense such amounts of the Creditor Trust Funds as are in her reasonable discretion sufficient to pay such Priority Tax Claims pending the Final Order of such Priority Tax Claims.

## ARTICLE IV

## CLAIMS NOT IMPAIRED UNDER THE PLAN

### 4.01     Class 1 - Priority Non-Tax Claims

(a)     Class 1(a):  Class 1(a) consists of Priority Claims against Holdings other than Priority Tax Claims, which are addressed separately as set forth above. Allowed Class 1(a) Claims are Unimpaired and shall be paid in order of section 507 of the Bankruptcy Code in full in cash from the Creditor Trust Funds upon the later of: (i) the date of allowance by order of the Bankruptcy Court; or (ii) the Effective Date; provided, however, the Creditor Trustee shall be entitled to make such other distributions as are required under the Plan after the Effective Date, provided further that in the event any Class 1(a) Claims have not become Allowed Claims prior to the Effective Date, the Creditor Trustee shall hold in suspense such amounts of the Creditor Trust Funds as are in her reasonable discretion sufficient to pay such Class 1(a) Claims pending the Final Order respecting such Class 1(a) Claims.

(b)     Class 1(b):  Class 1(b) consists of Priority Claims against Marbles other than Priority Tax Claims, which are addressed separately as set forth above. Allowed Class 1(b) Claims are Unimpaired and shall be paid in order of the priorities set forth in section 507 of the Bankruptcy Code in full in cash from the Creditor Trust Funds upon the later of: (i) the date of allowance by order of the Bankruptcy Court; or (ii) the Effective Date; provided, however, the Creditor Trustee shall be entitled to make such other distributions as are required under the Plan after the Effective Date, provided further that in the event that any Class 1(b) Claims have not become Allowed Claims prior to the Effective Date, the Creditor Trustee shall hold in suspense such amounts of the Creditor Trust Funds as are in her reasonable discretion sufficient to pay such Class 1(b) Claims pending the Final Order respecting such Class 1(b) Claims.

(c)     Class 1(c):  Class 1(c) consists of Priority Claims against Workshop other than Priority Tax Claims, which are addressed separately as set forth above. Allowed Class 1(c) Claims are Unimpaired and shall be paid in order of the priorities set forth in section 507 of the Bankruptcy Code in full in cash from the Creditor Trust Funds upon the later of: (i) the date of allowance by order of the Bankruptcy Court; or (ii) the Effective Date; provided, however, the Creditor Trustee shall be entitled to make such other distributions as are required under the Plan after the Effective Date, provided further that in the event that any Class 1(c) Claims have not become Allowed Claims prior to the Effective Date, the Creditor Trustee shall hold in suspense such amounts of the Creditor Trust Funds as are in her reasonable discretion sufficient to pay such Class 1(c) Claims pending the Final Order respecting such Class 1(c) Claims.

### 4.02     Class 2 - Secured Claims

    **(a)**   <u>Class 2(a)</u>: Class 2(a) consists of Secured Claims against Holdings, and each such holder of a Secured Claim against Holdings shall be subject to the following treatment:

    **(i)**   Spin Master holds a Secured Claim against the Debtors in the amount of $15,518,651.80.[3] Spin Master's Secured Claim, less its credit purchase of $2.5 million for substantially all of the IP Assets, is deemed Allowed pursuant to the DIP Financing Order. In full and final satisfaction of its Claim, all Estate Funds and all Remaining Estate Assets (but excluding, for the avoidance of doubt, the Reserved Administrative Expense Funds, the 2017 Tax Return Fee, and the Creditor Trust Assets) shall be transferred to Spin Master on or as soon as practicable following the Effective Date.

    **(ii)**   NOW and RIM asserted Claims totaling $147,294.40 secured by possessory liens on certain inventory owned by Holdings and Marbles. Pursuant to the DIP Financing Order, NOW and RIM received adequate protection payments in full satisfaction of their alleged Secured Claims. Accordingly, the Claims of both NOW and RIM are deemed Disallowed as of the Effective Date.

    **(iii)**   ELM has filed a Claim against Holdings in the amount of $60,992.05 allegedly secured by a mechanic's lien on certain signage located at WTC. In connection with the Lease Rejection Orders, the Debtors abandoned any interest in the property in which ELM has claimed a security interest. Accordingly, any security interest allegedly claimed by ELM is no longer a Secured Claim against Holdings' estate, and such Secured Claim shall be deemed Disallowed as of the Effective Date of the Plan. To the extent ELM has an unsecured or under-secured Claim(s), such Claim(s) is classified as a Class 3 General Unsecured Claim(s).

    **(iv)**   M Coy has filed a Claim against each of the Debtors in the amount of $52,929.30 allegedly secured by a mechanic's lien on certain furnishings, fixtures and display materials located at WTC. In connection with the Lease Rejection Orders, the Debtors abandoned any interest in the property in which M Coy claims a security interest. Accordingly, any security interest allegedly claimed by M Coy is no longer a Secured Claim against the Debtors' estates, and such Secured Claim shall be deemed Disallowed as of the Effective Date of the Plan. To the extent M Coy has an unsecured or under-secured Claim(s), such Claim(s) is classified as a Class 3 General Unsecured Claim(s).

    **(v)**   KTR has filed a Claim against Holdings in the amount of $35,319.58 allegedly secured by its possession of a security deposit in the amount of $20,000. On or as soon as practicable following the later of the Effective Date or the date on which KTR's Claim is deemed an Allowed Secured Claim, the Debtors shall be deemed to have transferred to KTR said security deposit (*i.e.*, its Collateral).

---

[3] While Spin Master's Secured Claim against the Debtors totals $15,518,651.80, Workshop is only liable on approximately $368,932.46 of the Claim (per Workshop's Schedules). However, that distinction is irrelevant given the treatment of Spin Master's Claim under the Plan.

**(vi)**   WLG has filed a Claim[4] in the amount of $38,622.21, of which $36,662.21 is allegedly secured by a mechanic's lien on certain property located at WTC. In connection with the Lease Rejection Orders, the Debtors abandoned any interest in the property in which WLG has claimed a security interest. Accordingly, any security interest allegedly claimed by WLG is no longer a Secured Claim against any of the Debtors' estates, and such Secured Claim shall be deemed Disallowed as of the Effective Date of the Plan. To the extent WLG has an unsecured or under-secured Claim(s), such Claim(s) is classified as a Class 3 General Unsecured Claim(s).

**(b)**   Class 2(b): Class 2(b) consists of Secured Claims against Marbles, and each such holder of a Secured Claim against Marbles shall be subject to the following treatment:

**(i)**   Spin Master holds a Secured Claim against the Debtors in the amount of $15,518,651.80. Spin Master's Secured Claim, less its credit purchase of $2.5 million for substantially all of the IP Assets, is deemed Allowed pursuant to the DIP Financing Order. In full and final satisfaction of its Claim, all Estate Funds and all Remaining Estate Assets (but excluding, for the avoidance of doubt, the Reserved Administrative Expense Funds, the 2017 Tax Return Fee, and the Creditor Trust Assets) shall be transferred to Spin Master on or as soon as practicable following the Effective Date.

**(ii)**   NOW and RIM asserted Claims totaling $147,294.40 secured by possessory liens on certain inventory owned by Holdings and Marbles. Pursuant to the DIP Financing Order, NOW and RIM received adequate protection payments in full satisfaction of their alleged Secured Claims. Accordingly, the Claims of both NOW and RIM are deemed Disallowed as of the Effective Date.

**(iii)**   M Coy has filed a Claim against each of the Debtors in the amount of $52,929.30 allegedly secured by a mechanic's lien on certain furnishings, fixtures and display materials located at WTC. In connection with the Lease Rejection Orders, the Debtors abandoned any interest in the property in which M Coy claims a security interest. Accordingly, any security interest allegedly claimed by M Coy is no longer a Secured Claim against the Debtors' estates, and such Secured Claim shall be deemed Disallowed as of the Effective Date of the Plan. To the extent M Coy has an unsecured or under-secured Claim(s), such Claim(s) is classified as a Class 3 General Unsecured Claim(s).

**(c)**   Class 2(c): Class 2(c) consists of Secured Claims against Workshop, and each such holder of a Secured Claim against Workshop shall be subject to the following treatment:

**(i)**   Spin Master holds a Secured Claim against the Debtors in the amount of $15,518,651.80. Spin Master's Secured Claim, less its credit purchase of $2.5 million for substantially all of the IP Assets, is deemed Allowed pursuant to the DIP Financing Order. In full and final satisfaction of its Claim, all Estate Funds and all Remaining Estate Assets (but excluding, for the avoidance of doubt, the Reserved Administrative Expense Funds, the 2017

---

[4] Although WLG's proof of claim did not designate a particular Debtor, the Debtors' Schedules reflect that WLG holds a General Unsecured Claim against Holdings.

Tax Return Fee, and the Creditor Trust Assets) shall be transferred to Spin Master on or as soon as practicable following the Effective Date.

       **(ii)**     M Coy has filed a Claim against each of the Debtors in the amount of $52,929.30 allegedly secured by a mechanic's lien on certain furnishings, fixtures and display materials located at WTC. In connection with the Lease Rejection Orders, the Debtors abandoned any interest in the property in which M Coy claims a security interest. Accordingly, any security interest allegedly claimed by M Coy is no longer a Secured Claim against the Debtors' estates, and such Secured Claim shall be deemed Disallowed as of the Effective Date of the Plan. To the extent M Coy has an unsecured or under-secured Claim(s), such Claim(s) is classified as a Class 3 General Unsecured Claim(s).

## ARTICLE V

## TREATMENT OF CLAIMS AND EQUITY INTERESTS IMPAIRED UNDER THE PLAN

### 5.01    Class 3 - General Unsecured Claims

       **(a)**     **Class 3(a):**  Class 3(a) consists of General Unsecured Claims against Holdings. General Unsecured Claims are Impaired, and shall be paid Pro Rata in cash from the Creditor Trust Assets net of the Creditor Trust Expenses upon the later of: (i) the Effective Date; (ii) the date of allowance by order of the Bankruptcy Court; or (iii) the date on which the Creditor Trustee makes distributions under the Plan on account of such Class 3 General Unsecured Claims. The Creditor Trustee shall disburse payments hereunder in such amounts as are in her reasonable discretion available on the Distribution Dates Pro Rata to the holders of the Allowed Class 3 Claims. There shall be no distributions from the Creditor Trust to any holders of Allowed Class 3 Claims until all Allowed Unbudgeted Expense Claims, Allowed 503(b)(9) Claims and Allowed Priority Claims have been paid in full or adequately reserved for in accordance with the terms of the Plan. To the extent any of the Class 3 Claims have not become Allowed Claims prior to the Confirmation Date, the Creditor Trustee may, on or prior to the Claims Objection Deadline, contest such Class 3 Claims, and assert and prosecute against the holder of any Class 3 Claim such claims, objections, causes of action, defenses and/or offsets against such holder as the Creditor Trustee may determine, in accordance with Article X.

       **(b)**     **Class 3(b):**  Class 3(b) consists of General Unsecured Claims against Marbles. General Unsecured Claims are Impaired, and shall be paid Pro Rata in cash from the Creditor Trust Assets net of the Creditor Trust Expenses upon the later of: (i) the Effective Date; (ii) the date of allowance by order of the Bankruptcy Court; or (iii) the date on which the Creditor Trustee makes distributions under the Plan on account of such Class 3 General Unsecured Claims. The Creditor Trustee shall disburse payments hereunder in such amounts as are in her reasonable discretion available on the Distribution Dates Pro Rata to the holders of the Allowed Class 3 Claims. There shall be no distributions from the Creditor Trust to any holders of Allowed Class 3 Claims until all Allowed Unbudgeted Expense Claims, Allowed 503(b)(9) Claims and Allowed Priority Claims have been paid in full or adequately reserved for in accordance with the terms of the Plan. To the extent any of the Class 3 Claims have not become Allowed Claims prior to the Confirmation Date, the Creditor Trustee may, on or prior to the

Claims Objection Deadline, contest such Class 3 Claims, and assert and prosecute against the holder of any Class 3 Claim such claims, objections, causes of action, defenses and/or offsets against such holder as the Creditor Trustee may determine, in accordance with Article X.

     **(c)**    Class 3(c): Class 3(c) consists of General Unsecured Claims against Workshop. General Unsecured Claims are Impaired, and shall be paid Pro Rata in cash from the Creditor Trust Assets net of the Creditor Trust Expenses upon the later of: (i) the Effective Date; (ii) the date of allowance by order of the Bankruptcy Court; or (iii) the date on which the Creditor Trustee makes distributions under the Plan on account of such Class 3 General Unsecured Claims. The Creditor Trustee shall disburse payments hereunder in such amounts as are in her reasonable discretion available on the Distribution Dates Pro Rata to the holders of the Allowed Class 3 Claims. There shall be no distributions from the Creditor Trust to any holders of Allowed Class 3 Claims until all Allowed Unbudgeted Expense Claims, Allowed 503(b)(9) Claims and Allowed Priority Claims have been paid in full or adequately reserved for in accordance with the terms of the Plan. To the extent any of the Class 3 Claims have not become Allowed Claims prior to the Confirmation Date, the Creditor Trustee may, on or prior to the Claims Objection Deadline, contest such Class 3 Claims, and assert and prosecute against the holder of any Class 3 Claim such claims, objections, causes of action, defenses and/or offsets against such holder as the Creditor Trustee may determine, in accordance with Article X. The Debtors believe that any General Unsecured Claim which has been filed against Workshop (*i.e.*, Class 3(c)) is technically incorrect, as Workshop had no operations. The Debtors believe that only Spin Master has a valid claim against Workshop, but, pursuant to the DIP Financing Order, Spin Master will not share in any distributions from the Creditor Trust Assets on account of any under-secured portion of its Secured Claims. Accordingly, the Debtors reserve the right to object to any Claims asserted against Workshop and seek to reclassify such Claims as Class 3(a) or 3(b), as the case may be, upon approval of the Bankruptcy Court. Upon such reclassification, Class 3(c) may lack eligible Claims for voting whether to accept or reject the Plan. In such event, Class 3(c) will be deemed eliminated and there shall be no need for Class 3(c) to accept the Plan as a condition to its confirmation.

    **5.02**   **Class 4 - Equity Security Interests**

     **(a)**    Class 4(a): Class 4(a) consists of the holders of Equity Interests in Holdings. AMPR and M Blocker are the holders of 100% of the membership interests in and to Holdings. There will not be a distribution of any amounts to holders of Equity Interests, and all such interests shall be deemed canceled as of the Effective Date of the Plan.

     **(b)**    Class 4(b): Class 4(b) consists of the holders of Equity Interests in Marbles. Holdings is the holder of 100% of the membership interests in and to Marbles. There will not be a distribution of any amounts to holders of Equity Interests, and all such interests shall be deemed canceled as of the Effective Date of the Plan.

     **(c)**    Class 4(c): Class 4(c) consists of the holders of Equity Interests in Workshop. Holdings is the holder of 100% of the membership interests in and to Workshop. There will not be a distribution of any amounts to holders of Equity Interests, and all such interests shall be deemed canceled as of the Effective Date of the Plan.

# ARTICLE VI

## ACCEPTANCE OR REJECTION OF THE PLAN

**6.01    Voting Classes**.  Each holder of a Class 3 General Unsecured Claim whose Claim is deemed Allowed for voting purposes is entitled to vote either to accept or to reject the Plan on behalf of the specific Debtor to which such Claim relates. A Class 3 Claim is deemed Allowed for voting purposes if it is either (a) listed in the Schedules as a liquidated, non-contingent and undisputed Claim or (b) filed and has not been adjudicated by the Bankruptcy Court as Disallowed. A Claim deemed Allowed for purposes of voting on the Plan is not, however, the same as an Allowed Claim for purposes of distribution under the Plan. As such, all Allowed Claims for voting purposes remain subject to objections for distribution purposes on or before the Claims Objection Deadline.

**6.02    Acceptance by Impaired Classes**.  An Impaired Class of Claims shall have accepted the Plan if: (a) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds (2/3) in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan, and (b) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half (1/2) in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. Each subclass of Class 3 General Unsecured Claims – i.e., Class 3(a), 3(b) and 3(c) – must accept the Plan in order for the Plan to be considered accepted by the Class as a whole. Classes 1 and 2 are each unimpaired, deemed to have accepted the Plan and are not entitled to vote thereon.

**6.03    Presumed Rejection of Plan**.  The holders of Class 4 Equity Interests shall not receive any distributions under the Plan and are therefore deemed to reject the Plan and are not entitled to vote.

**6.04    Nonconsensual Confirmation**.  Because Class 4 is deemed to reject the Plan by operation of law, the Debtors will request the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code. Without limiting the foregoing, in the event that any Class of Claims entitled to vote on the Plan fails to accept the Plan as required by section 1129(a) of the Bankruptcy Code, the Plan may be amended and, in any event, the Debtors reserve the right to seek confirmation of the Plan over such rejection pursuant to section 1129(b) of the Bankruptcy Code.

**6.05    How to Vote**.  A form of Ballot is being provided to creditors in Class 3 by which creditors in such Class may vote their acceptance or rejection of the Plan. The Ballot for voting on the Plan gives you one important choice to make with respect to the Plan — you can vote for or against this Plan. To vote on the Plan, please complete the Ballot, as indicated thereon by, (1) indicating on the enclosed Ballot that (a) you accept the Plan or (b) reject the Plan and (2) signing your name and mailing the Ballot in the envelope provided for this purpose. GCG will count and tabulate the amount of Claims cast in the Ballots. In order to be considered by the Bankruptcy Court at the hearing on confirmation of the Plan, your Ballot must be fully completed, executed, and actually received by GCG at the following address by no later than the Voting Deadline of August 14, 2017 at 4:00 p.m. (Central Time).

**IF BY FIRST-CLASS MAIL:**
Marbles Holdings, LLC, et al.
c/o GCG
P.O. Box 10362
Dublin, OH 43017-5562

**IF BY HAND-DELIVERY OR
OVERNIGHT DELIVERY:**
Marbles Holdings, LLC et al.
c/o GCG
5151 Blazer Parkway, Suite A
Dublin, OH 43017

## ARTICLE VII

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01** **Rejection of Executory Contracts**. As of the Confirmation Date, the Debtors shall be deemed to have rejected all executory contracts and unexpired leases not expressly assumed prior to or in connection with the Confirmation Order. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections pursuant to section 365 of the Bankruptcy Code. Any person or entity claiming rights in the rejected executory contracts and unexpired leases not previously rejected by order(s) of the Bankruptcy Court shall have an additional thirty (30) calendar days after the Confirmation Date in which to file Claims in the Chapter 11 Cases. All such Claims for which proofs of claim are timely and properly filed an ultimately Allowed with be treated as a Class 3 General Unsecured Claim.

## ARTICLE VIII

## IMPLEMENTATION OF THE PLAN

**8.01** **Substantive Consolidation of the Debtors Solely for Purposes of Distribution**.

(a)    The Plan will effectuate a substantive consolidation of the Chapter 11 Cases, but solely for purposes of distributions under the Plan (and not for voting purposes). The Plan shall serve as a motion requesting the entry of an order substantively consolidating the Chapter 11 Cases for such purposes. On the Effective Date, and solely for purposes of making distributions to the holders of Allowed Claims under the Plan: (a) all guarantees of any Debtor of the payment, performance or collection of another Debtor with respect to Claims against such Debtor shall be eliminated and canceled; (b) any single obligation of multiple Debtors shall be treated as a single obligation in the consolidated Chapter 11 Cases; and (c) all guarantees by a Debtor with respect to Claims against the other Debtor shall be treated as a single obligation in the consolidated cases. On the Effective Date, and in accordance with the terms of the Plan and the consolidation of the assets and liabilities of the Debtors, all Claims based upon guarantees of collection, payment, or performance made by a Debtor as to the obligation of another Debtor shall be released and of no further force and effect. The foregoing shall not affect the rights of any creditor holding a Secured Claim with respect to the Collateral securing its Allowed Claim, or the terms and implementation of any settlement, and the rights and obligations of the parties thereto, entered into in connection with the confirmation of the Plan.

(b)    Notwithstanding the substantive consolidation of the Estates for the purposes set forth herein, each Debtor shall pay all United States Trustee fees on all disbursements, including disbursements under the Plan, until the entry of a final decree in its

Chapter 11 Case, dismissal of its Chapter 11 Case, or conversion of its Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.

**8.02    Cancellation of Equity Interests**.  Upon the Effective Date, the Debtors' Equity Interests shall be deemed canceled and terminated and of no further force or effect, and the obligations of the Debtors thereunder, if any, shall be deemed satisfied in full and discharged.

**8.03    Dissolution of Committee and Cessation of Fee and Expense Payments**.  The Committee shall be dissolved on the Effective Date. Neither the Debtors nor the Creditor Trustee shall be responsible for paying any fees or expenses incurred by the Committee after the Effective Date; provided, however, that the Committee shall nonetheless have post-Effective Date standing to file and obtain approval of the Professional Fee Claims, subject to the rights of any party in interest to object thereto.

**8.04    Dissolution of the Debtors**.    On the Effective Date, the Debtors will be deemed dissolved for all purposes, without need of further court order, notice or action, and shall cease to exist as legal entities. The Confirmation Order shall contain a provision authorizing and directing any applicable state agencies to register the Debtors as dissolved as of the Effective Date. Notwithstanding said dissolution, the Debtors shall be entitled to wind down their affairs pursuant to applicable state law in a manner consistent with the terms and conditions of the Plan.

**8.05    General Corporate Actions**. Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects. Such authorizations and approvals shall be effective notwithstanding any requirements under non-bankruptcy law.

**8.06    Officers and Managers of the Debtors**.  Upon the Effective Date, all (a) officers and (b) managing members or members of the board of managers, as the case may be, of the Debtors shall be automatically deemed to have resigned from such positions from the Debtors without further notice, provided, however, that the Debtors may appoint such former officers and/or managing members or members of the board of managers, as the case may be, as agents for the sole and limited purpose of effectuating the terms of the Plan

**8.07    Sources of Assets**.

    **(a)**    Estate Funds.  Prior to the Effective Date, all of the Estate Funds shall be transferred to a segregated, non-interest-bearing client account held by the Debtors' counsel, A&G. A&G shall hold the Estate Funds in trust pending the Effective Date of the Plan or pursuant to other applicable order(s) of the Bankruptcy Court. The Estate Funds include, but are not limited to, (i) $50,000, comprising fifty percent (50%) of the Priority Claim Reserve Funds; and (ii) the 503(b)(9) Funds.

    **(b)**    Plan Reserve Funds.  The Plan Reserve Funds are currently held in trust by PSZJ. Spin Master shall not share in any distribution from the Creditor Trust on account of any unsecured portion of its Claims, and thus, shall not be entitled to any distribution from the Plan Reserve Funds.

    **(c)**    Priority Claim Reserve Funds. PSZJ shall transfer $50,000 that it is holding to funding 50% of the Priority Claim Reserve Funds, which, together with the $50,000

of Estate Funds, comprise the total Priority Claim Reserve Funds. In the event that all Allowed Priority Claims total less than $100,000, any remaining balance from the Priority Claim Reserve Funds shall revert to the Committee Professional Fee Allocation to the extent necessary to satisfy Allowed Professional Fee Claims of the Committee Professionals and Allowed Administrative Expense Claims of Committee Members. To the extent that any portion of the Committee Professional Fee Allocation remains available after payment of Allowed Professional Fee Claims of the Committee Professionals and Allowed Administrative Expense Claims of Committee Members, such balance shall be transferred to the Creditor Trust. The Committee Professional Fee Allocation shall not be available to pay any portion of Spin Master's Claims or the Professional Fee Claims of any Professional Persons retained by the Debtors.

(d)     Creditor Trust Causes of Action.  The Creditor Trust Causes of Action are comprised of any and all interests of the Debtors in (i) claims and causes of action arising under Chapter 5 of the Bankruptcy Code, including preference and fraudulent transfer claims, or their state law analogs, (ii) commercial tort claims, and (iii) rights and defenses of setoff and recoupment with respect to the foregoing claims and causes of action, but exclude any claims or causes of action against the DIP Lender, AMPR or Amzak.

(e)     Remaining Estate Assets.  The Remaining Estate Assets are comprised of all assets of the Debtors other than the Estate Funds, the Priority Claim Reserve Funds, the Plan Reserve Funds, the Committee Professional Fee Allocation and the Creditor Trust Causes of Action. The Remaining Estate Assets include accounts receivable, prepaid expenses and security deposits, and American Express gift cards.

### 8.08    Transfer of Assets.

(a)     Creditor Trust Funds.  On or as soon as practicable following the Effective Date, the following funds shall be transferred to the Creditor Trust as provided below:

(i)     A&G shall cause to be transferred the 503(b)(9) Funds and $50,000 in Estate Funds for the Priority Claims Reserve;

(ii)     PSZJ shall cause to be transferred the Plan Reserve Funds and $50,000 on account of the Priority Claims Reserve;

(iii)     Upon payment of Allowed Professional Fee Claims of the Committee Professionals and Allowed Administrative Expense Claims of Committee Members, PSZJ shall cause to be transferred any remaining balance from the Committee Professional Fee Allocation.

(b)     Other Creditor Trust Assets.  On the Effective Date, the Debtors shall immediately transfer or cause to be transferred to the Creditor Trust all Creditor Trust Assets in their possession, custody or control. Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the Creditor Trust Causes of Action shall be immediately transferred to and vest in the Creditor Trust on the Effective Date.

(c)     DIP Lender.  On or as soon as practicable following the Effective Date, the Debtors or A&G, as the case may be, shall cause to be transferred to the DIP Lender all

Estate Funds and Remaining Estate Assets except for the 2017 Tax Return Fee, the Administrative Expense Reserve Funds, and the Creditor Trust Assets. A&G shall transfer or cause to be transferred to the DIP Lender any remaining balance of such funds after payment of all Allowed Administrative Expense Claims designated for payment from the Administrative Expense Reserve Funds.

**8.09** **2017 Tax Returns of the Debtors**.   On or as soon as practicable following the Confirmation Date, the Debtors shall cause to be transferred to their bankruptcy counsel, A&G, the 2017 Tax Return Fee, which A&G shall be authorized to transfer to the Debtors' accountant, RSM US LLP, upon completion and filing of the Debtors' 2017 tax returns.

## ARTICLE IX

## THE CREDITOR TRUST

**9.01** **Creditor Trust Agreement**.   On or prior to the Effective Date, the Creditor Trustee and the Debtors shall execute the Creditor Trust Agreement, in form and substance satisfactory to the Committee. The Creditor Trust Agreement shall become effective on the Effective Date. Except to the extent inconsistent with the terms of the Plan, the terms and conditions of the Creditor Trust Agreement shall govern under the Plan.

**9.02** **Vesting of Creditor Trust Assets**. Upon transfer of the Creditor Trust Assets to the Creditor Trust on or after the Effective Date, the Creditor Trustee shall thereafter maintain possession, control and management of same subject to the Plan and the Creditor Trust Agreement. The Debtors are hereby authorized and directed to take such steps as may be necessary or appropriate to confirm such transfer and contribution of the Creditor Trust Assets to the Creditor Trust. Upon such transfer, title to the Creditor Trust Assets will automatically and irrevocably vest in the Creditor Trust and be deemed contributed thereto, subject to the terms of the Plan. Upon vesting, the Creditor Trustee shall have the sole authority to administer the Creditor Trust Assets for the benefit of the Creditor Trust Beneficiaries. All property held for distribution pursuant to the Plan shall be held by the Creditor Trust solely in trust for the benefit of the Creditor Trust Beneficiaries and shall not be deemed property of the Debtors. Nothing in the Plan, however, shall preclude payment from the Creditor Trust Assets of any (i) U.S. Trustee Fees accruing after the Effective Date; and (ii) any Creditor Trust Expenses.

**9.03** **Creditor Trustee**. The Creditor Trustee will be selected by the Plan Proponents and shall be compensated as set forth in the Creditor Trust Agreement. The proposed Creditor Trustee will be Amanda Demby of Province, Inc., 17000 Ventura Blvd, Suite 300, Encino, CA 91316. The Creditor Trustee shall administer the Creditor Trust pursuant to the Plan and the Creditor Trust Agreement from and after the Effective Date. The Creditor Trustee shall be the exclusive trustee of the Creditor Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3). The Creditor Trustee shall be a representative of the Estates pursuant to sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code, and shall be vested with standing to prosecute, settle and otherwise administer all Creditor Trust Assets, including Creditor Trust Causes of Action, transferred to the Creditor Trust, without the need for Court approval or any other notice of approval, except as set forth herein. The Creditor Trustee shall be exempt from giving any bond, surety or other security for the performance of her duties unless

21

otherwise ordered by the Bankruptcy Court. The Creditor Trustee shall be responsible for providing the day-to-day accounting and financial services and taking such other actions as are necessary to fully consummate and carry out all of the terms and conditions of the Plan, and will comply with all of the duties, obligations and reporting requirements set forth in the Plan.

**9.04    Case Administration**.  From and after the Effective Date and continuing through the date that a final decree closing the Chapter 11 Cases is entered pursuant to section 350 of the Bankruptcy Code and Bankruptcy Rule 3022, and except as otherwise provided in the Plan, the Creditor Trustee shall possess the rights of the Debtors for all matters pertaining to the Chapter 11 Cases without further order of the Bankruptcy Court. Without limiting the generality of the foregoing, the Creditor Trustee shall: (a) have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts of competent jurisdiction; (b) have the right to obtain records of, or related to, the Debtors (including, without limitation, bank statements and canceled checks); (c) be entitled to notice and opportunity for hearing; (d) be entitled to participate in all matters brought before the Bankruptcy Court, including without limitation, adversary proceedings; (e) have exclusive standing to commence Creditor Trust Causes of Action; (f) be entitled to request entry of a final decree closing the Chapter 11 Cases; and (g) be entitled to receive notice of all applications, motions and other papers and pleadings set before the Bankruptcy Court in the Chapter 11 Cases.

**9.05    Creditor Trustee's Compensation**.  The Creditor Trustee's compensation shall be in accordance with the terms of the Creditor Trust Agreement at rates established pursuant to the mutual agreement of the Creditor Trustee and the Committee, which rates shall be subject to disclosure to Creditor Trust Beneficiaries upon reasonable request.

**9.06    Creditor Trust Accounts**.  As soon after the Effective Date as is practicable, the Creditor Trustee shall establish one or more Creditor Trust Accounts. All monies on deposit in the Creditor Trust Accounts shall be insured by an agency of the federal government or secured by bonds or similar instruments in sufficient amounts to fully protect all amounts so deposited. Such accounts shall be maintained under the Creditor Trust's federal employer identification number and have the Creditor Trustee as the sole signatory thereto.

**9.07    Ordinary Care**.  The Creditor Trustee, her respective agents and designees, shall exercise ordinary care in the discharge of their duties under the Plan and shall be entitled to rely upon advice of counsel concerning legal matters, and upon the Plan and any schedule, certificate, statement, report, notice or other writing which they believe to be genuine or to have been presented by a proper person. The Creditor Trustee, her respective legal representatives, heirs, successors, assigns, agents, designees and attorneys shall not be held responsible or be liable to the Creditor Trust, the creditors or any other party in interest in the Chapter 11 Cases for any errors in judgment or for any defalcations or shortages of money or for any losses suffered unless the same shall occur through the gross negligence, willful misconduct or fraud of the Creditor Trustee, their respective legal representatives, heirs, successors, assigns, agents, designees or attorneys. Further, the Creditor Trustee shall not be liable for any act she may do or omit to hereunder while acting in good faith and in the exercise of reasonable business judgment, and the fact that such act or omission was advised, directed or approved by an attorney retained by the Creditor Trustee, shall be conclusive evidence of such good faith and reasonable business judgment.

**9.08**   **Attorney-Client Privilege**. Without limiting the generality of the assignment of the Creditor Trust Assets to the Creditor Trustee, and in order to effectively investigate, defend, or pursue the Creditor Trust Causes of Action, any privileges that exist between the Debtors and their current or prior counsel shall be assigned to the Creditor Trustee.

**9.09**   **Creditor Trust Distributions**. The Creditor Trust Assets will be liquidated and distributed solely for the benefit of holders of Allowed Unbudgeted Expense Claims, Allowed 503(b)(9) Claims, Allowed Priority Claims and Allowed General Unsecured Claims. The Creditor Trust Assets will <u>not</u> be available for payment of Secured Claims or Administrative Expense Claims (except Unbudgeted Expense Claims and 503(b)(9) Claims). The Creditor Trust Funds and proceeds of any other Creditor Trust Assets shall be distributed by the Creditor Trustee as follows:

**(a)**   First, from the Creditor Trust Accounts for payment of any Creditor Trust Expenses. Until such time as the Plan is fully consummated, the Creditor Trustee shall hold in suspense such amounts in the Creditor Trust as are in her reasonable discretion sufficient to pay all Creditor Expenses. All Creditor Expenses shall be subject to disclosure to Creditor Trust Beneficiaries upon reasonable request;

**(b)**   Second, from the Creditor Accounts to holders of Allowed Unbudgeted Expense Claims;

**(c)**   Third, from the Creditor Accounts to holders of Allowed 503(b)(9) Claims;

**(d)**   Fourth, from the Creditor Accounts to holders of Class 1 Allowed Priority Non-Tax Claims;

**(e)**   Fifth, from the Creditor Accounts to holders of Allowed Priority Tax Claims; and

**(f)**   Sixth, from the Creditor Accounts to holders of Class 3 Allowed General Unsecured Claims, subject to Section 5.01.

**9.10**   **Distribution Dates**. The distributions provided for in Section 9.09 shall be made on the Distribution Dates, which shall be as soon after the Effective Date as is practicable and thereafter, as often as the Creditor Trustee in her reasonable discretion may determine if the amounts on deposit in the Creditor Accounts warrant same; <u>provided</u>, <u>however</u>, the Creditor Trustee in her reasonable discretion shall reserve such amounts in the Creditor Accounts as she deems necessary for the requirements set forth in the Plan including, Disputed Claims as set forth below, and for the payment of the Creditor Trust Expenses in the manner set forth below.

**9.11**   **No Postpetition Interest**. Unless otherwise specifically provided for in the Plan or in the Confirmation Order, or required by applicable bankruptcy law, no interest from and after the Petition Date shall be paid or accrued to the holder of any Allowed Claim or Allowed Equity Interest, nor shall any holder of an Allowed Claim or Allowed Equity Interest be entitled to interest accruing on or after the Petition Date from the Creditor Accounts.

**9.12    Rounding**. Whenever any payment of a fraction of a cent would otherwise be called for, the actual distribution shall reflect a rounding of such fraction down to the nearest cent.

**9.13    De Minimus Distributions; Charitable Donation**. The Creditor Trustee shall not be required to make any distribution to any creditor if the dollar amount of the distribution is less than $25.00. The Creditor Trustee shall make a charitable donation with such undistributed funds.

**9.14    Disputed Claims**. In the event that on any Distribution Date, any Claims are Disputed Claims, the Creditor Trustee shall make the required distribution to all other claimants enjoying the same priority as the Disputed Claims as follows: (a) in calculating any Unbudgeted Expense Claims, 503(b)(9) Claims, Priority Tax Claims or Class 1 Priority Non-Tax Claims at the respective Distribution Date, Disputed Claims shall be included in the full amount claimed by the respective holders thereof; and (b) in calculating the Pro Rata portion of any Class 3 General Unsecured Claims at the Distribution Date, Disputed Claims shall be included in the Pro Rata amount claimed by the respective holders thereof. Until such Disputed Claims are Allowed or Disallowed, the amounts that otherwise would be payable to such claimants shall not be paid by the Creditor Trustee, but shall be held in suspense in the Creditor Trust. In the event that the Allowed amount of any of the Disputed Claim is less than the full amount claimed by the holder thereof, then (x) the Allowed amount of the Disputed Claim shall be distributed to the holder thereof immediately from the funds held in suspense, as provided above; and (y) any excess amount held in suspense shall be added to the funds available for other distributions herein.

**9.15    Effectuating Documents**. The Creditor Trustee, or such other person(s) as the Creditor Trustee may approve pursuant to the Creditor Trust Agreement, is authorized to execute, deliver, file or record such pleadings, contracts, instruments, releases and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan. The Creditor Trustee or her designee is authorized to certify or attest to any of the foregoing actions.

**9.16    Employment of Professionals**. Upon the Effective Date, the Creditor Trustee may employ such attorneys, accountants, consultants and other persons or professional as she deems necessary and appropriate to fulfill her duties and obligations under the Plan. All professional and other compensation from and after the Effective Date shall be payable in accordance with the Creditor Trust Agreement. Persons retained by the Creditor Trustee may include any professional who represented parties in interest in the Chapter 11 Cases, and the Creditor Trustee shall be permitted to retain any such persons in light of the efficiencies implicit in continuity.

**9.17    Insurance Policies**. The Creditor Trustee shall have the authority, in her sole discretion, to bind or cancel any and all insurance policies.

**9.18    United States Trustee Reports**. Until a final decree has been entered closing the Chapter 11 Cases, the Creditor Trustee shall submit all post-confirmation quarterly operating reports to the United States Trustee as required by the United States Trustee's guidelines (with a copy served on the Office of the United States Trustee) setting forth all receipts and

24

disbursements of the Creditor Trust. The Creditor Trustee shall be responsible for any quarterly fees due to the United States Trustee from and after the Effective Date until the Chapter 11 Cases are closed.

**9.19    Payment of Quarterly Fees**. The Creditor Trustee shall pay any U.S. Trustee Fees arising after the Effective Date until the entry of a final decree closing the Chapter 11 Cases.

**9.20    United States Federal Income Tax Treatment of the Creditor Trust**. For all United States federal income tax purposes, the parties shall treat the transfer of the Creditor Trust Assets to the Creditor Trust as (i) a transfer of the Creditor Trust Assets directly to the applicable Creditor Trust Beneficiaries, followed by (ii) the transfer by the Creditor Trust Beneficiaries to the Creditor Trust of such Creditor Trust Assets in exchange for the Creditor Trust Interests. Accordingly, the applicable Creditor Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Creditor Trust Assets. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes. The Plan permits the Creditor Trustee to establish Disputed Claim Reserves. The Creditor Trustee may, at the Creditor Trustee's sole discretion, file a tax election to treat any such Disputed Claim Reserve as a Disputed Ownership Fund or other taxable entity rather than as a part of the Creditor Trust for federal income tax purposes. If such election is made, the Creditor Trust shall comply with all tax reporting and tax compliance requirements applicable to the Disputed Ownership Fund or other taxable entity, including, but not limited to, the filing of separate income tax returns for the Disputed Ownership Fund or other taxable entity and the payment of any federal, state or local income tax due.

**9.21    Tax Reporting**. The Creditor Trustee shall file tax returns for the Creditor Trust treating the Creditor Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a). The Creditor Trustee shall be responsible for payment, out of the Creditor Trust Assets, of any taxes imposed on the Creditor Trust or its assets. The Creditor Trustee shall distribute such notices to the applicable Creditor Trust Beneficiaries as the Creditor Trustee determines are necessary or desirable.

**9.22    Cash Investments**.    The Creditor Trustee may invest Cash (including any earnings thereon or proceeds therefrom); provided, however, that such investments are investments permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

**9.23    Successor Creditor Trustees**.    If the Creditor Trustee resigns or for any other reason is unable to continue to perform her duties as herein provided, then the Creditor Trustee, or her representative, shall inform the Court of her resignation and the vacancy shall be filled upon majority vote by the Allowed Class 3 Claims, subject to Bankruptcy Court approval.

**9.24    Additional Procedures**.    The Creditor Trustee shall have the right to propose such additional procedures as may be reasonably required to administer the assets of the Estates for the benefit of all creditors and consistent with the Plan, the Bankruptcy Code, and the Bankruptcy Rules.

**9.25**   **Dissolution of the Creditor Trust**.  The Creditor Trust shall be dissolved at such time as: (a) the Creditor Trustee determines that the pursuit of additional Creditor Trust Causes of Action is not likely to yield sufficient additional proceeds to justify further pursuit of such Creditor Trust Causes of Action, (b) all objections to Disputed Claims are fully resolved, and (c) all distributions required to be made by the Creditor Trust have been made, but in no event shall the Creditor Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed three years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Creditor Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Creditor Trust Assets. Upon dissolution of the Creditor Trust, any remaining Creditor Trust Assets that exceed the amounts required to be paid under the Plan may be transferred by the Creditor Trustee to a non-profit charitable 501(c)(3) organization.

**9.26**   **Control Provisions**.  To the extent there is any inconsistency between the Plan as it relates to the Creditor Trust and the Creditor Trust Agreement, the Plan shall control.

**9.27**   **Abandonment**.  If, in the Creditor Trustee's reasonable judgment, any Creditor Trust Assets cannot be distributed in a commercially reasonable manner or the Creditor Trustee believes in good faith that such property has inconsequential value or determines it to be too impractical to distribute to the Creditor Trust Beneficiaries, the Creditor Trustee shall have the right to abandon or otherwise dispose of such property, including by donation of such property to a charity.

**9.28**   **Maintenance and Disposition of Records**.  The books and records maintained by the Creditor Trustee may be disposed of by the Creditor Trustee at the later of (a) such time as the Creditor Trustee determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Creditor Trust or the Creditor Trust Beneficiaries or (b) upon the termination and completion of the winding down of the Creditor Trust.

## ARTICLE X

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

**10.01**   **Objections to Claims**.  Except with respect to Claims already deemed Allowed Claims, upon the Effective Date, the Creditor Trustee shall (a) have appropriate standing and authority to object to any Unbudgeted Expense Claims, 503(b)(9) Claims, Priority Claims or General Unsecured Claims, whether listed on the Schedules or filed by any creditor, on or before the Claims Objection Deadline, and (b) have and retain any and all rights and defenses that the Debtors had with respect to any such Claim, except with respect to any Claim deemed an Allowed Claim as of the Effective Date. In the event the Debtors filed a motion to object to any Claim that has not been resolved as of the Effective Date, the Creditor Trustee shall succeed the Debtors in the prosecution of such motion from and after the Effective Date. Any and all

26

objections to Claims shall be filed with the Bankruptcy Court by the Creditor Trustee and served upon each holder of such Claims not later than the Claims Objection Deadline. If an objection to any Claim is not filed on or before that date, the Claim shall be deemed an Allowed Claim and shall be satisfied as set forth in the Plan.

**10.02    Resolution of Disputed Claims**. All objections to Claims shall be litigated to a Final Order except to the extent the Creditor Trustee elects to withdraw any such objection or the Creditor Trustee and holder of such Claim elect to compromise, settle or otherwise resolve any such objection, in which event the Creditor Trustee may settle, compromise or otherwise resolve any Disputed Claim without approval of the Bankruptcy Court.

**10.03    Estimation**. The Creditor Trustee may, at any time, request the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Creditor Trustee has previously objected to such Claim, and the Bankruptcy Court shall retain jurisdiction (pursuant to Section 15.01) to estimate any Claim at any time, including during litigation concerning any objection to such Claim.

**10.04    Distribution on Disputed Claims**. No distributions shall be made with respect to a Disputed Claim until such Disputed Claim becomes an Allowed Claim.

**10.05    Reserve for Disputed Claims**. With respect to Claims to be paid pursuant to the Plan, the Creditor Trustee shall hold in reserve, for the benefit of each holder of a Disputed Claim, cash in an amount required by order of the Bankruptcy Court or such other consideration the Creditor Trustee deems appropriate in the exercise of the Creditor Trustee's reasonable business judgment.

**10.06    Interest on Disputed Claims**.    Interest on any funds reserved for a Disputed Claim, if any, shall inure to the benefit of all remaining creditors.

**ARTICLE XI**

**CONDITIONS PRECEDENT TO EFFECTIVE DATE OF PLAN**

**11.01    Conditions to Confirmation of Plan**. Confirmation of the Plan shall not occur, and the Confirmation Order shall not be entered, until each of the following conditions precedent have been satisfied: (a) an order, in a form and substance satisfactory to the Debtors, the Committee and the DIP Lender, finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code, shall have been entered; and (b) the form of the Confirmation Order has been agreed to in form and substance satisfactory to the Debtors, the Committee and the DIP Lender.

**11.02    Effective Date of Plan and Conditions Thereto**. The Effective Date of the Plan shall be the later of: (a) thirty (30) calendar days from entry of the Confirmation Order; or (b) the date on which the Confirmation Order shall have become a Final Order, not subject to any stay of enforcement. The Effective Date of the Plan shall not occur until: (x) the clerk of the Bankruptcy Court shall have entered the Confirmation Order in the Chapter 11 Cases, in a form and substance satisfactory to the Debtors, the Committee and the DIP Lender, and the same shall

have become a Final Order, not subject to any stay of enforcement; and (y) the Creditor Trust Agreement shall have been executed.

**11.03** **Effect of Failure of Conditions; Reservation of Rights**. If the foregoing conditions have not been satisfied, then: (1) the Confirmation Order shall be of no further force or effect; (2) no distributions under the Plan shall be made; (3) the Debtors, the Creditor Trustee, and all holders of Claims against and Equity Interests in the Debtors shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; (4) all of the Debtors' and the Creditor Trustee's obligations with respect to Claims and Equity Interests shall remain unaffected by the Plan; (5) nothing contained in the Plan shall be deemed to constitute a waiver or release of any claims by or against the Debtors or the Creditor Trustee or any other person or to prejudice in any manner the rights of the Debtors or the Creditor Trustee, or any person in any further proceedings involving the Debtors or the Creditor Trustee; and (6) the Plan shall be deemed withdrawn. Upon such occurrence, the Debtors shall file a written notification with the Bankruptcy Court and serve it on the parties receiving CM/ECF notices in the Chapter 11 Cases. The Plan shall have no force or effect unless and until the Effective Date occurs. Prior to the Effective Date, none of the filing of the Plan, any statement or provision contained in the Plan, or action taken by the Debtors, the Creditor Trustee, or the Committee with respect to the Plan shall be, or shall be deemed to be, an admission or waiver of any rights of any of the Debtors, the Creditor Trustee, or the Committee, or any other party with respect to any Claims or Equity Interests or any other matter.

## ARTICLE XII

## EFFECTS OF CONFIRMATION OF THE PLAN

**12.01** **Permanent Injunction**.

(a)     **From and after the Confirmation Date, all holders of Claims or Equity Interests of the Debtors, whether or not they are entitled to and/or have filed proofs of claim in the Chapter 11 Cases on or before the applicable Bar Date, and their respective heirs, legal representatives, officers, directors, shareholders, employees, partners, members, subsidiaries, affiliates, representatives, agents, insurers, successors and assigns, as the case may be, shall be and are hereby permanently stayed, restrained, and enjoined from taking one or more of the following actions against the Debtors, the Creditor Trustee and the Creditor Trust, and all of their respective heirs, legal representatives, officers, directors, shareholders, agents, employees, representatives, attorneys, successors and assigns, and each of them (collectively, the "Releasees"), for the purpose of, directly or indirectly, by claim, cross-claim, or setoff, collecting, recovering or receiving payment of, or recovery on or with respect to any Claims against the Debtors or the Estates arising out of, under, or related to the Chapter 11 Cases (the "Enjoined Claims"), whether such Enjoined Claim is presently known or unknown, or is presently asserted or assertable (other than actions brought to enforce any right or obligation under the Plan, or otherwise in favor of the Debtors, which actions shall be heard by the Bankruptcy Court pursuant to Section 15.01):**

(i)    with respect to the Enjoined Claims, commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, claim, cross-claim, or other proceeding (including, without limitation, any suit, action, claim, cross-claim, or other proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Releasees, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, the Releasees, or any property of any such transferee or successor;

(ii)    with respect to the Enjoined Claims, enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree or other order against the Releasees, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, the Releasees, or any property of any such transferee or successor;

(iii)    with respect to the Enjoined Claims, creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance against the Releasees, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, the Releasees, or any property of any such transferee or successor;

(iv)    with respect to the Enjoined Claims, setting off, seeking reimbursement of, contribution from or subrogation against or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to the Releasees, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, the Releasees; and

(v)    with respect to the Enjoined Claims, proceeding in any manner in any place with regard to any matter that is subject to resolution pursuant to the terms of the Plan, except in conformity and compliance herewith. Notwithstanding anything to the contrary herein, this injunction shall not enjoin any of the Releasees from asserting claims, cross-claims, counterclaims, demands, setoffs, recoupments, arguments, defenses or otherwise against any Claims filed in the Chapter 11 Cases against them or otherwise held by any party, all of which rights are hereby expressly preserved. This injunction is an integral part of the Plan because it:  (1) enjoins actions which threaten the integrity of the Estates; (2) facilitates the expeditious and effective performance of the Plan; (3) guards against collateral attack or interference with the consummation of the Plan and improper use of the Creditor Funds; and (4) protects the rights, interests and claims of the Releasees and all creditors in the Chapter 11 Cases. As such, the provisions of this injunction shall be construed as broadly as the law and English language permit.

(b)    Nothing contained herein (i) shall relieve or diminish the duties, responsibilities or obligations of the Releasees as set forth in the Plan; or (ii) impair any parties' right to appear or bring an action in the Bankruptcy Court to enforce or assert any right or obligation under the Plan.

(c)    If notwithstanding the permanent injunction in favor of the Releasees set forth herein, any suit, action, claim, cross-claim, or other proceeding (including, without limitation, any suit, action, claim, cross-claim, or other proceeding in a judicial, arbitral,

administrative or other forum) is brought against or affects the Releasees in violation of the terms of the Plan prior to the distribution of all monies on deposit in the Creditors Funds, the Creditor Trustee shall, in her reasonable business judgment, be entitled to withhold from distribution to holders of Allowed Claims that amount of monies on deposit in the Creditor Accounts which the Releasees believe will be necessary to pay for any and all judgments, claims, damages, costs and expenses, including reasonable attorneys' fees and expenses, incurred or estimated to be incurred by the Releasees pending the entry of a Final Order resolving such dispute(s). Upon the entry of a Final Order resolving such dispute(s), the Creditor Trustee shall proceed to distribute any and all such funds withheld and not expended in accordance with the terms of the Plan.

**12.02  Limitation of Liability.**  The Debtors, the Committee, and their respective officers, directors, shareholders, members, accountants, attorneys and other professionals (collectively, the "Exculpated Parties," and each, an "Exculpated Party"), will neither have nor incur any liability to any entity for any action in good faith taken or omitted to be taken after the Petition Date in connection with or related to the Chapter 11 Cases or the formulation, preparation, dissemination, implementation, confirmation or consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan; provided, however, that this limitation will not affect or modify the obligations created under the Plan, or the rights of any holder of an Allowed Claim to enforce its rights under the Plan, and shall not release any action (or inaction) constituting willful misconduct, fraud or gross negligence (in each case subject to determination of such by final order of a court of competent jurisdiction); provided further that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan. Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections of section 1125(e) of the Bankruptcy Code. Except as specifically set forth in the Plan, no provision of the Plan or the Disclosure Statement shall be deemed to act to or release any claims, litigation claims or rights, or liabilities that the Debtors or their estates may have against any entity or person for any act, omission, or failure to act that occurred prior to the Petition Date, nor shall any provision of the Plan be deemed to act to release any litigation or litigation claims.

## ARTICLE XIII

## MODIFICATION OF PLAN

**13.01  Modification Before Confirmation.**  Modifications of the Plan may be proposed in writing by the Plan Proponents at any time before entry of the Confirmation Order, provided that such Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Plan Proponents shall have complied with the provisions of section 1125 of the Bankruptcy Code to the extent such provisions are applicable.

**13.02  Modification After Confirmation.**  The Plan may be modified by the Plan Proponents at any time after entry of the Confirmation Order and before its substantial consummation, provided that: (a) such Plan, as modified, meets the requirements of

sections 1122 and 1123 of the Bankruptcy Code; and (b) the Bankruptcy Court, after notice and a hearing, confirms such Plan, as modified, under section 1129 of the Bankruptcy Code.

**13.03  Acceptance/Rejection of Plan Modification.**  A holder of a Claim or Equity Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, the Plan, as modified, unless within the time fixed by the Bankruptcy Court, such holder changes such holder's previous acceptance or rejection.

## ARTICLE XIV

## MISCELLANEOUS

**14.01  Unclaimed Distributions Prior to Final Distribution.**  Any distributions of the Creditor Funds under the Plan which are unclaimed after ninety (90) days following any of the Distribution Dates shall revert to the Creditor Trust and be added to the subsequent distributions to be made by the Creditor Trustee.

**14.02  Delivery of Distributions.**  Distributions to holders of Allowed Claims shall be made (a) at the addresses set forth on the proofs of claim filed by such holders, (b) at the addresses reflected in the Schedules if no proof of claim has been filed, or (c) at the addresses set forth in any written notices of address changes delivered to the Creditor Trustee. If any holder's distribution is returned as undeliverable, a reasonable effort shall be made to determine the current address of such holder, but no further distributions to such holder shall be made unless and until the Creditor Trustee or the Debtors, as applicable, is notified of such holder's then current address, at which time all missed distributions shall be made to such holder without interest. The responsibility to provide the Creditor Trustee or the Debtors, as applicable, a current address of a holder of Claims shall always be the responsibility of such holder. Except as set forth above, nothing contained in the Plan shall require the Creditor Trustee or the Debtors, as applicable, to attempt to locate any holder of an Allowed General Unsecured Claim. Amounts in respect of undeliverable distributions made by the Creditor Trustee shall be held in trust on behalf of the holder of the Claim to which they are payable by the Creditor Trust until the earlier of the date that such undeliverable distributions are claimed by such holder and one hundred twenty (120) days after the date the undeliverable distributions were made.

**14.03  Withholding, Payment, and Reporting Requirements with Respect to Distributions.**  All distributions under the Plan to be made by the Creditor Trustee or the Debtors, as applicable, shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all distributions shall be subject to any such withholding, payment, and reporting requirements. The Creditor Trustee or the Debtors, as applicable, shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements. The Creditor Trustee or the Debtors, as applicable, may require, in her or their sole and absolute discretion and as a condition to the receipt of any distribution, that the holder of an Allowed Claim complete and return to the Creditor Trust or the Debtors, as applicable, the appropriate Form W-8 or Form W-9, as applicable to each holder. Notwithstanding any other provision of the Plan, (a) each holder of an Allowed Claim that is to receive a distribution pursuant to the Plan shall have sole and exclusive responsibility for the

31

satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution, and including, in the case of any holder of a Disputed Claim that has become an Allowed Claim, any tax obligation that would be imposed upon the Creditor Trust or the Debtors, as applicable, in connection with such distribution, and (b) no distribution shall be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements reasonably satisfactory to the Creditor Trustee or the Debtors, as applicable, for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon the Creditor Trust or the Debtors, as applicable, in connection with such distribution.

**14.04   Setoffs**.  The Creditor Trustee or the Debtors, as applicable, may, but shall not be required to, set off against any Claim or any Allowed Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtors or the Creditor Trust, as applicable, may have against the holder of such Claim; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Creditor Trust or the Debtors, as applicable, of any such claim that it or they may have against such holder.

**14.05   Forfeiture of Distributions**.  If the holder of a Claim fails to cash a check payable to it within the time period set forth in Section 14.01, fails to claim an undeliverable distribution within the time limit set forth in Section 14.02, or fails to complete and return to the Creditor Trust the appropriate Form W-8 or Form W-9 within ninety (90) days of the request by the Creditor Trustee, for the completion and return to it of the appropriate form pursuant to Section 14.03, then such holder shall be deemed to have forfeited its right to any reserved and future distributions from the Creditor Trust and any Creditor Trust Interests held by such holder shall be deemed canceled, and the Claims of such holder shall be forever barred.

**14.06   Notices**.  All notices and other communications provided for under the Plan to be effective shall be in writing (including by facsimile transmission) and shall be deemed to have been given at the time when mailed in any general or branch United States Post Office, enclosed in a Registered or Certified postage prepaid envelope addressed to the address of the respective parties or in the case of notice by facsimile transmission when received and telephonically confirmed, and addressed or transmitted by facsimile as follows or to such changed address as such party may have fixed by notice given in the manner herein provided:

If to the Debtors:

Adam P. Silverman, Esq.
Erich S. Buck, Esq.
Adelman & Gettleman, Ltd.
53 W. Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Tel:  (312) 435-1050
Fax:  (312) 435-1059

If to the Committee:

Bradford S. Sandler, Esq.
Maxim B. Litvak, Esq.
Shirley S. Cho, Esq.
Pachulski Stang Ziehl & Jones LLP
919 N. Market Street, 17th Floor
Wilmington, De 19801
Tel: (302) 652-4100
Fax: (302) 652-4400

If to the Creditor Trustee:

Amanda Demby
Province, Inc.
17000 Ventura Blvd., Suite 300
Encino, CA 91316
Tel: (702) 685-5555
Fax: (702) 685-5556

**14.07   Transfer of Claims**.  In the event that the holder of any Claim shall transfer such Claim, it shall immediately advise the Creditor Trustee in writing of such transfer. The Creditor Trustee shall be entitled to assume that no transfer of any Claim has been made by any holder unless and until she has received written notice of such transfer. Each transferee of any Claim shall take such Claim subject to the provisions of the Plan and to any request made, waiver or consent given or other action taken hereunder and, except as otherwise expressly provided in such notice, the Creditor Trustee shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers under the Plan of the transferor.

**14.08   Severability**.   Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

**14.09   Governing Law**.  Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights duties and obligations arising under this Plan shall be governed by, construed and enforced in accordance with, the laws of the State of Illinois.

**14.10   Binding Effect**.  The rights and obligations of any person or entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of the successors or assigns of such person or entity.

**14.11   Captions**.  The headings contained in the Plan are for convenience of reference only and shall not affect the meaning or interpretation of the Plan.

**14.12   Cram Down**.  The Plan Proponents reserve the right to seek the entry of the Confirmation Order in accordance with sections 1129 (a) and (b)(2)(B)(i) of the Bankruptcy Code.

## ARTICLE XV

## RETENTION OF JURISDICTION

**15.01  Jurisdiction**.  The Bankruptcy Court shall retain jurisdiction of the Chapter 11 Cases pursuant to and for the purposes set forth in sections 1127(b) and 1141 of the Bankruptcy Code, and to:

**(a)**     determine the allowance or disallowance of Claims against the Estates;

**(b)**     fix allowances of compensation to Professional Persons and other Administrative Expense Claims;

**(c)**     enforce and interpret all provisions of the Plan;

**(d)**     enforce all Causes of Action which may exist on behalf of the Estates;

**(e)**     authorize and approve the sale of property of the Estates;

**(f)**     modification of the Plan pursuant to section 1127 of the Bankruptcy Code;

**(g)**     entry of a final decree closing the Estates; and

**(h)**     for such other matters as the Creditor Trustee deems necessary or appropriate under the circumstances.


Respectfully submitted,

MARBLES HOLDINGS, LLC,
MARBLES, LLC and MARBLES BRAIN
WORKSHOP, LLC

By: /s/ Erich S. Buck
          One of their attorneys

Adam P. Silverman, Esq.
Erich S. Buck, Esq.
Adelman & Gettleman, Ltd.
53 West Jackson Blvd, Suite 1050
Chicago, Illinois 60604
Tel: (312) 435-1050
Fax: (312) 435-1059
*Counsel for the Debtors*

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS

By: /s/ Bradford S. Sandler
          One of its attorneys

Bradford S. Sandler, Esq.
Maxim B. Litvak, Esq.
Shirley S. Cho, Esq.
Pachulski Stang Ziehl & Jones LLP
919 N. Market Street, 17th Floor
Wilmington, De 19801
Tel: (302) 652-4100
Fax: (302) 652-4400

- and –

Shelly A. DeRousse, Esq.
Devon J. Eggert, Esq.
Freeborn & Peters LLP
311 South Wacker Drive, Suite 3000
Chicago, Il 60606
Tel: (312) 360-6000
Fax: (312) 360-6520
*Counsel for the Committee*