## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| MARBLES HOLDINGS, LLC, et al.,[1] | ) | Case No. 17-3309 |
|  | ) | (Jointly Administered) |
| Debtors. | ) |  |
|  | ) | Honorable Timothy A. Barnes |
|  | ) |  |

## ORDER APPROVING DISCLOSURE STATEMENT
## AND CONFIRMING JOINT LIQUIDATING PLAN

THIS CAUSE coming to be heard in connection with the combined hearing in the above-captioned jointly-administered chapter 11 cases (the "**Chapter 11 Cases**") to consider approval of the *Disclosure Statement for Joint Plan of Liquidation Proposed by Debtors and the Official Committee of Unsecured Creditors Pursuant to Chapter 11 of the United States Bankruptcy Code* filed herein on July 27, 2017 [Docket No. 360] (the "**Disclosure Statement**") by Marbles Holdings, LLC ("**Holdings**"), Marbles LLC ("**Marbles**"), and Marbles Brain Workshop, LLC ("**Workshop**"), debtors and debtors in possession (collectively, the "**Debtors**"), and confirmation of the *Joint Liquidating Plan* filed herein on July 27, 2017 [Docket No. 361] (the "**Plan**"), by the Debtors and the Official Committee of Unsecured Creditors in the Chapter 11 Cases (the "**Committee**," and together with the Debtors, the "**Plan Proponents**"); due written notice having been given to all parties entitled thereto by order of the Court entered on August 2, 2017 [Docket No. 363](the "**Combined Hearing Order**"), as evidenced by an Affidavit of Service filed herein on August 9, 2017 [Docket No. 365]; no objections to the adequacy of the Disclosure Statement or to confirmation of the Plan having been filed pursuant to the deadline established by the Court in the Combined Hearing Order; no parties having objected to the entry hereof, or such objections having been heard and overruled; the Court having taken judicial notice of all filings related to the Plan and Disclosure Statement, and having heard and considered the statements of counsel present and the testimony of Michael Smith, Chief Executive Officer and Chief Financial Officer of the Debtors; and the Court being otherwise fully advised in the premises, hereby makes the following findings of fact and conclusions of law:

     A.    Due and sufficient notice to review and evaluate the Plan and the Disclosure Statement, and to participate in the combined hearing on the adequacy of the Disclosure Statement and confirmation of the Plan, has been given to all parties entitled thereto pursuant to applicable Bankruptcy Rules and prior orders of the Court.

     B.    The Disclosure Statement contains "adequate information", as defined in section 1125(a)(1) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**").

---

[1] The debtors in these Chapter 11 cases, along with the last four digits of each debtor's federal taxpayer identification number, are (i) Marbles Holdings, LLC (9547); (ii) Marbles LLC (3081); and (iii) Marbles Brain Workshop, LLC (0303).

C.      The Plan and the Plan Proponents comply with the applicable provisions of Chapter 11 of the Bankruptcy Code, and the Plan has been proposed in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(1) – (3) of the Bankruptcy Code.

D.      All payments made or promised by the Plan Proponents under the Plan or by any other person for services or for costs and expenses in, or in connection with, the Plan and incident to these Chapter 11 Cases, have been fully disclosed to the Court and are reasonable or, if to be fixed after confirmation of the Plan, will be subject to the approval of the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

E.      The identity, qualifications, and affiliations of any individuals proposed to serve as managers, directors or officers, or voting trustees of the Debtors after confirmation of the Plan, of any affiliate(s) of the Debtors participating in the Plan, or any successor(s) to the Debtors under the Plan, have been fully disclosed and the appointment of such individuals to such offices, or their continuance therein, is equitable, and consistent with the interests of the creditors and equity security holders and with public policy, thereby satisfying section 1129(a)(5) of the Bankruptcy Code.

F.      The Debtors have disclosed the identity of any insider that will be employed or retained by the "Creditor Trustee" appointed under the Plan (as defined therein), and the nature of any compensation for such insider, thereby satisfying section 1129(a)(5) of the Bankruptcy Code.

G.      There are no governmental regulatory commissions with jurisdiction, after confirmation of the Plan, over the rates of the Debtors, thereby satisfying or rendering moot section 1129(a)(6) of the Bankruptcy Code.

H.      The Plan sets forth the following four (4) classes ("**Classes**," and each, a "**Class**") of claims ("**Claims**," and each, a "**Claim**") and equity interests ("**Equity Interests**") for each of the Debtors:  Class 1 - priority non-tax unsecured Claims; Class 2 - secured Claims; Class 3 - general unsecured Claims; and Class 4 - Equity Interests.

I.      Class 1 and Class 2 are unimpaired under the Plan, and pursuant to section 1126(f) of the Bankruptcy Code, are conclusively presumed to have accepted the Plan. Class 3 is impaired under the Plan. Class 4 is not entitled to receive any distributions under the Plan, and pursuant to section 1126(g) of the Bankruptcy Code, is conclusively presumed to have rejected the Plan.

J.      With respect to each impaired Class of Claims or Equity Interests, each holder of a Claim of such Class or Equity Interest (i) has accepted the Plan or (ii) will receive or retain under the Plan on account of such Claim property of a value, as of the date the Plan becomes effective, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code, thereby satisfying section 1129(a)(7) of the Bankruptcy Code.

K.      The Plan has been accepted in writing by the requisite number and percentage of Class 3 creditors entitled to vote and who timely submitted ballots to accept or reject the Plan, without including the acceptance of the Plan by any insiders, thereby satisfying section (a)(8) as to Class 3, and (a)(10) of the Bankruptcy Code.

L.     The Plan provides that with respect to a Claim of a kind specified in sections 507(a)(1) through 507(a)(8) of the Bankruptcy Code, on the effective date of the Plan, the holder of such Claim will receive on account of such Claim cash equal to the allowed amount of such Claim, thereby satisfying or rendering moot section 1129(a)(9) of the Bankruptcy Code.

M.     The complete liquidation of all remaining property of the Debtors' estates is proposed in the Plan, thereby satisfying or rendering moot section 1129(a)(11) of the Bankruptcy Code.

N.     All fees payable under 28 U.S.C. § 1930 have been or will be paid on the effective date of the Plan, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

O.     The Debtors are not obligated to pay any retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code, at any time prior to confirmation of the Plan, thereby satisfying or rendering moot section 1129(a)(13) of the Bankruptcy Code.

P.     The Debtors are business entities and are not required to pay domestic support obligations, thereby satisfying or rendering moot section 1129(a)(14) and (15) of the Bankruptcy Code.

Q.     The Plan provides that all transfers of property under the Plan shall be made in accordance with applicable provisions of non-bankruptcy law governing the Debtors, thereby satisfying section 1129(a)(16) of the Bankruptcy Code.

R.     The Plan does not discriminate unfairly in that all similarly situated Claims or Equity Interests placed in each Class are substantially similar to other Claims or Equity Interests, as the case may be, in each such Class.

S.     The Plan treats Equity Interests fairly and equitably, as no holder of an interest junior to the Equity Interests will receive or retain any property under the Plan on account of such interest junior to that of the Equity Interests, thereby satisfying section 1129(b) of the Bankruptcy Code.

T.     No other plan of liquidation or reorganization has been presented to the Court for approval, and thus, the Plan is the only plan being approved by the Court, thereby satisfying section 1129(c) of the Bankruptcy Code.

U.     The Plan is not being proposed to avoid taxes or the application of section 5 of the Securities Act of 1933, thereby satisfying section 1129(d) of the Bankruptcy Code.

V.     The Debtors shall be deemed to have rejected all executory contracts and unexpired leases not expressly assumed or rejected prior to or in connection with the entry hereof.

W.     There is no just reason to stay the enforcement of this Order.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1.     The above-described findings be and they hereby are incorporated herein as if fully set forth.

2.     The Creditor Trust Agreement, in the form attached to the Plan as Exhibit "A", is hereby approved and all parties thereto are authorized to execute same.

3.     The Disclosure Statement is approved.

4.     The Plan, a copy of which is attached hereto as Exhibit A, is confirmed pursuant to 11 U.S.C. § 1141.

5.     Pursuant to Section 8.04 of the Plan, any applicable state agencies are hereby authorized to register the Debtors as dissolved as of the effective date of the Plan.

6.     This Order substantially conforms to the Official Form required under Bankruptcy Rule 3020(c).

7.     The form of the *Notice of (A) Confirmation; (B) Effective Date; and (C) Bar Dates for Filing Administrative Claims, Professional Fee Claims, and Rejection Damages* (the "**Notice**"), attached hereto as Exhibit B, is hereby approved, and the Debtors are authorized to mail such Notice as required under Bankruptcy Rule 3020(c) no later than three (3) business days after docketing of this Order.  All Professional Fee Claims (as that term is defined in the Notice) shall be scheduled for presentment on October 24, 2017, at 11:00 a.m. (Central Time).

8.     The Court retains jurisdiction to issue any order necessary to administer the Debtors' estates, as set forth in Bankruptcy Rule 3020(d) and the Plan.

9.     This Order shall not be stayed pursuant to Bankruptcy Rule 3020(e).

10.     A post-confirmation status hearing shall be held before the undersigned on October 24, 2017, at 11:00 a.m. (Central Time).

Dated: August _____, 2017

_____
UNITED STATES BANKRUPTCY JUDGE

**3 0 AUG 2017**

*This Order Prepared by:*
ADAM P. SILVERMAN, ESQ. (ARDC #6256676)
ERICH S. BUCK, ESQ. (ARDC #627635)
ADELMAN & GETTLEMAN, LTD.
53 W. Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Tel. (312) 435-1050
Fax (312) 435-1059

Counsel for Marbles Holdings, LLC, Marbles LLC, and
Marbles Brain Workshop, LLC

# Exhibit A to Order Approving Disclosure Statement and Confirming Joint Liquidating Plan

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MARBLES HOLDINGS, LLC, et al.,[1] | ) | Case No. 17-3309 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Honorable Timothy A. Barnes |
| _____ | ) | |

## JOINT LIQUIDATING PLAN

TO:     THE HONORABLE TIMOTHY A. BARNES,
         U.S. BANKRUPTCY JUDGE:

## INTRODUCTION[2]

MARBLES HOLDINGS, LLC, MARBLES LLC, and MARBLES BRAIN WORKSHOP, LLC, debtors and debtors in possession, and the OFFICIAL COMMITTEE OF UNSECURED CREDITORS hereby propose this Plan pursuant to the provisions of Chapter 11 of the Bankruptcy Code. Reference is made to the accompanying Disclosure Statement and exhibits thereto for a discussion of the Debtors' history, business, results of operations and properties, the post-petition liquidation of substantially all of the Debtors' assets, a summary of the assets and liabilities of the Debtors, a summary of what creditors and Equity Interest holders can expect to receive under the Plan, a summary of the procedures and voting requirements necessary for confirmation of the Plan, a discussion of certain alternatives to the Plan in the event that the Plan is not confirmed, and related information. All holders of Claims and Equity Interests should read the Disclosure Statement and the Plan carefully – and consult with their counsel and other applicable professionals – before voting to accept or reject the Plan.

As more fully described in the Disclosure Statement, the Plan must be approved by the requisite number of creditors, and the Bankruptcy Court must find that the Plan meets the applicable legal standards before it can be confirmed. If the Plan is not confirmed, the Bankruptcy Court may order the Chapter 11 Cases dismissed, or converted to liquidating cases under Chapter 7 of the Bankruptcy Code, or the Debtors or other parties in interest may propose a different plan.

The Plan proposes to substantively consolidate the Debtors' estates solely for purposes of distributions under the Plan (and not for voting purposes), and to vest all of the assets of the

---

[1] The debtors in these Chapter 11 cases, along with the last four digits of each debtor's federal taxpayer identification number, are (i) Marbles Holdings, LLC (9547); Marbles LLC (3081); and Marbles Brain Workshop, LLC (0303).

[2] Any capitalized terms used herein without a corresponding meaning after their initial use shall mean and refer to the definitions of such capitalized terms provided in Article I of this Plan.

consolidated Debtors into a single estate for distribution in accordance with the Plan, as explained in more detail in Section 8.01.

## RULES OF INTERPRETATION AND COMPUTATION OF TIME

For purposes of the Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or schedule, filed or to be filed, means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to the Plan; (d) any reference to an entity as a holder of a Claim or Equity Interest includes that entity's successors and assigns; (e) all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (f) the words "herein," "hereunder," "hereto," and others of similar import refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (h) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules (as defined below) will apply; (i) in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply; and (j) the word "including" shall not be deemed to be exclusive and shall mean "including without limitation."

## ARTICLE I

## DEFINITIONS

The definitions and rules of construction set forth in the Rules and sections 101 and 102 of the Bankruptcy Code shall apply when the terms defined or construed therein are used in the Plan. Said definitions and rules of construction shall be supplemented by the following definitions:

**1.01    503(b)(9) Claims** shall mean those Claims arising under section 503(b)(9) of the Bankruptcy Code.

**1.02    503(b)(9) Funds** shall mean $12,000 of Estate Funds dedicated to payment of any 503(b)(9) Claims, or such lesser amount sufficient to satisfy all filed 503(b)(9) Claims in full.

**1.03    2017 Tax Return Fee** shall mean $24,000 from the DIP Budget specifically earmarked for payment to the Debtors' accountant, RSM US LLP, for preparation of the Debtors' 2017 tax returns.

**1.04    A&G** shall mean Adelman & Gettleman, Ltd., the Debtors' bankruptcy counsel in the Chapter 11 Cases.

**1.05    Administrative Expense Bar Date** shall mean thirty (30) days following the Confirmation Date, the deadline by which requests for payment of (a) any Professional Fee

2

Claims arising prior to the Effective Date, and (b) any other Administrative Expense Claims arising after August 4, 2017 but prior to the Effective Date, must be filed in the Chapter 11 Cases.

**1.06    Administrative Expense Claim** shall mean any cost, claim or expense of administration of the Chapter 11 Cases entitled to priority in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Estates including, without limitation, all Professional Fee Claims to the extent Allowed by the Bankruptcy Court against the Estates under sections 330, 331 and 503 of the Bankruptcy Code, and including fees due the United States Trustee assessed against the Estates pursuant to 28 U.S.C. § 1930(a)(6).

**1.07    Administrative Expense Reserve Funds** shall mean a sufficient reserve of Estate Funds to pay any (a) accrued but unpaid U.S. Trustee Fees through the Effective Date and (b) accrued but unpaid Administrative Expenses Claims actually budgeted under the DIP Budget, including any Professional Fee Claim(s) of the Debtors' counsel and the CPO Fee Claim.

**1.08    Allowed** or **Allowed Claim** shall mean a Claim or any portion thereof (1) that has been allowed by a final and non-appealable order of the Bankruptcy Court, (2) that has been scheduled as a liquidated, non-contingent and undisputed Claim in an amount greater than zero in the Schedules for which no conflicting proof of claim has been filed and as to which no objection has been filed, or (3) that is the subject of a timely filed proof of claim that has been expressly allowed in a liquidated amount (x) in the Plan, (y) by final and non-appealable order of the Bankruptcy Court, or (z) after the Effective Date, by the Creditor Trustee in writing. Except as otherwise provided in the Plan or by order of the Bankruptcy Court, "Allowed" and "Allowed Claim" shall not include interest, fees, costs or charges on such Claim from and after the Petition Date, except as provided in section 506(b) of the Bankruptcy Code or as otherwise expressly set forth in the Plan.

**1.09    Amzak** shall mean Amzak Capital Management, LLC, the Debtors' former pre- and postpetition secured lender (and assignor of such debt to Spin Master), and an indirect Equity Interest holder in Holdings through its ownership interest in AMPR.

**1.10    AMPR** shall mean AMPR Marbles Investors, LLC, an Equity Interest holder in Holdings.

**1.11    Ballots** shall mean the ballots mailed to holders of Class 3 General Unsecured Claims for voting on whether to accept or reject the Plan.

**1.12    Bankruptcy Code** shall mean title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*

**1.13    Bankruptcy Court** shall mean the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, or any court vested with jurisdiction over the Chapter 11 Cases.

**1.14    Bankruptcy Rules** shall mean the Federal Rules of Bankruptcy Procedure, as amended and supplemented by the Local Rules adopted by the Bankruptcy Court.

3

**1.15   Bar Dates** shall mean the General Bar Date and the Governmental Unit Bar Date.

**1.16   Chapter 11 Cases** shall mean the chapter 11 cases commenced under Chapter 11 of the Bankruptcy Code by the Debtors on the Petition Date, styled *In re Marbles LLC,* Case No. 17-3308; *In re Marbles Holdings, LLC,* Case No. 17-3309; and *In re Marbles Brain Workshop, LLC,* Case No. 17-3310, jointly administered under Case No. 17-3309, all currently pending in the Bankruptcy Court.

**1.17   Claim(s)** shall mean a claim (as defined in section 101(5) of the Bankruptcy Code) against one or more of the Debtors, including, but not limited to: (a) any right to payment from the Debtors whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from the Debtors, whether or not such right is reduced to judgment, fixed, contingent, mature, unmatured, disputed, undisputed, secured or unsecured.

**1.18   Claims Objection Deadline** shall mean the date by which the Creditor Trustee must file and serve any objections to 503(b)(9) Claims, Priority Claims or General Unsecured Claims, which date is one hundred eighty (180) days after the Effective Date, or as extended by order of the Bankruptcy Court.

**1.19   Claims Register** shall mean the register of all Claims filed in the Chapter 11 Cases and maintained by the Debtors' court approved noticing, claims and solicitation agent, GCG.

**1.20   Class** shall mean any group or category into which holders of Claims or Equity Interests are classified pursuant to Article II.

**1.21   Collateral** shall mean any property or interest in property of the Estates subject to a lien, security interest, or other encumbrance to secure the payment or performance of a claim, which lien, security interest or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state or federal law.

**1.22   Committee** shall mean the official committee of unsecured creditors appointed in the Chapter 11 Cases on February 13, 2017 [Docket No. 72].

**1.23   Committee Members** shall mean those persons appointed by the Office of the United States Trustee to serve as members of the Committee.

**1.24   Committee Professional Fee Allocation** shall mean cash in the amount of $300,000 from Spin Master held in trust by PSZJ for the payment of any Allowed fees and expenses incurred by the Committee Professionals and expenses of Committee Members in the Chapter 11 Cases. The Committee Professional Fee Allocation, along with any unused portion of the Priority Claims Reserve, is a maximum limit (*i.e.*, a cap) on the fees and expenses of the Committee Professionals and expenses of Committee Members in the Chapter 11 Cases.

**1.25   Committee Professionals** shall mean Professional Persons retained by the Committee.

4

**1.26**  **Confirmation Date** shall mean the date on which the Bankruptcy Court enters the Confirmation Order.

**1.27**  **Confirmation Hearing** shall mean August 30, 2017 at 11:00 a.m. (Central Time), the date and time of the hearing on the adequacy of the Disclosure Statement and confirmation of the Plan.

**1.28**  **Confirmation Order** shall mean the Final Order that the Bankruptcy Court enters pursuant to section 1129 of the Bankruptcy Code confirming the Plan and approving the transactions contemplated therein, in accordance with Section 11.01.

**1.29**  **CPO** shall mean the consumer privacy ombudsman appointed by the U.S. Trustee in the Chapter 11 Cases on or about April 7, 2017, tasked, in accordance with section 332 of the Bankruptcy Code, with evaluating the Debtors' applicable privacy policies governing the Debtors' customer data.

**1.30**  **CPO Fee Claim** shall mean the fees and expenses incurred by the CPO in the Chapter 11 Cases.

**1.31**  **Creditor Trust** shall mean the entity established pursuant to the Plan, the Creditor Trust Agreement and the Confirmation Order for the sole and exclusive benefit of the Creditor Trust Beneficiaries. The Creditor Trust shall liquidate and distribute the Creditor Trust Assets in accordance with the Creditor Trust Agreement and the Plan.

**1.32**  **Creditor Trust Account(s)** shall mean one or more segregated interest-bearing trust fund accounts established by the Creditor Trustee at a federally insured depository bank(s).

**1.33**  **Creditor Trust Agreement** shall mean the agreement to be executed as soon as reasonably practicable after the Confirmation Date, in a form substantially similar to the Creditor Trust Agreement attached hereto as Exhibit A, among the Debtors and the Creditor Trustee, which shall govern the obligations of the Creditor Trustee with respect to the Creditor Trust Assets.

**1.34**  **Creditor Trust Assets** shall mean (a) the Creditor Trust Funds, (b) the Creditor Trust Causes of Action, (c) the Debtors' books and records pertaining to the Creditor Trust Causes of Action, (d) and all attorney-client privileges of the Debtors existing as of the Effective Date.

**1.35**  **Creditor Trust Beneficiaries** shall mean the holders of Allowed Unbudgeted Expense Claims, Allowed 503(b)(9) Claims, Allowed Priority Claims, and Allowed General Unsecured Claims entitled to share in the Creditor Trust Assets.

**1.36**  **Creditor Trust Causes of Action** shall mean any and all interests of the Debtors in (a) claims and causes of action arising under Chapter 5 of the Bankruptcy Code or their state law analogs, including preference and fraudulent transfer claims, (b) commercial tort claims, and (c) rights and defenses of setoff and recoupment with respect to the foregoing claims and causes of action, but excluding any claims or causes of action against the DIP Lender, AMPR or Amzak.

**1.37    Creditor Trust Expenses** shall mean the reasonable fees and expenses incurred by the Creditor Trust and any professionals retained by the Creditor Trustee from the Creditor Trust Assets and any other administrative expenses and costs of the Creditor Trust, including bank fees, accountants and U.S. Trustee Fees.

**1.38    Creditor Trust Funds** shall mean the Priority Claim Reserve Funds, the Plan Reserve Funds and the 503(b)(9) Funds.

**1.39    Creditor Trust Interests** shall mean the non-transferable interests in the Creditor Trust that are issued to Creditor Trust Beneficiaries pursuant to the Plan.

**1.40    Creditor Trustee** shall mean such person or entity, including any replacements thereof or successors thereto, as may be designated by the Committee, to serve as a custodian for the Creditor Trust and to oversee the liquidation and distribution of the Creditor Trust Assets held therein pursuant to sections 1123 and 1129 of the Bankruptcy Code, and further subject to the provisions of Article IX and the Creditor Trust Agreement. Any person or entity serving as the Creditor Trustee shall be a "disinterested person" under section 101(14) of the Bankruptcy Code.

**1.41    Debtors** shall mean Marbles Holdings, LLC, Marbles, LLC, and Marbles Brain Workshop, LLC, debtors and debtors in possession, and each, a "**Debtor**."

**1.42    DIP Budget** shall mean the Debtors' second amended budget [ECF No. 321], as may be amended from time to time, to the DIP Financing Order.

**1.43    DIP Financing Order** shall mean the *Final Order (I) Authorizing the Debtors to Obtain Secured Postpetition Financing on a Super-Priority and Priming Lien Basis, (II) Authorizing the Debtors to Use Cash Collateral of Existing Prepetition Secured Lenders and Granting Related Adequate Protection* [ECF No. 210].

**1.44    DIP Lender** shall mean Spin Master, Ltd. the Debtors' pre- and postpetition secured lender by assignment in the Chapter 11 Cases.

**1.45    Disallowed** or **Disallowed Claim** shall mean (a) a Claim, or any portion thereof, that has been disallowed by a Final Order or by other agreement of a holder of a Claim; (b) a Claim that has been listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, a Final Order, or other applicable law; or (c) a Claim that has not been listed in the Schedules and as to which no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, a Final Order, or other applicable law.

**1.46    Disclosure Statement** shall mean that certain Disclosure Statement submitted by the Plan Proponents in connection with the Plan.

**1.47    Disputed** or **Disputed Claim** shall mean any Claim or portion thereof for which an objection has been filed prior to the Claims Objection Deadline.

6

**1.48    Disputed Claim Reserve(s)** shall mean such reserve or reserves of Creditor Trust Funds or proceeds of Creditor Trust Assets, as the case may be, established in the discretion of the Creditor Trustee for payment of any Disputed Claims in the event such Claims are ultimately Allowed.

**1.49    Disputed Ownership Fund** shall mean a "disputed ownership fund" within the meaning of Treasury Regulation section 1.468B-9.

**1.50    Distribution Dates** shall mean those dates upon which the Creditor Trustee shall make the distributions to holders of Allowed Claims described in Article IX.

**1.51    Effective Date** shall mean the later of: (a) thirty (30) calendar days from entry of the Confirmation Order; or (b) the date on which the Confirmation Order shall have become a Final Order, in accordance with Section 11.02.

**1.52    ELM** shall mean ELM Enterprises d/b/a Sign Innovation.

**1.53    Equity Interest** shall mean any equity interest in any Debtor, including, but not limited to, all issued, unissued, authorized or outstanding shares of stock in any limited liability company membership interests, together with any warrants, options or contract rights to purchase or acquire such interests at any time.

**1.54    Estate Funds** shall mean all of the Debtors' cash on deposit at its depository institution, JPMorgan Chase Bank.

**1.55    Estates** shall mean all property of the Debtors' estates, as defined in section 541 of the Bankruptcy Code.

**1.56    Final Order** shall mean an order of the Bankruptcy Court, as to which the time to appeal, petition for certiorari or motion for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue or rehear shall have been waived in writing in form and substance satisfactory to the Creditor Trustee or, in the event that an appeal, writ of certiorari or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari or motion for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Rules, may be filed with respect to such order shall not preclude such order from being a Final Order.

**1.57    GCG** shall mean Garden City Group, LLC, the Debtors' noticing, claims and solicitation agent in the Chapter 11 Cases.

**1.58    General Bar Date** shall mean May 30, 2017, the last day to file proofs of claims in the Chapter 11 Cases for pre-Petition Date Claims of non-Governmental Units against the Debtors.

**1.59** **General Unsecured Claim** shall mean any Claim of a creditor not secured by a lien, security interest or other encumbrance on property of the Estates, arising prior to the Petition Date, that is not a Secured Claim, Administrative Expense Claim, Priority Claim, or Equity Interest.

**1.60** **Governmental Unit** shall mean a "governmental unit" as defined under section 101(27) of the Bankruptcy Code.

**1.61** **Governmental Unit Bar Date** shall mean shall mean August 2, 2017, the last day to file proofs of claims in the Chapter 11 Cases for pre-Petition Date Claims of Governmental Units against the Debtors.

**1.62** **Holdings** shall mean Marbles Holdings, LLC, a Delaware limited liability company, debtor and debtor in possession.

**1.63** **Impaired** shall mean with respect to a Claim or Class of Claims, a Claim or Class of Claims that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.64** **IP Assets** shall mean the Debtors' intellectual intangible property and such other assets that were central to the Debtors' business, including trademarks, domain names, proprietary toys and games, and customer data; certain inventory; certain fixed assets in the Debtors' headquarters and leased warehouse; certain books and records; rights in executory contracts and unexpired leases; and other assets pertaining to the Debtors' retail, e-commerce and wholesale businesses.

**1.65** **KTR** shall mean KTR Illinois LLC, the landlord of the warehouse the Debtors leased in Schiller Park, Illinois prior to and during the Chapter 11 Cases.

**1.66** **Lease Rejection Orders** shall mean the orders entered by the Bankruptcy Court on February 28, 2017 [ECF No. 154] and March 28, 2017 [ECF No. 197], respectively, authorizing and approving the Debtors' rejection of the Debtors' leases of the Retail Stores pursuant to section 365 of the Bankruptcy Code.

**1.67** **M Blocker** shall mean M Blocker Corporation, an Equity Interest holder in Marbles.

**1.68** **M Coy** shall mean M Coy Group, LLC.

**1.69** **Marbles** shall mean Marbles LLC, an Illinois limited liability company, debtor and debtor in possession.

**1.70** **NOW** shall mean NOW Express, Inc., an affiliate of RIM and the owner of a warehouse in Roselle, Illinois in which the Debtors stored inventory prior to and during the Chapter 11 Cases.

**1.71** **Objection Deadline** shall mean August 25, 2017 at 5 p.m. (Central Time), the deadline for filing any objections to the Disclosure Statement or the Plan.

8

**1.72**  **Petition Date** shall mean February 3, 2017.

**1.73**  **Plan** shall mean this Joint Liquidating Plan, as amended in accordance with the terms hereof or modified in accordance with the Bankruptcy Code.

**1.74**  **Plan Proponents** shall mean the Debtors and the Committee.

**1.75**  **Plan Reserve Funds** shall mean cash of approximately $248,980 provided by Spin Master for the benefit of Creditor Trust Expenses, Unbudgeted Expense Claims, Priority Claims, and General Unsecured Claims.

**1.76**  **Priority Claim Reserve Funds** shall mean cash in the amount of up to $100,000 specifically earmarked for payment of Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims, of which the first $50,000 are Estate Funds contributed by Spin Master with the second $50,000 currently being held in trust by PSZJ.

**1.77**  **Priority Claims** shall mean Priority Tax Claims and Priority Non-Tax Claims.

**1.78**  **Priority Non-Tax Claims** shall mean those Claims entitled to priority under section 507 of the Bankruptcy Code, including section 507(a)(4), (5) and (7) but excluding section 507(a)(2) and (8).

**1.79**  **Priority Tax Claims** shall mean those Claims held by a "governmental unit", as defined in section 101(27) of the Bankruptcy Code, which are entitled to priority under section 507(a)(8) of the Bankruptcy Code.

**1.80**  **Professional Fee Claims** shall mean Administrative Expense Claims held by Professional Persons.

**1.81**  **Professional Persons** shall mean persons retained or to be compensated in the Chapter 11 Cases pursuant to sections 327, 328, 330, 331, and 503(b) of the Bankruptcy Code.

**1.82**  **Pro Rata** shall mean the proportion that the amount of a General Unsecured Claim in Class 3 bears to the aggregate amount of all Claims of such Class, inclusive of any subclasses thereof (including Disputed Claims until Disallowed).

**1.83**  **PSZJ** shall mean Pachulski Stang Ziehl & Jones LLP, primary counsel to the Committee in the Chapter 11 Cases.

**1.84**  **Remaining Estate Assets** shall mean all assets of the Debtors other than the Estate Funds, the Priority Claim Reserve Funds, the Plan Reserve Funds, the Committee Professional Fee Allocation and the Creditor Trust Causes of Action.

**1.85**  **Retail Stores** shall mean the thirty-seven (37) retail stores the Debtors leased and operated in thirteen (13) states as of the Petition Date.

**1.86   RIM** shall mean RIM Logistics, Ltd., an affiliate of NOW and the Debtors' broker or agent to clear inventory through United States customs prior to and during the Chapter 11 Cases.

**1.87   Schedules** shall mean, individually or collectively, as the case may be, the Debtors' Bankruptcy Schedules (as amended) on file in the Chapter 11 Cases.

**1.88   Secured Claim** shall mean a Claim that is secured by a valid, perfected and enforceable, and non-avoidable lien, security interest or encumbrance upon Collateral, to the extent of the value, as of the Effective Date, of such lien, security interest or encumbrance as determined by a Final Order, or as otherwise agreed to in writing by the Debtors and the holder of such Claim.

**1.89   Spin Master** shall mean Spin Master, Ltd.

**1.90   Unbudgeted Expense Claim** shall mean an Administrative Expense Claim that is not provided for in the DIP Budget.

**1.91   Unimpaired** shall mean with respect to a Claim or Class of Claims, a Claim or Class of Claims that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

**1.92   U.S. Trustee Fees** shall mean fees due to the U.S. Trustee's office under 28 U.S.C. § 1930(a)(6).

**1.93   Voting Deadline** shall mean August 14, 2017 at 4:00 p.m. (Central Time), the date and time by which holders of General Unsecured Claims have to submit their Ballots to accept or reject the Plan.

**1.94   Voting Record Date** shall mean the date as of which the identity of holders of Claims is set for purposes of determining the entities entitled to receive and vote.

**1.95   WLG** shall mean The William Lawrence Group.

**1.96   Workshop** shall mean Marbles Brain Workshop, LLC, a Delaware limited liability company, debtor and debtor in possession.

**1.97   WTC** shall mean the Debtors' former Retail Store located at Westfield World Trade Center in New York City, New York.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

**2.01   Class 1**.  All Allowed Priority Non-Tax Claims, further classified into subclasses as to the applicable Debtor.

**2.02   Class 2**.  All Allowed Secured Claims, further classified into subclasses as to the applicable Debtor.

**2.03**   **Class 3**.  All Allowed General Unsecured Claims, including Allowed General Unsecured Claims arising from the rejection of executory contracts and unexpired leases, and in each case, further classified into subclasses as to the applicable Debtor; but excepting those Claims or Equity Interests enumerated in the Classes 1 and 2 above, and 4 below.

**2.04**   **Class 4**.  All Equity Interests, further classified into subclasses as to the applicable Debtor.

## ARTICLE III

## TREATMENT OF UNCLASSIFIED ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

**3.01**   **Administrative Expense Claims**.  In full and complete satisfaction, discharge, and release of and in exchange for its Allowed Administrative Expense Claim, unless otherwise agreed to by the holder of an Administrative Expense Claim, each holder of an Allowed Administrative Expense Claim shall receive payment in full in cash pursuant to the terms hereof upon the later of: (a) the date of allowance by order of the Bankruptcy Court; or (b) the Effective Date. Administrative Expense Claims include, but are not limited to, Professional Fee Claims, 503(b)(9) Claims, U.S. Trustee Fees, the CPO Fee Claim, and Unbudgeted Expense Claims.

Pursuant to the Administrative Expense Bar Date, (a) any Professional Fee Claims arising prior to the Effective Date, and (b) any other Administrative Expense Claims arising after August 4, 2017 but prior to the Effective Date, must be filed no later than thirty (30) days following the Confirmation Date, unless an earlier date is set by separate Bankruptcy Court order. The Administrative Expense Bar date does not apply to 503(b)(9) Claims, U.S. Trustee Fees or any outstanding fees or expenses of GCG.

Allowed Administrative Expense Claims shall be paid prior to any payments on the Allowed Claims and Allowed Equity Interests in Classes 1, 3 and 4; provided, however, A&G or the Creditor Trustee, as the case may be, shall be entitled to make such other distributions as are required under the Plan after the Effective Date, provided further that in the event any of the Administrative Expense Claims have not become Allowed Claims prior to the Effective Date, then A&G or the Creditor Trustee, as the case may be, shall hold in suspense such amounts of the Creditor Trust Funds as are in its or her reasonable discretion sufficient to pay such Administrative Expense Claims pending the Final Order of such Administrative Expense Claims.

**3.02**   **Priority Tax Claims**.  In full and complete satisfaction, discharge, and release of and in exchange for its Priority Tax Claim, unless otherwise agreed to by the holder of an Allowed Priority Tax Claim and the Creditor Trustee, each holder of any Allowed Priority Tax Claim shall be paid in full in cash from the Creditor Trust Funds upon the later of: (a) the date of allowance by order of the Bankruptcy Court; or (b) the Effective Date.

The Allowed Priority Tax Claims shall be paid prior to any payments on the Allowed Claims and Allowed Equity Interests in Classes 3 and 4; provided, however, the Creditor Trustee shall be entitled to make such other distributions as are required under the Plan after the Effective Date, provided further that in the event that any of the Priority Tax Claims have not

become Allowed Claims prior to the Effective Date, then the Creditor Trustee shall hold in suspense such amounts of the Creditor Trust Funds as are in her reasonable discretion sufficient to pay such Priority Tax Claims pending the Final Order of such Priority Tax Claims.

## ARTICLE IV

## CLAIMS NOT IMPAIRED UNDER THE PLAN

### 4.01    Class 1 - Priority Non-Tax Claims

    **(a)**    Class 1(a): Class 1(a) consists of Priority Claims against Holdings other than Priority Tax Claims, which are addressed separately as set forth above. Allowed Class 1(a) Claims are Unimpaired and shall be paid in order of the priorities set forth in section 507 of the Bankruptcy Code in full in cash from the Creditor Trust Funds upon the later of: (i) the date of allowance by order of the Bankruptcy Court; or (ii) the Effective Date; provided, however, the Creditor Trustee shall be entitled to make such other distributions as are required under the Plan after the Effective Date, provided further that in the event any Class 1(a) Claims have not become Allowed Claims prior to the Effective Date, the Creditor Trustee shall hold in suspense such amounts of the Creditor Trust Funds as are in her reasonable discretion sufficient to pay such Class 1(a) Claims pending the Final Order respecting such Class 1(a) Claims.

    **(b)**    Class 1(b): Class 1(b) consists of Priority Claims against Marbles other than Priority Tax Claims, which are addressed separately as set forth above. Allowed Class 1(b) Claims are Unimpaired and shall be paid in order of the priorities set forth in section 507 of the Bankruptcy Code in full in cash from the Creditor Trust Funds upon the later of: (i) the date of allowance by order of the Bankruptcy Court; or (ii) the Effective Date; provided, however, the Creditor Trustee shall be entitled to make such other distributions as are required under the Plan after the Effective Date, provided further that in the event that any Class 1(b) Claims have not become Allowed Claims prior to the Effective Date, the Creditor Trustee shall hold in suspense such amounts of the Creditor Trust Funds as are in her reasonable discretion sufficient to pay such Class 1(b) Claims pending the Final Order respecting such Class 1(b) Claims.

    **(c)**    Class 1(c): Class 1(c) consists of Priority Claims against Workshop other than Priority Tax Claims, which are addressed separately as set forth above. Allowed Class 1(c) Claims are Unimpaired and shall be paid in order of the priorities set forth in section 507 of the Bankruptcy Code in full in cash from the Creditor Trust Funds upon the later of: (i) the date of allowance by order of the Bankruptcy Court; or (ii) the Effective Date; provided, however, the Creditor Trustee shall be entitled to make such other distributions as are required under the Plan after the Effective Date, provided further that in the event that any Class 1(c) Claims have not become Allowed Claims prior to the Effective Date, the Creditor Trustee shall hold in suspense such amounts of the Creditor Trust Funds as are in her reasonable discretion sufficient to pay such Class 1(c) Claims pending the Final Order respecting such Class 1(c) Claims.

### 4.02    Class 2 - Secured Claims

**(a)**   Class 2(a): Class 2(a) consists of Secured Claims against Holdings, and each such holder of a Secured Claim against Holdings shall be subject to the following treatment:

**(i)**   Spin Master holds a Secured Claim against the Debtors in the amount of $15,518,651.80.[3] Spin Master's Secured Claim, less its credit purchase of $2.5 million for substantially all of the IP Assets, is deemed Allowed pursuant to the DIP Financing Order. In full and final satisfaction of its Claim, all Estate Funds and all Remaining Estate Assets (but excluding, for the avoidance of doubt, the Reserved Administrative Expense Funds, the 2017 Tax Return Fee, and the Creditor Trust Assets) shall be transferred to Spin Master on or as soon as practicable following the Effective Date.

**(ii)**   NOW and RIM asserted Claims totaling $147,294.40 secured by possessory liens on certain inventory owned by Holdings and Marbles. Pursuant to the DIP Financing Order, NOW and RIM received adequate protection payments in full satisfaction of their alleged Secured Claims. Accordingly, the Claims of both NOW and RIM are deemed Disallowed as of the Effective Date.

**(iii)**   ELM has filed a Claim against Holdings in the amount of $60,992.05 allegedly secured by a mechanic's lien on certain signage located at WTC. In connection with the Lease Rejection Orders, the Debtors abandoned any interest in the property in which ELM has claimed a security interest. Accordingly, any security interest allegedly claimed by ELM is no longer a Secured Claim against Holdings' estate, and such Secured Claim shall be deemed Disallowed as of the Effective Date of the Plan. To the extent ELM has an unsecured or under-secured Claim(s), such Claim(s) is classified as a Class 3 General Unsecured Claim(s).

**(iv)**   M Coy has filed a Claim against each of the Debtors in the amount of $52,929.30 allegedly secured by a mechanic's lien on certain furnishings, fixtures and display materials located at WTC. In connection with the Lease Rejection Orders, the Debtors abandoned any interest in the property in which M Coy claims a security interest. Accordingly, any security interest allegedly claimed by M Coy is no longer a Secured Claim against the Debtors' estates, and such Secured Claim shall be deemed Disallowed as of the Effective Date of the Plan. To the extent M Coy has an unsecured or under-secured Claim(s), such Claim(s) is classified as a Class 3 General Unsecured Claim(s).

**(v)**   KTR has filed a Claim against Holdings in the amount of $35,319.58 allegedly secured by its possession of a security deposit in the amount of $20,000. On or as soon as practicable following the later of the Effective Date or the date on which KTR's Claim is deemed an Allowed Secured Claim, the Debtors shall be deemed to have transferred to KTR said security deposit (*i.e.*, its Collateral).

---

[3] While Spin Master's Secured Claim against the Debtors totals $15,518,651.80, Workshop is only liable on approximately $368,932.46 of the Claim (per Workshop's Schedules). However, that distinction is irrelevant given the treatment of Spin Master's Claim under the Plan.

(vi)    WLG has filed a Claim[4] in the amount of $38,622.21, of which
$36,662.21 is allegedly secured by a mechanic's lien on certain property located at WTC. In
connection with the Lease Rejection Orders, the Debtors abandoned any interest in the property
in which WLG has claimed a security interest. Accordingly, any security interest allegedly
claimed by WLG is no longer a Secured Claim against any of the Debtors' estates, and such
Secured Claim shall be deemed Disallowed as of the Effective Date of the Plan. To the extent
WLG has an unsecured or under-secured Claim(s), such Claim(s) is classified as a Class 3
General Unsecured Claim(s).

(b)    Class 2(b): Class 2(b) consists of Secured Claims against Marbles, and
each such holder of a Secured Claim against Marbles shall be subject to the following treatment:

(i)    Spin Master holds a Secured Claim against the Debtors in the
amount of $15,518,651.80. Spin Master's Secured Claim, less its credit purchase of $2.5 million
for substantially all of the IP Assets, is deemed Allowed pursuant to the DIP Financing Order. In
full and final satisfaction of its Claim, all Estate Funds and all Remaining Estate Assets (but
excluding, for the avoidance of doubt, the Reserved Administrative Expense Funds, the 2017
Tax Return Fee, and the Creditor Trust Assets) shall be transferred to Spin Master on or as soon
as practicable following the Effective Date.

(ii)    NOW and RIM asserted Claims totaling $147,294.40 secured by
possessory liens on certain inventory owned by Holdings and Marbles. Pursuant to the DIP
Financing Order, NOW and RIM received adequate protection payments in full satisfaction of
their alleged Secured Claims. Accordingly, the Claims of both NOW and RIM are deemed
Disallowed as of the Effective Date.

(iii)    M Coy has filed a Claim against each of the Debtors in the amount
of $52,929.30 allegedly secured by a mechanic's lien on certain furnishings, fixtures and display
materials located at WTC. In connection with the Lease Rejection Orders, the Debtors
abandoned any interest in the property in which M Coy claims a security interest. Accordingly,
any security interest allegedly claimed by M Coy is no longer a Secured Claim against the
Debtors' estates, and such Secured Claim shall be deemed Disallowed as of the Effective Date of
the Plan. To the extent M Coy has an unsecured or under-secured Claim(s), such Claim(s) is
classified as a Class 3 General Unsecured Claim(s).

(c)    Class 2(c): Class 2(c) consists of Secured Claims against Workshop, and
each such holder of a Secured Claim against Workshop shall be subject to the following
treatment:

(i)    Spin Master holds a Secured Claim against the Debtors in the
amount of $15,518,651.80. Spin Master's Secured Claim, less its credit purchase of $2.5 million
for substantially all of the IP Assets, is deemed Allowed pursuant to the DIP Financing Order. In
full and final satisfaction of its Claim, all Estate Funds and all Remaining Estate Assets (but
excluding, for the avoidance of doubt, the Reserved Administrative Expense Funds, the 2017

---

[4] Although WLG's proof of claim did not designate a particular Debtor, the Debtors' Schedules reflect
that WLG holds a General Unsecured Claim against Holdings.

Tax Return Fee, and the Creditor Trust Assets) shall be transferred to Spin Master on or as soon as practicable following the Effective Date.

**(ii)**    M Coy has filed a Claim against each of the Debtors in the amount of $52,929.30 allegedly secured by a mechanic's lien on certain furnishings, fixtures and display materials located at WTC. In connection with the Lease Rejection Orders, the Debtors abandoned any interest in the property in which M Coy claims a security interest. Accordingly, any security interest allegedly claimed by M Coy is no longer a Secured Claim against the Debtors' estates, and such Secured Claim shall be deemed Disallowed as of the Effective Date of the Plan. To the extent M Coy has an unsecured or under-secured Claim(s), such Claim(s) is classified as a Class 3 General Unsecured Claim(s).

## ARTICLE V

## TREATMENT OF CLAIMS AND EQUITY INTERESTS IMPAIRED UNDER THE PLAN

### 5.01    Class 3 - General Unsecured Claims

**(a)**    Class 3(a):   Class 3(a) consists of General Unsecured Claims against Holdings. General Unsecured Claims are Impaired, and shall be paid Pro Rata in cash from the Creditor Trust Assets net of the Creditor Trust Expenses upon the later of: (i) the Effective Date; (ii) the date of allowance by order of the Bankruptcy Court; or (iii) the date on which the Creditor Trustee makes distributions under the Plan on account of such Class 3 General Unsecured Claims. The Creditor Trustee shall disburse payments hereunder in such amounts as are in her reasonable discretion available on the Distribution Dates Pro Rata to the holders of the Allowed Class 3 Claims. There shall be no distributions from the Creditor Trust to any holders of Allowed Class 3 Claims until all Allowed Unbudgeted Expense Claims, Allowed 503(b)(9) Claims and Allowed Priority Claims have been paid in full or adequately reserved for in accordance with the terms of the Plan. To the extent any of the Class 3 Claims have not become Allowed Claims prior to the Confirmation Date, the Creditor Trustee may, on or prior to the Claims Objection Deadline, contest such Class 3 Claims, and assert and prosecute against the holder of any Class 3 Claim such claims, objections, causes of action, defenses and/or offsets against such holder as the Creditor Trustee may determine, in accordance with Article X.

**(b)**    Class 3(b):   Class 3(b) consists of General Unsecured Claims against Marbles. General Unsecured Claims are Impaired, and shall be paid Pro Rata in cash from the Creditor Trust Assets net of the Creditor Trust Expenses upon the later of: (i) the Effective Date; (ii) the date of allowance by order of the Bankruptcy Court; or (iii) the date on which the Creditor Trustee makes distributions under the Plan on account of such Class 3 General Unsecured Claims. The Creditor Trustee shall disburse payments hereunder in such amounts as are in her reasonable discretion available on the Distribution Dates Pro Rata to the holders of the Allowed Class 3 Claims. There shall be no distributions from the Creditor Trust to any holders of Allowed Class 3 Claims until all Allowed Unbudgeted Expense Claims, Allowed 503(b)(9) Claims and Allowed Priority Claims have been paid in full or adequately reserved for in accordance with the terms of the Plan. To the extent any of the Class 3 Claims have not become Allowed Claims prior to the Confirmation Date, the Creditor Trustee may, on or prior to the

Claims Objection Deadline, contest such Class 3 Claims, and assert and prosecute against the holder of any Class 3 Claim such claims, objections, causes of action, defenses and/or offsets against such holder as the Creditor Trustee may determine, in accordance with Article X.

(c)   Class 3(c):   Class 3(c) consists of General Unsecured Claims against Workshop. General Unsecured Claims are Impaired, and shall be paid Pro Rata in cash from the Creditor Trust Assets net of the Creditor Trust Expenses upon the later of: (i) the Effective Date; (ii) the date of allowance by order of the Bankruptcy Court; or (iii) the date on which the Creditor Trustee makes distributions under the Plan on account of such Class 3 General Unsecured Claims. The Creditor Trustee shall disburse payments hereunder in such amounts as are in her reasonable discretion available on the Distribution Dates Pro Rata to the holders of the Allowed Class 3 Claims. There shall be no distributions from the Creditor Trust to any holders of Allowed Class 3 Claims until all Allowed Unbudgeted Expense Claims, Allowed 503(b)(9) Claims and Allowed Priority Claims have been paid in full or adequately reserved for in accordance with the terms of the Plan. To the extent any of the Class 3 Claims have not become Allowed Claims prior to the Confirmation Date, the Creditor Trustee may, on or prior to the Claims Objection Deadline, contest such Class 3 Claims, and assert and prosecute against the holder of any Class 3 Claim such claims, objections, causes of action, defenses and/or offsets against such holder as the Creditor Trustee may determine, in accordance with Article X. The Debtors believe that any General Unsecured Claim which has been filed against Workshop (*i.e.*, Class 3(c)) is technically incorrect, as Workshop had no operations. The Debtors believe that only Spin Master has a valid claim against Workshop, but, pursuant to the DIP Financing Order, Spin Master will not share in any distributions from the Creditor Trust Assets on account of any under-secured portion of its Secured Claims. Accordingly, the Debtors reserve the right to object to any Claims asserted against Workshop and seek to reclassify such Claims as Class 3(a) or 3(b), as the case may be, upon approval of the Bankruptcy Court. Upon such reclassification, Class 3(c) may lack eligible Claims for voting whether to accept or reject the Plan. In such event, Class 3(c) will be deemed eliminated and there shall be no need for Class 3(c) to accept the Plan as a condition to its confirmation.

## 5.02   Class 4 - Equity Security Interests

(a)   Class 4(a): Class 4(a) consists of the holders of Equity Interests in Holdings. AMPR and M Blocker are the holders of 100% of the membership interests in and to Holdings. There will not be a distribution of any amounts to holders of Equity Interests, and all such interests shall be deemed canceled as of the Effective Date of the Plan.

(b)   Class 4(b): Class 4(b) consists of the holders of Equity Interests in Marbles. Holdings is the holder of 100% of the membership interests in and to Marbles. There will not be a distribution of any amounts to holders of Equity Interests, and all such interests shall be deemed canceled as of the Effective Date of the Plan.

(c)   Class 4(c): Class 4(c) consists of the holders of Equity Interests in Workshop. Holdings is the holder of 100% of the membership interests in and to Workshop. There will not be a distribution of any amounts to holders of Equity Interests, and all such interests shall be deemed canceled as of the Effective Date of the Plan.

## ARTICLE VI

## ACCEPTANCE OR REJECTION OF THE PLAN

**6.01**    **Voting Classes**. Each holder of a Class 3 General Unsecured Claim whose Claim is deemed Allowed for voting purposes is entitled to vote either to accept or to reject the Plan on behalf of the specific Debtor to which such Claim relates. A Class 3 Claim is deemed Allowed for voting purposes if it is either (a) listed in the Schedules as a liquidated, non-contingent and undisputed Claim or (b) filed and has not been adjudicated by the Bankruptcy Court as Disallowed. A Claim deemed Allowed for purposes of voting on the Plan is not, however, the same as an Allowed Claim for purposes of distribution under the Plan. As such, all Allowed Claims for voting purposes remain subject to objections for distribution purposes on or before the Claims Objection Deadline.

**6.02**    **Acceptance by Impaired Classes**.   An Impaired Class of Claims shall have accepted the Plan if: (a) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds (2/3) in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan, and (b) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half (1/2) in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. Each subclass of Class 3 General Unsecured Claims – *i.e.*, Class 3(a), 3(b) and 3(c) – must accept the Plan in order for the Plan to be considered accepted by the Class as a whole. Classes 1 and 2 are each unimpaired, deemed to have accepted the Plan and are not entitled to vote thereon.

**6.03**    **Presumed Rejection of Plan**.   The holders of Class 4 Equity Interests shall not receive any distributions under the Plan and are therefore deemed to reject the Plan and are not entitled to vote.

**6.04**    **Nonconsensual Confirmation**.   Because Class 4 is deemed to reject the Plan by operation of law, the Debtors will request the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code. Without limiting the foregoing, in the event that any Class of Claims entitled to vote on the Plan fails to accept the Plan as required by section 1129(a) of the Bankruptcy Code, the Plan may be amended and, in any event, the Debtors reserve the right to seek confirmation of the Plan over such rejection pursuant to section 1129(b) of the Bankruptcy Code.

**6.05**    **How to Vote**.   A form of Ballot is being provided to creditors in Class 3 by which creditors in such Class may vote their acceptance or rejection of the Plan. The Ballot for voting on the Plan gives you one important choice to make with respect to the Plan — you can vote for or against this Plan. To vote on the Plan, please complete the Ballot, as indicated thereon by, (1) indicating on the enclosed Ballot that (a) you accept the Plan or (b) reject the Plan and (2) signing your name and mailing the Ballot in the envelope provided for this purpose. GCG will count and tabulate the amount of Claims cast in the Ballots. In order to be considered by the Bankruptcy Court at the hearing on confirmation of the Plan, your Ballot must be fully completed, executed, and actually received by GCG at the following address by no later than the Voting Deadline of August 14, 2017 at 4:00 p.m. (Central Time).

**IF BY FIRST-CLASS MAIL:**
Marbles Holdings, LLC, et al.
c/o GCG
P.O. Box 10362
Dublin, OH 43017-5562

**IF BY HAND-DELIVERY OR
OVERNIGHT DELIVERY:**
Marbles Holdings, LLC et al.
c/o GCG
5151 Blazer Parkway, Suite A
Dublin, OH 43017

## ARTICLE VII

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01    Rejection of Executory Contracts**. As of the Confirmation Date, the Debtors shall be deemed to have rejected all executory contracts and unexpired leases not expressly assumed prior to or in connection with the Confirmation Order. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections pursuant to section 365 of the Bankruptcy Code. Any person or entity claiming rights in the rejected executory contracts and unexpired leases not previously rejected by order(s) of the Bankruptcy Court shall have an additional thirty (30) calendar days after the Confirmation Date in which to file Claims in the Chapter 11 Cases. All such Claims for which proofs of claim are timely and properly filed an ultimately Allowed with be treated as a Class 3 General Unsecured Claim.

## ARTICLE VIII

## IMPLEMENTATION OF THE PLAN

**8.01    Substantive Consolidation of the Debtors Solely for Purposes of Distribution**.

 **(a)**    The Plan will effectuate a substantive consolidation of the Chapter 11 Cases, but solely for purposes of distributions under the Plan (and not for voting purposes). The Plan shall serve as a motion requesting the entry of an order substantively consolidating the Chapter 11 Cases for such purposes. On the Effective Date, and solely for purposes of making distributions to the holders of Allowed Claims under the Plan: (a) all guarantees of any Debtor of the payment, performance or collection of another Debtor with respect to Claims against such Debtor shall be eliminated and canceled; (b) any single obligation of multiple Debtors shall be treated as a single obligation in the consolidated Chapter 11 Cases; and (c) all guarantees by a Debtor with respect to Claims against the other Debtor shall be treated as a single obligation in the consolidated cases. On the Effective Date, and in accordance with the terms of the Plan and the consolidation of the assets and liabilities of the Debtors, all Claims based upon guarantees of collection, payment, or performance made by a Debtor as to the obligation of another Debtor shall be released and of no further force and effect. The foregoing shall not affect the rights of any creditor holding a Secured Claim with respect to the Collateral securing its Allowed Claim, or the terms and implementation of any settlement, and the rights and obligations of the parties thereto, entered into in connection with the confirmation of the Plan.

 **(b)**    Notwithstanding the substantive consolidation of the Estates for the purposes set forth herein, each Debtor shall pay all United States Trustee fees on all disbursements, including disbursements under the Plan, until the entry of a final decree in its

Chapter 11 Case, dismissal of its Chapter 11 Case, or conversion of its Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.

**8.02     Cancellation of Equity Interests**.  Upon the Effective Date, the Debtors' Equity Interests shall be deemed canceled and terminated and of no further force or effect, and the obligations of the Debtors thereunder, if any, shall be deemed satisfied in full and discharged.

**8.03     Dissolution of Committee and Cessation of Fee and Expense Payments**.  The Committee shall be dissolved on the Effective Date. Neither the Debtors nor the Creditor Trustee shall be responsible for paying any fees or expenses incurred by the Committee after the Effective Date; provided, however, that the Committee shall nonetheless have post-Effective Date standing to file and obtain approval of the Professional Fee Claims, subject to the rights of any party in interest to object thereto.

**8.04     Dissolution of the Debtors**.  On the Effective Date, the Debtors will be deemed dissolved for all purposes, without need of further court order, notice or action, and shall cease to exist as legal entities. The Confirmation Order shall contain a provision authorizing and directing any applicable state agencies to register the Debtors as dissolved as of the Effective Date. Notwithstanding said dissolution, the Debtors shall be entitled to wind down their affairs pursuant to applicable state law in a manner consistent with the terms and conditions of the Plan.

**8.05     General Corporate Actions**.  Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects. Such authorizations and approvals shall be effective notwithstanding any requirements under non-bankruptcy law.

**8.06     Officers and Managers of the Debtors**.  Upon the Effective Date, all (a) officers and (b) managing members or members of the board of managers, as the case may be, of the Debtors shall be automatically deemed to have resigned from such positions from the Debtors without further notice, provided, however, that the Debtors may appoint such former officers and/or managing members or members of the board of managers, as the case may be, as agents for the sole and limited purpose of effectuating the terms of the Plan

**8.07     Sources of Assets**.

**(a)**     Estate Funds.  Prior to the Effective Date, all of the Estate Funds shall be transferred to a segregated, non-interest-bearing client account held by the Debtors' counsel, A&G. A&G shall hold the Estate Funds in trust pending the Effective Date of the Plan or pursuant to other applicable order(s) of the Bankruptcy Court. The Estate Funds include, but are not limited to, (i) $50,000, comprising fifty percent (50%) of the Priority Claim Reserve Funds; and (ii) the 503(b)(9) Funds.

**(b)**     Plan Reserve Funds.  The Plan Reserve Funds are currently held in trust by PSZJ. Spin Master shall not share in any distribution from the Creditor Trust on account of any unsecured portion of its Claims, and thus, shall not be entitled to any distribution from the Plan Reserve Funds.

**(c)**     Priority Claim Reserve Funds. PSZJ shall transfer $50,000 that it is holding to funding 50% of the Priority Claim Reserve Funds, which, together with the $50,000

of Estate Funds, comprise the total Priority Claim Reserve Funds. In the event that all Allowed Priority Claims total less than $100,000, any remaining balance from the Priority Claim Reserve Funds shall revert to the Committee Professional Fee Allocation to the extent necessary to satisfy Allowed Professional Fee Claims of the Committee Professionals and Allowed Administrative Expense Claims of Committee Members. To the extent that any portion of the Committee Professional Fee Allocation remains available after payment of Allowed Professional Fee Claims of the Committee Professionals and Allowed Administrative Expense Claims of Committee Members, such balance shall be transferred to the Creditor Trust. The Committee Professional Fee Allocation shall not be available to pay any portion of Spin Master's Claims or the Professional Fee Claims of any Professional Persons retained by the Debtors.

(d)     Creditor Trust Causes of Action. The Creditor Trust Causes of Action are comprised of any and all interests of the Debtors in (i) claims and causes of action arising under Chapter 5 of the Bankruptcy Code, including preference and fraudulent transfer claims, or their state law analogs, (ii) commercial tort claims, and (iii) rights and defenses of setoff and recoupment with respect to the foregoing claims and causes of action, but exclude any claims or causes of action against the DIP Lender, AMPR or Amzak.

(e)     Remaining Estate Assets. The Remaining Estate Assets are comprised of all assets of the Debtors other than the Estate Funds, the Priority Claim Reserve Funds, the Plan Reserve Funds, the Committee Professional Fee Allocation and the Creditor Trust Causes of Action. The Remaining Estate Assets include accounts receivable, prepaid expenses and security deposits, and American Express gift cards.

## 8.08    Transfer of Assets.

(a)     Creditor Trust Funds. On or as soon as practicable following the Effective Date, the following funds shall be transferred to the Creditor Trust as provided below:

(i)     A&G shall cause to be transferred the 503(b)(9) Funds and $50,000 in Estate Funds for the Priority Claims Reserve;

(ii)     PSZJ shall cause to be transferred the Plan Reserve Funds and $50,000 on account of the Priority Claims Reserve;

(iii)     Upon payment of Allowed Professional Fee Claims of the Committee Professionals and Allowed Administrative Expense Claims of Committee Members, PSZJ shall cause to be transferred any remaining balance from the Committee Professional Fee Allocation.

(b)     Other Creditor Trust Assets. On the Effective Date, the Debtors shall immediately transfer or cause to be transferred to the Creditor Trust all Creditor Trust Assets in their possession, custody or control. Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the Creditor Trust Causes of Action shall be immediately transferred to and vest in the Creditor Trust on the Effective Date.

(c)     DIP Lender.   On or as soon as practicable following the Effective Date, the Debtors or A&G, as the case may be, shall cause to be transferred to the DIP Lender all

20

Estate Funds and Remaining Estate Assets except for the 2017 Tax Return Fee, the Administrative Expense Reserve Funds, and the Creditor Trust Assets. A&G shall transfer or cause to be transferred to the DIP Lender any remaining balance of such funds after payment of all Allowed Administrative Expense Claims designated for payment from the Administrative Expense Reserve Funds.

**8.09    2017 Tax Returns of the Debtors**.    On or as soon as practicable following the Confirmation Date, the Debtors shall cause to be transferred to their bankruptcy counsel, A&G, the 2017 Tax Return Fee, which A&G shall be authorized to transfer to the Debtors' accountant, RSM US LLP, upon completion and filing of the Debtors' 2017 tax returns.

## ARTICLE IX

## THE CREDITOR TRUST

**9.01    Creditor Trust Agreement**.    On or prior to the Effective Date, the Creditor Trustee and the Debtors shall execute the Creditor Trust Agreement, in form and substance satisfactory to the Committee. The Creditor Trust Agreement shall become effective on the Effective Date. Except to the extent inconsistent with the terms of the Plan, the terms and conditions of the Creditor Trust Agreement shall govern under the Plan.

**9.02    Vesting of Creditor Trust Assets**. Upon transfer of the Creditor Trust Assets to the Creditor Trust on or after the Effective Date, the Creditor Trustee shall thereafter maintain possession, control and management of same subject to the Plan and the Creditor Trust Agreement. The Debtors are hereby authorized and directed to take such steps as may be necessary or appropriate to confirm such transfer and contribution of the Creditor Trust Assets to the Creditor Trust. Upon such transfer, title to the Creditor Trust Assets will automatically and irrevocably vest in the Creditor Trust and be deemed contributed thereto, subject to the terms of the Plan. Upon vesting, the Creditor Trustee shall have the sole authority to administer the Creditor Trust Assets for the benefit of the Creditor Trust Beneficiaries. All property held for distribution pursuant to the Plan shall be held by the Creditor Trust solely in trust for the benefit of the Creditor Trust Beneficiaries and shall not be deemed property of the Debtors. Nothing in the Plan, however, shall preclude payment from the Creditor Trust Assets of any (i) U.S. Trustee Fees accruing after the Effective Date; and (ii) any Creditor Trust Expenses.

**9.03    Creditor Trustee**. The Creditor Trustee will be selected by the Plan Proponents and shall be compensated as set forth in the Creditor Trust Agreement. The proposed Creditor Trustee will be Amanda Demby of Province, Inc., 17000 Ventura Blvd, Suite 300, Encino, CA 91316. The Creditor Trustee shall administer the Creditor Trust pursuant to the Plan and the Creditor Trust Agreement from and after the Effective Date. The Creditor Trustee shall be the exclusive trustee of the Creditor Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3). The Creditor Trustee shall be a representative of the Estates pursuant to sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code, and shall be vested with standing to prosecute, settle and otherwise administer all Creditor Trust Assets, including Creditor Trust Causes of Action, transferred to the Creditor Trust, without the need for Court approval or any other notice of approval, except as set forth herein. The Creditor Trustee shall be exempt from giving any bond, surety or other security for the performance of her duties unless

otherwise ordered by the Bankruptcy Court. The Creditor Trustee shall be responsible for providing the day-to-day accounting and financial services and taking such other actions as are necessary to fully consummate and carry out all of the terms and conditions of the Plan, and will comply with all of the duties, obligations and reporting requirements set forth in the Plan.

**9.04    Case Administration**. From and after the Effective Date and continuing through the date that a final decree closing the Chapter 11 Cases is entered pursuant to section 350 of the Bankruptcy Code and Bankruptcy Rule 3022, and except as otherwise provided in the Plan, the Creditor Trustee shall possess the rights of the Debtors for all matters pertaining to the Chapter 11 Cases without further order of the Bankruptcy Court. Without limiting the generality of the foregoing, the Creditor Trustee shall: (a) have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts of competent jurisdiction; (b) have the right to obtain records of, or related to, the Debtors (including, without limitation, bank statements and canceled checks); (c) be entitled to notice and opportunity for hearing; (d) be entitled to participate in all matters brought before the Bankruptcy Court, including without limitation, adversary proceedings; (e) have exclusive standing to commence Creditor Trust Causes of Action; (f) be entitled to request entry of a final decree closing the Chapter 11 Cases; and (g) be entitled to receive notice of all applications, motions and other papers and pleadings set before the Bankruptcy Court in the Chapter 11 Cases.

**9.05    Creditor Trustee's Compensation**. The Creditor Trustee's compensation shall be in accordance with the terms of the Creditor Trust Agreement at rates established pursuant to the mutual agreement of the Creditor Trustee and the Committee, which rates shall be subject to disclosure to Creditor Trust Beneficiaries upon reasonable request.

**9.06    Creditor Trust Accounts**. As soon after the Effective Date as is practicable, the Creditor Trustee shall establish one or more Creditor Trust Accounts. All monies on deposit in the Creditor Trust Accounts shall be insured by an agency of the federal government or secured by bonds or similar instruments in sufficient amounts to fully protect all amounts so deposited. Such accounts shall be maintained under the Creditor Trust's federal employer identification number and have the Creditor Trustee as the sole signatory thereto.

**9.07    Ordinary Care**. The Creditor Trustee, her respective agents and designees, shall exercise ordinary care in the discharge of their duties under the Plan and shall be entitled to rely upon advice of counsel concerning legal matters, and upon the Plan and any schedule, certificate, statement, report, notice or other writing which they believe to be genuine or to have been presented by a proper person. The Creditor Trustee, her respective legal representatives, heirs, successors, assigns, agents, designees and attorneys shall not be held responsible or be liable to the Creditor Trust, the creditors or any other party in interest in the Chapter 11 Cases for any errors in judgment or for any defalcations or shortages of money or for any losses suffered unless the same shall occur through the gross negligence, willful misconduct or fraud of the Creditor Trustee, their respective legal representatives, heirs, successors, assigns, agents, designees or attorneys. Further, the Creditor Trustee shall not be liable for any act she may do or omit to hereunder while acting in good faith and in the exercise of reasonable business judgment, and the fact that such act or omission was advised, directed or approved by an attorney retained by the Creditor Trustee, shall be conclusive evidence of such good faith and reasonable business judgment.

**9.08    Attorney-Client Privilege**. Without limiting the generality of the assignment of the Creditor Trust Assets to the Creditor Trustee, and in order to effectively investigate, defend, or pursue the Creditor Trust Causes of Action, any privileges that exist between the Debtors and their current or prior counsel shall be assigned to the Creditor Trustee.

**9.09    Creditor Trust Distributions**. The Creditor Trust Assets will be liquidated and distributed solely for the benefit of holders of Allowed Unbudgeted Expense Claims, Allowed 503(b)(9) Claims, Allowed Priority Claims and Allowed General Unsecured Claims. The Creditor Trust Assets will not be available for payment of Secured Claims or Administrative Expense Claims (except Unbudgeted Expense Claims and 503(b)(9) Claims). The Creditor Trust Funds and proceeds of any other Creditor Trust Assets shall be distributed by the Creditor Trustee as follows:

(a)    First, from the Creditor Trust Accounts for payment of any Creditor Trust Expenses. Until such time as the Plan is fully consummated, the Creditor Trustee shall hold in suspense such amounts in the Creditor Trust as are in her reasonable discretion sufficient to pay all Creditor Expenses. All Creditor Expenses shall be subject to disclosure to Creditor Trust Beneficiaries upon reasonable request;

(b)    Second, from the Creditor Accounts to holders of Allowed Unbudgeted Expense Claims;

(c)    Third, from the Creditor Accounts to holders of Allowed 503(b)(9) Claims;

(d)    Fourth, from the Creditor Accounts to holders of Class 1 Allowed Priority Non-Tax Claims;

(e)    Fifth, from the Creditor Accounts to holders of Allowed Priority Tax Claims; and

(f)    Sixth, from the Creditor Accounts to holders of Class 3 Allowed General Unsecured Claims, subject to Section 5.01.

**9.10    Distribution Dates**. The distributions provided for in Section 9.09 shall be made on the Distribution Dates, which shall be as soon after the Effective Date as is practicable and thereafter, as often as the Creditor Trustee in her reasonable discretion may determine if the amounts on deposit in the Creditor Accounts warrant same; provided, however, the Creditor Trustee in her reasonable discretion shall reserve such amounts in the Creditor Accounts as she deems necessary for the requirements set forth in the Plan including, Disputed Claims as set forth below, and for the payment of the Creditor Trust Expenses in the manner set forth below.

**9.11    No Postpetition Interest**. Unless otherwise specifically provided for in the Plan or in the Confirmation Order, or required by applicable bankruptcy law, no interest from and after the Petition Date shall be paid or accrued to the holder of any Allowed Claim or Allowed Equity Interest, nor shall any holder of an Allowed Claim or Allowed Equity Interest be entitled to interest accruing on or after the Petition Date from the Creditor Accounts.

23

**9.12** **Rounding**. Whenever any payment of a fraction of a cent would otherwise be called for, the actual distribution shall reflect a rounding of such fraction down to the nearest cent.

**9.13** **De Minimus Distributions; Charitable Donation**. The Creditor Trustee shall not be required to make any distribution to any creditor if the dollar amount of the distribution is less than $25.00. The Creditor Trustee shall make a charitable donation with such undistributed funds.

**9.14** **Disputed Claims**. In the event that on any Distribution Date, any Claims are Disputed Claims, the Creditor Trustee shall make the required distribution to all other claimants enjoying the same priority as the Disputed Claims as follows: (a) in calculating any Unbudgeted Expense Claims, 503(b)(9) Claims, Priority Tax Claims or Class 1 Priority Non-Tax Claims at the respective Distribution Date, Disputed Claims shall be included in the full amount claimed by the respective holders thereof; and (b) in calculating the Pro Rata portion of any Class 3 General Unsecured Claims at the Distribution Date, Disputed Claims shall be included in the Pro Rata amount claimed by the respective holders thereof. Until such Disputed Claims are Allowed or Disallowed, the amounts that otherwise would be payable to such claimants shall not be paid by the Creditor Trustee, but shall be held in suspense in the Creditor Trust. In the event that the Allowed amount of any of the Disputed Claim is less than the full amount claimed by the holder thereof, then (x) the Allowed amount of the Disputed Claim shall be distributed to the holder thereof immediately from the funds held in suspense, as provided above; and (y) any excess amount held in suspense shall be added to the funds available for other distributions herein.

**9.15** **Effectuating Documents**. The Creditor Trustee, or such other person(s) as the Creditor Trustee may approve pursuant to the Creditor Trust Agreement, is authorized to execute, deliver, file or record such pleadings, contracts, instruments, releases and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan. The Creditor Trustee or her designee is authorized to certify or attest to any of the foregoing actions.

**9.16** **Employment of Professionals**. Upon the Effective Date, the Creditor Trustee may employ such attorneys, accountants, consultants and other persons or professional as she deems necessary and appropriate to fulfill her duties and obligations under the Plan. All professional and other compensation from and after the Effective Date shall be payable in accordance with the Creditor Trust Agreement. Persons retained by the Creditor Trustee may include any professional who represented parties in interest in the Chapter 11 Cases, and the Creditor Trustee shall be permitted to retain any such persons in light of the efficiencies implicit in continuity.

**9.17** **Insurance Policies**. The Creditor Trustee shall have the authority, in her sole discretion, to bind or cancel any and all insurance policies.

**9.18** **United States Trustee Reports**. Until a final decree has been entered closing the Chapter 11 Cases, the Creditor Trustee shall submit all post-confirmation quarterly operating reports to the United States Trustee as required by the United States Trustee's guidelines (with a copy served on the Office of the United States Trustee) setting forth all receipts and

disbursements of the Creditor Trust. The Creditor Trustee shall be responsible for any quarterly fees due to the United States Trustee from and after the Effective Date until the Chapter 11 Cases are closed.

**9.19   Payment of Quarterly Fees**. The Creditor Trustee shall pay any U.S. Trustee Fees arising after the Effective Date until the entry of a final decree closing the Chapter 11 Cases.

**9.20   United States Federal Income Tax Treatment of the Creditor Trust**. For all United States federal income tax purposes, the parties shall treat the transfer of the Creditor Trust Assets to the Creditor Trust as (i) a transfer of the Creditor Trust Assets directly to the applicable Creditor Trust Beneficiaries, followed by (ii) the transfer by the Creditor Trust Beneficiaries to the Creditor Trust of such Creditor Trust Assets in exchange for the Creditor Trust Interests. Accordingly, the applicable Creditor Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Creditor Trust Assets. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes. The Plan permits the Creditor Trustee to establish Disputed Claim Reserves. The Creditor Trustee may, at the Creditor Trustee's sole discretion, file a tax election to treat any such Disputed Claim Reserve as a Disputed Ownership Fund or other taxable entity rather than as a part of the Creditor Trust for federal income tax purposes. If such election is made, the Creditor Trust shall comply with all tax reporting and tax compliance requirements applicable to the Disputed Ownership Fund or other taxable entity, including, but not limited to, the filing of separate income tax returns for the Disputed Ownership Fund or other taxable entity and the payment of any federal, state or local income tax due.

**9.21   Tax Reporting**. The Creditor Trustee shall file tax returns for the Creditor Trust treating the Creditor Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a). The Creditor Trustee shall be responsible for payment, out of the Creditor Trust Assets, of any taxes imposed on the Creditor Trust or its assets. The Creditor Trustee shall distribute such notices to the applicable Creditor Trust Beneficiaries as the Creditor Trustee determines are necessary or desirable.

**9.22   Cash Investments**.   The Creditor Trustee may invest Cash (including any earnings thereon or proceeds therefrom); provided, however, that such investments are investments permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

**9.23   Successor Creditor Trustees**. If the Creditor Trustee resigns or for any other reason is unable to continue to perform her duties as herein provided, then the Creditor Trustee, or her representative, shall inform the Court of her resignation and the vacancy shall be filled upon majority vote by the Allowed Class 3 Claims, subject to Bankruptcy Court approval.

**9.24   Additional Procedures**.   The Creditor Trustee shall have the right to propose such additional procedures as may be reasonably required to administer the assets of the Estates for the benefit of all creditors and consistent with the Plan, the Bankruptcy Code, and the Bankruptcy Rules.

**9.25    Dissolution of the Creditor Trust**.  The Creditor Trust shall be dissolved at such time as: (a) the Creditor Trustee determines that the pursuit of additional Creditor Trust Causes of Action is not likely to yield sufficient additional proceeds to justify further pursuit of such Creditor Trust Causes of Action, (b) all objections to Disputed Claims are fully resolved, and (c) all distributions required to be made by the Creditor Trust have been made, but in no event shall the Creditor Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed three years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Creditor Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Creditor Trust Assets. Upon dissolution of the Creditor Trust, any remaining Creditor Trust Assets that exceed the amounts required to be paid under the Plan may be transferred by the Creditor Trustee to a non-profit charitable 501(c)(3) organization.

**9.26    Control Provisions**.  To the extent there is any inconsistency between the Plan as it relates to the Creditor Trust and the Creditor Trust Agreement, the Plan shall control.

**9.27    Abandonment**.  If, in the Creditor Trustee's reasonable judgment, any Creditor Trust Assets cannot be distributed in a commercially reasonable manner or the Creditor Trustee believes in good faith that such property has inconsequential value or determines it to be too impractical to distribute to the Creditor Trust Beneficiaries, the Creditor Trustee shall have the right to abandon or otherwise dispose of such property, including by donation of such property to a charity.

**9.28    Maintenance and Disposition of Records**.  The books and records maintained by the Creditor Trustee may be disposed of by the Creditor Trustee at the later of (a) such time as the Creditor Trustee determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Creditor Trust or the Creditor Trust Beneficiaries or (b) upon the termination and completion of the winding down of the Creditor Trust.

## ARTICLE X

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

**10.01    Objections to Claims**.  Except with respect to Claims already deemed Allowed Claims, upon the Effective Date, the Creditor Trustee shall (a) have appropriate standing and authority to object to any Unbudgeted Expense Claims, 503(b)(9) Claims, Priority Claims or General Unsecured Claims, whether listed on the Schedules or filed by any creditor, on or before the Claims Objection Deadline, and (b) have and retain any and all rights and defenses that the Debtors had with respect to any such Claim, except with respect to any Claim deemed an Allowed Claim as of the Effective Date. In the event the Debtors filed a motion to object to any Claim that has not been resolved as of the Effective Date, the Creditor Trustee shall succeed the Debtors in the prosecution of such motion from and after the Effective Date. Any and all

objections to Claims shall be filed with the Bankruptcy Court by the Creditor Trustee and served upon each holder of such Claims not later than the Claims Objection Deadline. If an objection to any Claim is not filed on or before that date, the Claim shall be deemed an Allowed Claim and shall be satisfied as set forth in the Plan.

**10.02    Resolution of Disputed Claims**. All objections to Claims shall be litigated to a Final Order except to the extent the Creditor Trustee elects to withdraw any such objection or the Creditor Trustee and holder of such Claim elect to compromise, settle or otherwise resolve any such objection, in which event the Creditor Trustee may settle, compromise or otherwise resolve any Disputed Claim without approval of the Bankruptcy Court.

**10.03    Estimation**. The Creditor Trustee may, at any time, request the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Creditor Trustee has previously objected to such Claim, and the Bankruptcy Court shall retain jurisdiction (pursuant to Section 15.01) to estimate any Claim at any time, including during litigation concerning any objection to such Claim.

**10.04    Distribution on Disputed Claims**. No distributions shall be made with respect to a Disputed Claim until such Disputed Claim becomes an Allowed Claim.

**10.05    Reserve for Disputed Claims**. With respect to Claims to be paid pursuant to the Plan, the Creditor Trustee shall hold in reserve, for the benefit of each holder of a Disputed Claim, cash in an amount required by order of the Bankruptcy Court or such other consideration the Creditor Trustee deems appropriate in the exercise of the Creditor Trustee's reasonable business judgment.

**10.06    Interest on Disputed Claims**.    Interest on any funds reserved for a Disputed Claim, if any, shall inure to the benefit of all remaining creditors.

## ARTICLE XI

## CONDITIONS PRECEDENT TO EFFECTIVE DATE OF PLAN

**11.01    Conditions to Confirmation of Plan**. Confirmation of the Plan shall not occur, and the Confirmation Order shall not be entered, until each of the following conditions precedent have been satisfied: (a) an order, in a form and substance satisfactory to the Debtors, the Committee and the DIP Lender, finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code, shall have been entered; and (b) the form of the Confirmation Order has been agreed to in form and substance satisfactory to the Debtors, the Committee and the DIP Lender.

**11.02    Effective Date of Plan and Conditions Thereto**. The Effective Date of the Plan shall be the later of: (a) thirty (30) calendar days from entry of the Confirmation Order; or (b) the date on which the Confirmation Order shall have become a Final Order, not subject to any stay of enforcement. The Effective Date of the Plan shall not occur until: (x) the clerk of the Bankruptcy Court shall have entered the Confirmation Order in the Chapter 11 Cases, in a form and substance satisfactory to the Debtors, the Committee and the DIP Lender, and the same shall

27

have become a Final Order, not subject to any stay of enforcement; and (y) the Creditor Trust Agreement shall have been executed.

**11.03** **Effect of Failure of Conditions; Reservation of Rights**. If the foregoing conditions have not been satisfied, then: (1) the Confirmation Order shall be of no further force or effect; (2) no distributions under the Plan shall be made; (3) the Debtors, the Creditor Trustee, and all holders of Claims against and Equity Interests in the Debtors shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; (4) all of the Debtors' and the Creditor Trustee's obligations with respect to Claims and Equity Interests shall remain unaffected by the Plan; (5) nothing contained in the Plan shall be deemed to constitute a waiver or release of any claims by or against the Debtors or the Creditor Trustee or any other person or to prejudice in any manner the rights of the Debtors or the Creditor Trustee, or any person in any further proceedings involving the Debtors or the Creditor Trustee; and (6) the Plan shall be deemed withdrawn. Upon such occurrence, the Debtors shall file a written notification with the Bankruptcy Court and serve it on the parties receiving CM/ECF notices in the Chapter 11 Cases. The Plan shall have no force or effect unless and until the Effective Date occurs. Prior to the Effective Date, none of the filing of the Plan, any statement or provision contained in the Plan, or action taken by the Debtors, the Creditor Trustee, or the Committee with respect to the Plan shall be, or shall be deemed to be, an admission or waiver of any rights of any of the Debtors, the Creditor Trustee, or the Committee, or any other party with respect to any Claims or Equity Interests or any other matter.

## ARTICLE XII

## EFFECTS OF CONFIRMATION OF THE PLAN

**12.01** **Permanent Injunction**.

**(a)** **From and after the Confirmation Date, all holders of Claims or Equity Interests of the Debtors, whether or not they are entitled to and/or have filed proofs of claim in the Chapter 11 Cases on or before the applicable Bar Date, and their respective heirs, legal representatives, officers, directors, shareholders, employees, partners, members, subsidiaries, affiliates, representatives, agents, insurers, successors and assigns, as the case may be, shall be and are hereby permanently stayed, restrained, and enjoined from taking one or more of the following actions against the Debtors, the Creditor Trustee and the Creditor Trust, and all of their respective heirs, legal representatives, officers, directors, shareholders, agents, employees, representatives, attorneys, successors and assigns, and each of them (collectively, the "Releasees"), for the purpose of, directly or indirectly, by claim, cross-claim, or setoff, collecting, recovering or receiving payment of, or recovery on or with respect to any Claims against the Debtors or the Estates arising out of, under, or related to the Chapter 11 Cases (the "Enjoined Claims"), whether such Enjoined Claim is presently known or unknown, or is presently asserted or assertable (other than actions brought to enforce any right or obligation under the Plan, or otherwise in favor of the Debtors, which actions shall be heard by the Bankruptcy Court pursuant to Section 15.01):**

28

(i)    with respect to the Enjoined Claims, commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, claim, cross-claim, or other proceeding (including, without limitation, any suit, action, claim, cross-claim, or other proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Releasees, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, the Releasees, or any property of any such transferee or successor;

(ii)    with respect to the Enjoined Claims, enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree or other order against the Releasees, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, the Releasees, or any property of any such transferee or successor;

(iii)    with respect to the Enjoined Claims, creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance against the Releasees, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, the Releasees, or any property of any such transferee or successor;

(iv)    with respect to the Enjoined Claims, setting off, seeking reimbursement of, contribution from or subrogation against or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to the Releasees, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, the Releasees; and

(v)    with respect to the Enjoined Claims, proceeding in any manner in any place with regard to any matter that is subject to resolution pursuant to the terms of the Plan, except in conformity and compliance herewith. Notwithstanding anything to the contrary herein, this injunction shall not enjoin any of the Releasees from asserting claims, cross-claims, counterclaims, demands, setoffs, recoupments, arguments, defenses or otherwise against any Claims filed in the Chapter 11 Cases against them or otherwise held by any party, all of which rights are hereby expressly preserved. This injunction is an integral part of the Plan because it:  (1) enjoins actions which threaten the integrity of the Estates; (2) facilitates the expeditious and effective performance of the Plan; (3) guards against collateral attack or interference with the consummation of the Plan and improper use of the Creditor Funds; and (4) protects the rights, interests and claims of the Releasees and all creditors in the Chapter 11 Cases. As such, the provisions of this injunction shall be construed as broadly as the law and English language permit.

(b)    Nothing contained herein (i) shall relieve or diminish the duties, responsibilities or obligations of the Releasees as set forth in the Plan; or (ii) impair any parties' right to appear or bring an action in the Bankruptcy Court to enforce or assert any right or obligation under the Plan.

(c)    If notwithstanding the permanent injunction in favor of the Releasees set forth herein, any suit, action, claim, cross-claim, or other proceeding (including, without limitation, any suit, action, claim, cross-claim, or other proceeding in a judicial, arbitral,

administrative or other forum) is brought against or affects the Releasees in violation of the terms of the Plan prior to the distribution of all monies on deposit in the Creditors Funds, the Creditor Trustee shall, in her reasonable business judgment, be entitled to withhold from distribution to holders of Allowed Claims that amount of monies on deposit in the Creditor Accounts which the Releasees believe will be necessary to pay for any and all judgments, claims, damages, costs and expenses, including reasonable attorneys' fees and expenses, incurred or estimated to be incurred by the Releasees pending the entry of a Final Order resolving such dispute(s). Upon the entry of a Final Order resolving such dispute(s), the Creditor Trustee shall proceed to distribute any and all such funds withheld and not expended in accordance with the terms of the Plan.

12.02 <u>Limitation of Liability</u>. The Debtors, the Committee, and their respective officers, directors, shareholders, members, accountants, attorneys and other professionals (collectively, the "Exculpated Parties," and each, an "Exculpated Party"), will neither have nor incur any liability to any entity for any action in good faith taken or omitted to be taken after the Petition Date in connection with or related to the Chapter 11 Cases or the formulation, preparation, dissemination, implementation, confirmation or consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan; <u>provided</u>, <u>however</u>, that this limitation will not affect or modify the obligations created under the Plan, or the rights of any holder of an Allowed Claim to enforce its rights under the Plan, and shall not release any action (or inaction) constituting willful misconduct, fraud or gross negligence (in each case subject to determination of such by final order of a court of competent jurisdiction); provided further that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan. Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections of section 1125(e) of the Bankruptcy Code. Except as specifically set forth in the Plan, no provision of the Plan or the Disclosure Statement shall be deemed to act to or release any claims, litigation claims or rights, or liabilities that the Debtors or their estates may have against any entity or person for any act, omission, or failure to act that occurred prior to the Petition Date, nor shall any provision of the Plan be deemed to act to release any litigation or litigation claims.

## ARTICLE XIII

## <u>MODIFICATION OF PLAN</u>

13.01 <u>Modification Before Confirmation</u>. Modifications of the Plan may be proposed in writing by the Plan Proponents at any time before entry of the Confirmation Order, provided that such Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Plan Proponents shall have complied with the provisions of section 1125 of the Bankruptcy Code to the extent such provisions are applicable.

13.02 <u>Modification After Confirmation</u>. The Plan may be modified by the Plan Proponents at any time after entry of the Confirmation Order and before its substantial consummation, provided that: (a) such Plan, as modified, meets the requirements of

sections 1122 and 1123 of the Bankruptcy Code; and (b) the Bankruptcy Court, after notice and a hearing, confirms such Plan, as modified, under section 1129 of the Bankruptcy Code.

**13.03  Acceptance/Rejection of Plan Modification**.  A holder of a Claim or Equity Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, the Plan, as modified, unless within the time fixed by the Bankruptcy Court, such holder changes such holder's previous acceptance or rejection.

## ARTICLE XIV

## MISCELLANEOUS

**14.01  Unclaimed Distributions Prior to Final Distribution**.  Any distributions of the Creditor Funds under the Plan which are unclaimed after ninety (90) days following any of the Distribution Dates shall revert to the Creditor Trust and be added to the subsequent distributions to be made by the Creditor Trustee.

**14.02  Delivery of Distributions**.  Distributions to holders of Allowed Claims shall be made (a) at the addresses set forth on the proofs of claim filed by such holders, (b) at the addresses reflected in the Schedules if no proof of claim has been filed, or (c) at the addresses set forth in any written notices of address changes delivered to the Creditor Trustee. If any holder's distribution is returned as undeliverable, a reasonable effort shall be made to determine the current address of such holder, but no further distributions to such holder shall be made unless and until the Creditor Trustee or the Debtors, as applicable, is notified of such holder's then current address, at which time all missed distributions shall be made to such holder without interest. The responsibility to provide the Creditor Trustee or the Debtors, as applicable, a current address of a holder of Claims shall always be the responsibility of such holder. Except as set forth above, nothing contained in the Plan shall require the Creditor Trustee or the Debtors, as applicable, to attempt to locate any holder of an Allowed General Unsecured Claim. Amounts in respect of undeliverable distributions made by the Creditor Trustee shall be held in trust on behalf of the holder of the Claim to which they are payable by the Creditor Trust until the earlier of the date that such undeliverable distributions are claimed by such holder and one hundred twenty (120) days after the date the undeliverable distributions were made.

**14.03  Withholding, Payment, and Reporting Requirements with Respect to Distributions**.  All distributions under the Plan to be made by the Creditor Trustee or the Debtors, as applicable, shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all distributions shall be subject to any such withholding, payment, and reporting requirements. The Creditor Trustee or the Debtors, as applicable, shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements. The Creditor Trustee or the Debtors, as applicable, may require, in her or their sole and absolute discretion and as a condition to the receipt of any distribution, that the holder of an Allowed Claim complete and return to the Creditor Trust or the Debtors, as applicable, the appropriate Form W-8 or Form W-9, as applicable to each holder. Notwithstanding any other provision of the Plan, (a) each holder of an Allowed Claim that is to receive a distribution pursuant to the Plan shall have sole and exclusive responsibility for the

satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution, and including, in the case of any holder of a Disputed Claim that has become an Allowed Claim, any tax obligation that would be imposed upon the Creditor Trust or the Debtors, as applicable, in connection with such distribution, and (b) no distribution shall be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements reasonably satisfactory to the Creditor Trustee or the Debtors, as applicable, for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon the Creditor Trust or the Debtors, as applicable, in connection with such distribution.

**14.04   Setoffs.** The Creditor Trustee or the Debtors, as applicable, may, but shall not be required to, set off against any Claim or any Allowed Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtors or the Creditor Trust, as applicable, may have against the holder of such Claim; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Creditor Trust or the Debtors, as applicable, of any such claim that it or they may have against such holder.

**14.05   Forfeiture of Distributions.** If the holder of a Claim fails to cash a check payable to it within the time period set forth in Section 14.01, fails to claim an undeliverable distribution within the time limit set forth in Section 14.02, or fails to complete and return to the Creditor Trust the appropriate Form W-8 or Form W-9 within ninety (90) days of the request by the Creditor Trustee, for the completion and return to it of the appropriate form pursuant to Section 14.03, then such holder shall be deemed to have forfeited its right to any reserved and future distributions from the Creditor Trust and any Creditor Trust Interests held by such holder shall be deemed canceled, and the Claims of such holder shall be forever barred.

**14.06   Notices.** All notices and other communications provided for under the Plan to be effective shall be in writing (including by facsimile transmission) and shall be deemed to have been given at the time when mailed in any general or branch United States Post Office, enclosed in a Registered or Certified postage prepaid envelope addressed to the address of the respective parties or in the case of notice by facsimile transmission when received and telephonically confirmed, and addressed or transmitted by facsimile as follows or to such changed address as such party may have fixed by notice given in the manner herein provided:

If to the Debtors:

Adam P. Silverman, Esq.
Erich S. Buck, Esq.
Adelman & Gettleman, Ltd.
53 W. Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Tel: (312) 435-1050
Fax: (312) 435-1059

If to the Committee:

Bradford J. Sandler, Esq.
Maxim B. Litvak, Esq.
Shirley S. Cho, Esq.
Pachulski Stang Ziehl & Jones LLP
919 N. Market Street, 17th Floor
Wilmington, De 19801
Tel: (302) 652-4100
Fax: (302) 652-4400

If to the Creditor Trustee:

Amanda Demby
Province, Inc.
17000 Ventura Blvd., Suite 300
Encino, CA 91316
Tel: (702) 685-5555
Fax: (702) 685-5556

**14.07   Transfer of Claims.**   In the event that the holder of any Claim shall transfer such Claim, it shall immediately advise the Creditor Trustee in writing of such transfer. The Creditor Trustee shall be entitled to assume that no transfer of any Claim has been made by any holder unless and until she has received written notice of such transfer. Each transferee of any Claim shall take such Claim subject to the provisions of the Plan and to any request made, waiver or consent given or other action taken hereunder and, except as otherwise expressly provided in such notice, the Creditor Trustee shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers under the Plan of the transferor.

**14.08   Severability.**   Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

**14.09   Governing Law.**   Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights duties and obligations arising under this Plan shall be governed by, construed and enforced in accordance with, the laws of the State of Illinois.

**14.10   Binding Effect.**   The rights and obligations of any person or entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of the successors or assigns of such person or entity.

**14.11   Captions.**   The headings contained in the Plan are for convenience of reference only and shall not affect the meaning or interpretation of the Plan.

**14.12   Cram Down.**   The Plan Proponents reserve the right to seek the entry of the Confirmation Order in accordance with sections 1129 (a) and (b)(2)(B)(i) of the Bankruptcy Code.

## ARTICLE XV

## RETENTION OF JURISDICTION

**15.01 Jurisdiction.** The Bankruptcy Court shall retain jurisdiction of the Chapter 11 Cases pursuant to and for the purposes set forth in sections 1127(b) and 1141 of the Bankruptcy Code, and to:

      **(a)**    determine the allowance or disallowance of Claims against the Estates;

      **(b)**    fix allowances of compensation to Professional Persons and other Administrative Expense Claims;

      **(c)**    enforce and interpret all provisions of the Plan;

      **(d)**    enforce all Causes of Action which may exist on behalf of the Estates;

      **(e)**    authorize and approve the sale of property of the Estates;

      **(f)**    modification of the Plan pursuant to section 1127 of the Bankruptcy Code;

      **(g)**    entry of a final decree closing the Estates; and

      **(h)**    for such other matters as the Creditor Trustee deems necessary or appropriate under the circumstances.

Respectfully submitted,

| | |
|---|---|
| MARBLES HOLDINGS, LLC, MARBLES, LLC and MARBLES BRAIN WORKSHOP, LLC | OFFICIAL COMMITTEE OF UNSECURED CREDITORS |
| By: /s/ Erich S. Buck | By: /s/ Bradford J. Sandler |
| One of their attorneys | One of its attorneys |
| Adam P. Silverman, Esq.<br>Erich S. Buck, Esq.<br>Adelman & Gettleman, Ltd.<br>53 West Jackson Blvd, Suite 1050<br>Chicago, Illinois 60604<br>Tel: (312) 435-1050<br>Fax: (312) 435-1059<br>*Counsel for the Debtors* | Bradford J. Sandler, Esq.<br>Maxim B. Litvak, Esq.<br>Shirley S. Cho, Esq.<br>Pachulski Stang Ziehl & Jones LLP<br>919 N. Market Street, 17th Floor<br>Wilmington, De 19801<br>Tel: (302) 652-4100<br>Fax: (302) 652-4400 |

                                                   - and –

Shelly A. DeRousse, Esq.
Devon J. Eggert, Esq.
Freeborn & Peters LLP
311 South Wacker Drive, Suite 3000
Chicago, Il 60606
Tel: (312) 360-6000
Fax: (312) 360-6520
*Counsel for the Committee*

# EXHIBIT A

## CREDITORS' TRUST AGREEMENT

This Creditors' Trust Agreement (the "Agreement") dated as of _____, 2017 [the Effective Date] is by and between the Marbles Holdings, LLC, Marbles LLC, and Marbles Brain Workshop, LLC (collectively, the "Debtors"), debtors and debtors in possession in their jointly-administered chapter 11 bankruptcy cases (the "Chapter 11 Cases") currently pending in the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court"), the Official Committee of Unsecured Creditors (the "Committee") of the Debtors, and Amanda Demby of Province, Inc., as Trustee (as defined below), on the other hand, to implement the Trust for the benefit of the Beneficiaries (as defined below) pursuant to that certain *Joint Plan of Liquidation Proposed by Debtors and the Official Committee of Unsecured Creditors Pursuant to Chapter 11 of the United States Bankruptcy Code* [Docket No. ___] (the "Plan").

WITNESSETH

WHEREAS, the Trust (as defined below) is created pursuant to, and to effectuate, the terms of the Plan;

WHEREAS, the Trust is created on behalf, and for the sole benefit, of the Beneficiaries;

WHEREAS, the Trust is established for the purpose of collecting, holding, administering, distributing and liquidating the Trust Assets (as defined below) for the benefit of the Beneficiaries in accordance with the terms of this Agreement and the Plan and with no objective to continue or engage in the conduct of a trade or business, except to the extent necessary to, and consistent with, the Plan and this Agreement;

WHEREAS, the Trustee, the Trust and the Beneficiaries are required to treat, for all federal income tax purposes, the transfer of the Trust Assets to the Trust as a transfer of the Trust

Assets by the Committee, as agent, to the Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the Trust Assets by the Beneficiaries to the Trust in exchange for the beneficial interest herein, and to treat the Beneficiaries as the grantors and owners of the Trust for federal income tax purposes;

WHEREAS, the Trust is intended to be treated as a grantor trust for federal income tax purposes within the meaning of Sections 671-677 of the Internal Revenue Code of 1986 (as amended, the "IRC");

NOW, THEREFORE, in consideration of the promises and the mutual covenants contained herein and in the Plan, the Committee, as agent, and the Trustee agree as follows:

## ARTICLE I

### DEFINITIONS AND INTERPRETATIONS

1.1     Use of Settlement Agreement Definitions.  All terms which are used in this Agreement and not defined herein shall have the same meaning ascribed to them in the Plan.

1.2     Definitions

1.2.1   "Allowed" shall have the meaning set forth in the Plan.

1.2.2   "Bankruptcy Code" shall mean 11 U.S.C. §§ 101, et seq.

1.2.3   "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Northern District of Illinois.

1.2.4   "Beneficiaries" shall mean, collectively, the holders of Allowed Claims of Unbudgeted Expense Claims, 503(b)(9) Claims, Priority Claims, and General Unsecured Claims. For the avoidance of doubt, Beneficiaries shall not include any claim of the DIP Lender.

1.2.5    "Claim" shall have the meaning set forth in Bankruptcy Code section
101(5).

1.2.6    "Notice Parties" shall mean Beneficiaries who have provided a written
request to the Trustee pursuant to section 10.2 herein, or the Successor Trustee, as applicable, for
notice for those actions requiring notice pursuant to the terms of this Trust.

1.2.7    "Successor Trustee" shall have the same meaning as set forth in section
7.5 of this Trust.

1.2.8    "Trust" shall mean the Creditor Trust.

1.2.9    "Trust Assets" shall mean the Creditor Trust Assets.

1.2.10   "Trustee" shall mean (x) initially, Amanda Demby of Province, Inc., and
(y) any successor or replacement Trustee.

1.3    Interpretation.  The headings in this Agreement are for convenience of reference
only and shall not limit or otherwise affect the provisions of this Agreement.  Words denoting
the singular number shall include the plural number and vice versa, and words denoting one
gender shall include the other gender.

# ARTICLE  II

## DECLARATION OF TRUST

2.1    Purpose of Trust.  The Debtors, Committee, and the Trustee, pursuant to the Plan
and in accordance with title 11 of the United States Code (the "Bankruptcy Code"), hereby create
the Trust for the primary purpose of collecting, holding, administering, distributing and
liquidating the Trust Assets for the benefit of the Beneficiaries in accordance with the terms of

this Agreement and the Plan. The activities of the Trust shall be limited to those activities set

forth in this Agreement and as otherwise contemplated by the Plan.

    2.2    <u>Transfer of Trust Assets.</u>

        A.    The Debtors and the Committee hereby grant, release, assign,

transfer, convey and deliver, on behalf of the Beneficiaries, the Trust Assets to the Trustee as of

the Effective Date of the Plan, in trust for the benefit of the Beneficiaries to be applied as

specified in this Agreement and the Plan.

        B.    All of the Debtors' and Committee's right, title and interest in and

to the Trust Assets are automatically vested in the Trust on the Effective Date, free and clear of

all liens, claims, encumbrances and other interests, and such transfer is on behalf of the

Beneficiaries (whether such Beneficiaries' claims are Allowed Claims on or after the Effective

Date) to establish the Trust. By executing this Agreement, the Trustee hereby accepts all of such

property as Trust Assets, to be held in trust for the Beneficiaries, subject to the terms of this

Agreement and the Plan.

        C.    For all federal income tax purposes, the Beneficiaries, the Trustee

and the Trust shall treat the Trust as a liquidating trust within the meaning of Treasury Income

Tax Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124 and

transfer of the Trust Assets to the Trust shall be treated as a transfer of the Trust Assets by the

Debtors and the Committee to the Beneficiaries in satisfaction of their Allowed Claims, followed

by a transfer of the Trust Assets by the Beneficiaries to the Trust in exchange for their beneficial

interests in the Trust. The Beneficiaries shall be treated as the grantors and owners of the Trust

for federal income tax purposes.

2.3     Valuation of Trust Assets.  After the Effective Date, but in no event later than the

due date for timely filing of the Trust's first federal income tax return (taking into account

applicable tax filing extensions), the Trustee shall (a) determine the fair market value of the Trust

Assets as of the Effective Date, based on his good faith determination, and (b) establish

appropriate means to apprise the Beneficiaries of such valuation.  The valuation shall be used

consistently by all parties (including, without limitation, the Trust, the Trustee and the

Beneficiaries) for all federal income tax purposes.

### ARTICLE III

### ADMINISTRATION OF THE TRUST

3.1     Rights. Powers and Privileges.  The Trustee shall have the rights, powers and

privileges expressly provided to the Trustee in this Agreement.  The Trustee shall not take any

action which is inconsistent with this Agreement or the Plan.  Without limiting the foregoing and

without being subject to the Order of any court, including, but not limited to, the Bankruptcy

Court, the Trustee shall have the power to take any and all actions consistent with the terms of

the Plan in addition to the powers granted in the Plan, and any powers reasonably incidental

thereto, which the Trustee, in its reasonable discretion, deems necessary or appropriate to fulfill

the liquidating purpose of the Trust, including, without limitation, the following:

A.     hold legal title to any and all rights of the Committee and the

Beneficiaries in or arising from the Trust Assets;

B.     in reliance upon Debtors' schedules (the "Schedules") and the

official claims register maintained in the Chapter 11 Cases, maintain on the Trustee's books and

records a register evidencing the beneficial interest herein held by each Beneficiary;

C.      protect and enforce the rights to the Trust Assets vested in the

Trustee by this Agreement by any method deemed appropriate, including, without limitation, by

judicial proceedings or otherwise;

D.      make all distributions to the Beneficiaries;

E.      establish reserves for Disputed Claims;

F.      open and maintain bank accounts on behalf of or in the name of the

Trust;

G.      make all tax withholdings, file tax information returns, make tax

elections by and on behalf of the Trust and file tax returns for the Trust as a grantor trust under

IRC Section 671 and Treasury Income Tax Regulation Section 1.671-4 in accordance with

Article 7.9 hereof;

H.      send annually to each Beneficiary a separate statement stating the

Beneficiary's share of the Trust's income, gain, loss, deduction or credit, and instruct all such

Beneficiaries to report such items on their federal tax returns;

I.      establish such reserves for taxes, assessments and other expenses

of administration of the Trust as may be necessary and appropriate for the proper operation of

matters incident to the Trust;

J.      pay all expenses and make all other payments relating to the Trust

Assets;

K.      retain and pay third parties and professionals pursuant to Article

3.2 of this Trust;

L.      carry insurance coverage and/or obtain a bond as an expense of the

Trust;

M.    exercise all powers provided under the Plan, including the right to object to and settle objections to Claims;

N.    invest any moneys held as part of the Trust Assets in accordance with the terms of Article 3.4 hereof;

O.    reconciliation of and objections to Claims to the extent necessary; and

P.    investigate and pursue Creditor Trust Causes of Action, if applicable.

3.2    Agents and Professionals.  The Trustee may, but shall not be required to, consult with and retain attorneys, accountants, appraisers, or other parties deemed by the Trustee to have qualifications necessary to assist in the proper administration of the Trust.  The Trustee may pay the reasonable salaries, fees and expenses of such persons out of the Trust Assets in the ordinary course of business.

3.3    Abandonment of Trust Assets.  If, in the Trustee's reasonable judgment, any Trust Asset cannot be sold or distributed in a commercially reasonable manner or the Trustee believes in good faith that such property has inconsequential value to the Trust or its Beneficiaries or determines to be too impractical to distribute to Beneficiaries, the Trustee shall have the right to cause the Trust to abandon or otherwise dispose of such property, including by donation of such property to a charity.

3.4    Investment and Safekeeping of Trust Assets.  All moneys and other assets received by the Trustee from the Trust Assets or proceeds thereof after payment of expenses shall, until distributed or paid over as provided herein, be held in trust for the benefit of the Beneficiaries, but need not be segregated from other Trust Assets, unless, and then only to the

-7-

extent, required by law.  The Trustee shall be under no liability for interest or producing income

on any moneys received by it hereunder and held for distribution or payment to the Beneficiaries,

except as such interest shall actually be received by the Trustee, which shall be distributed as

provided in this Agreement.  All cash held by the Trust that are Trust Assets shall be held in

FDIC-insured institutions.  The powers of the Trustee to invest any moneys held by the Trustee,

other than those powers reasonably necessary to maintain the value of the assets and to further

the Trust's liquidating purpose, shall be limited to powers to invest in demand and time deposits,

such as short-term certificates of deposit, in banks or other FDIC-insured savings institutions, or

other temporary liquid government-backed investments, such as treasury bills.

    3.5   Tax Treatment of Reserves for Disputed Claims.  The Trustee may, in the

Trustee's sole discretion, determine the best way to report for tax purposes with respect to any

reserve for any disputed claims ("Disputed Claims") of Beneficiaries, including, but not limited

to, (i) filing a tax election to treat any and all reserves for Disputed Claims as a Disputed

Ownership Fund ("DOF") within the meaning of Treasury Income Tax Regulation Section

1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the Trust or

(ii) electing to report as a separate trust or sub-trust or other entity.  If an election is made to

report any reserve for Disputed Claims as a DOF, the Trust shall comply with all federal and

state tax reporting and tax compliance requirements of the DOF, including, but not limited to, the

filing of a separate federal tax return for the DOF and the payment of federal and/or state income

tax due.

## ARTICLE IV

## DISTRIBUTIONS FROM THE TRUST

4.1     <u>Timing of Distributions</u>.  Distributions to the Beneficiaries will be made from the

Trust as soon as practicable after the Effective Date.

4.2     <u>Entitlement to Distributions</u>.  Each Beneficiary shall be required to provide either

a Social Security Number or a Tax Identification Number to the Trustee to the extent required by

the Internal Revenue Code or other applicable tax law prior to the Trustee or the Trust being

under any obligation to make a distribution to such Beneficiary.  Any Beneficiary that does not

provide a Social Security Number or a Tax Identification Number to the Trustee within ninety

(90) days of a written request, which request shall be mailed to the address on the Debtors'

schedules or filed proof of claim, for such number from any Beneficiary shall be forever barred

from receiving a distribution from the Trust Assets, and the Trustee shall have no liability to any

such Beneficiary for withholding a distribution to any Beneficiary that does not provide a Social

Security Number or a Tax Identification Number to the Trustee within ninety (90) days of a

request for such number.

4.3     <u>Withholding from Distributions</u>.  The Trustee may withhold from amounts

distributable to any Beneficiary any and all amounts, determined in the Trustee's reasonable sole

discretion, to be required by any law, regulation, rule, ruling, directive or other governmental

requirement.

4.4     <u>Undeliverable Distributions</u>.  Under the terms set forth in Article XIV of the Plan,

under certain circumstances as described in the Plan, undeliverable or unclaimed distributions

shall become the property of the Trust free of any restrictions thereon and notwithstanding any

federal or state escheat laws to the contrary and shall be distributed in accordance with the terms

of the Plan and this Agreement.

4.5    Creditor Trust Expenses. The Trustee must pay the Creditor Trust Expenses of

the Trust before approving distributions to or for the benefit of the Beneficiaries.

## ARTICLE V

## BENEFICIARIES

5.1    Interest Beneficial Only. The ownership of a beneficial interest in the Trust shall

not entitle any Beneficiary to any title in or to the Trust Assets or to any right to call for a

partition or division of such assets or to require an accounting, except as specifically provided

herein.

5.2    Ownership of Beneficial Interests Hereunder. Each Beneficiary shall own a

beneficial interest herein equal in proportion to the pro rata share of such Beneficiary's Allowed

Claim.

5.3    Evidence of Beneficial Interest. Ownership of a beneficial interest in the Trust

Assets shall not be evidenced by any certificate, security, or receipt or in any other form or

manner whatsoever, except as maintained on the books and records of the Trust by the Trustee.

5.4    Delivery of Distributions. Distributions to holders of Allowed Claims shall be

made by the Trustee (a) at the addresses set forth on the proofs of claim filed by such holders, (b)

at the addresses set forth in any written notices of address changes delivered to the Trustee after

the date of any related proof of claim, including the W-9 form, (c) at the addresses reflected in

the Debtors' Schedules if no proof of claim has been filed and the Trustee has not received a

written notice of a change of address, (d) at the addresses set forth in the other records of the

Debtors or the Trustee at the time of the distribution or (e) in the case of the holder of an

Allowed Claim that is governed by an agreement and is administered by an agent or servicer, at

the addresses contained in the official records of such agent or servicer.

## ARTICLE VI

### THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1     Parties Dealing With the Trustee.  In the absence of actual knowledge to the

contrary, any person dealing with the Trust or the Trustee shall be entitled to rely on the

authority of the Trustee or any of the Trustee's agents to act in connection with the Trust Assets.

There is no obligation on any Person dealing with the Trustee to inquire into the validity or

expediency or propriety of any transaction by the Trustee or any agent of the Trustee.

6.2     Limitation of Trustee's Liability.  Anything herein to the contrary

notwithstanding, in exercising its rights, duties and obligations under this Trust, the Trustee shall

act in good faith and use its best efforts to properly manage the Trust and protect the interests of

all the Beneficiaries; but the Trustee shall not incur any responsibility or liability by reason of

any error of law or of any matter or thing done or suffered or omitted to be done under this

Agreement, except to the extent that the same constitutes fraud, gross negligence or willful

misconduct by the Trustee.

6.3     Indemnification. The Trustee and its accountants and professionals (collectively,

the "Indemnified Parties" and each an "Indemnified Party") shall be indemnified and receive

reimbursement from and against any and all loss, liability, expense (including counsel fees) or

damage of any kind, type or nature, which the Indemnified Parties may incur or sustain in the

exercise and performance of any of the Trustee's powers and duties under this Agreement, or in

the rendering of services by Indemnified Party to the Trustee, to the full extent permitted by applicable law, except if such loss, liability, expense or damage is finally determined by a court of competent jurisdiction to result from the Trustee's or an Indemnified Person's fraud, gross negligence or willful misconduct. The amounts necessary for such indemnification and reimbursement shall be paid by the Trustee out of the Trust Assets. The Trustee shall not be personally liable for the payment of any Trust expense or claim or other liability of the Trust, and no person shall look to the Indemnified Parties personally for the payment of any such expense or liability. This indemnification shall survive the death, dissolution, resignation or removal, as may be applicable, of the Trustee, or the termination of the Trust, and shall inure to the benefit of the Trustee's and the Indemnified Party's heirs and assigns.

## ARTICLE VII
## SELECTION, REMOVAL AND COMPENSATION OF TRUSTEE

7.1     Initial Trustee.  The initial Trustee shall be Amanda Demby of Province, Inc.

7.2     Term of Service.  The Trustee shall serve until (a) the completion of all the Trustee's duties, responsibilities and obligations under this Agreement; (b) termination of the Trust in accordance with the terms of this Agreement; or (c) the Trustee's resignation, death, incapacity or removal.

7.3     Removal of Trustee.  Any person serving as Trustee may be removed at any time for cause by order of the Bankruptcy Court, if the bankruptcy cases of the Debtors are still open, or thereafter, by majority vote of the Committee members in existence as of the Effective Date.

7.4     Resignation of Trustee.  The Trustee may resign at any time. In the event of a resignation, the resigning Trustee shall render to the Beneficiaries a full and complete accounting

of monies and assets received, disbursed, and held during the term of office of that Trustee. The

resignation shall be effective on the later of (i) the date specified in the notice delivered to the

Bankruptcy Court; (ii) the date that is thirty days (30) after the date such notice is delivered; or

(iii) the date the accounting described in the preceding sentence is transmitted to the

Beneficiaries by first class mail, postage pre-paid. In the event of any resignation or termination

of the initial Trustee, the Trustee shall be entitled to any fees and expenses due for services

rendered.

7.5    Appointment of Successor Trustee. Upon the resignation, death, incapacity, or

removal of a Trustee, the members of the Committee as in existence immediately before the

Effective Date shall have the right to seek appointment of a Successor Trustee or the Bankruptcy

Court may appoint a Successor Trustee. Any Successor Trustee so appointed shall consent to

and accept in writing the terms of this Agreement and agree that the provisions of this

Agreement shall be binding upon and inure to the benefit of the Successor Trustee and all of his

heirs and legal and personal representatives, successors or assigns.

7.6    Powers and Duties of Successor Trustee. A Successor Trustee shall have all the

rights, privileges, powers, and duties of his predecessor under this Agreement.

7.7    Trust Continuance. The resignation, death, incapacitation or removal of the

Trustee shall not terminate the Trust or revoke any existing agency created pursuant to this

Agreement or invalidate any action theretofore taken by the Trustee. In the event that a

Successor Trustee is not appointed when required under this Agreement, the Bankruptcy Court

shall appoint a Successor Trustee.

7.8    Compensation of the Trustee and Costs of Administration. The Trustee shall

receive reasonable compensation for the Trustee's services, which shall be a charge against and

-13-

paid out of the Trust Assets. Initially, the Trustee shall be paid a flat rate of $5,000 per month

for the first six months and thereafter $2,500 per month for the Trustee's services. All

reasonable costs, expenses, and obligations incurred by the Trustee (or professionals who may be

employed by the Trustee in administering the Trust, in carrying out their other responsibilities

under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid by

the Trustee from the Trust Assets prior to any distribution to the Beneficiaries.

 7.9    Annual Reporting and Filing Requirements.

         A.    Within sixty (60) days after the filing of its annual tax returns, the

Trustee shall furnish a report to the Beneficiaries of all assets received by the Trust, all assets

disbursed to Beneficiaries, and all assets held by the Trust during the preceding calendar year.

         B.    Pursuant to and in accordance with the terms of this Agreement,

the Trustee shall file tax returns for the Trust as a grantor trust pursuant to Treasury Income Tax

Regulation Section 1.671-4(a). Notwithstanding the above, the Trustee shall have no obligation

nor responsibility to address, file reports related to, or otherwise resolve Tax issues of the

Debtors.


## ARTICLE VIII

### MAINTENANCE OF RECORDS

 8.1    The Trustee shall maintain books and records containing a description of all

property from time to time constituting the Trust Assets, the management thereof, all

transactions undertaken by the Trustee, all expenses incurred by or on behalf of the Trust, and all

disbursements. Said books shall be open to inspection by any Beneficiary at any reasonable time

at the offices of the Trustee, or such other location identified by the Trustee, during normal

business hours. At the sole discretion of the Trustee, the Trust's books and records may be destroyed at the termination of the Trust upon at least 90 days' prior notice to parties in interest.

## ARTICLE IX

## DURATION OF TRUST

9.1     Duration. The Trust shall become effective upon the Effective Date. Thereupon, the Trust and its provisions herein shall remain and continue in full force and effect until the Trust is terminated.

9.2     Termination Upon Distribution of All Trust Assets. Upon the payment of all costs, expenses, and obligations incurred in connection with administering the Trust, and the distribution of all remaining Trust Assets in accordance with this Agreement, the Trust shall terminate and the Trustee shall have no further responsibility in connection therewith except as may be required to effectuate such termination under relevant law.

9.3     Termination After Five Years. If the Trust has not been previously terminated pursuant to Article 9.2 hereof, on the fifth (5th) anniversary of the Effective Date, and unless the Trust term has been otherwise extended by the Bankruptcy Court (such extension to be approved by the Bankruptcy Court within six (6) months of the beginning of the extended term), the Trustee shall distribute all of the Trust Assets to the Beneficiaries in accordance with this Agreement and immediately thereafter the Trust shall terminate and the Trustee shall have no further responsibility in connection therewith.

## ARTICLE X

### MISCELLANEOUS

10.1    <u>United States Trustee Fees</u>. The Debtors shall be responsible for paying any fees

payable to the Office of the United States Trustee as required by 28 U.S.C. § 1930(a)(6) for the

initial transfers of the Trust Assets by the Debtors' estates into the Trust through the Effective

Date, and thereafter, the Trust shall be responsible for the payment of any fees under 28 U.S.C. §

1930(a)(6) on account of any additional distributions made by the Trust to Beneficiaries after the

Effective Date.

10.2    <u>Limitation on Transferability</u>. It is understood and agreed that the beneficial

interests herein shall be non-assignable during the term of this Agreement except by operation of

law. An assignment by operation of law shall not be effective unless and until appropriate

notification and proof thereof is submitted to the Trustee, and the Trustee may continue to pay all

amounts to or for the benefit of the assigning Beneficiaries until receipt of proper notification

and proof of assignment by operation of law. The Trustee may rely upon such proof without the

requirement of any further investigation.

10.3    <u>Notices</u>. All notices to be given to Beneficiaries may be given by ordinary mail,

or may be delivered personally, to the Holders at the addresses appearing on the books kept by

the Trustee. Any notice or other communication which may be or is required to be given, served,

or sent to the Trustee shall be in writing and shall be sent by registered or certified United States

mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if

receipt is confirmed) addressed as follows:

If to the Trust:

Amanda Demby
Province, Inc.
17000 Ventura Blvd., Suite 300
Encino, CA 91316

or to such other address as may from time to time be provided in written notice by the Trustee.

10.4    Bond/Insurance.  The Trustee shall not be required to post a bond or provide proof of insurance but if in the Trustee's judgment such bond or insurance is required, the Trustee is authorized to use the Trust's cash on hand to pay the premiums on such bond and/or insurance.

10.5    Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

10.6    Successors and Assigns.  This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns.

10.7    No execution.  All funds in the Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish or attach the Trust Assets or the Trustee in any manner or compel payment from the Trust except by final order of the Bankruptcy Court. Payments will be solely governed by this Agreement and the Plan.

10.8    Amendment.  This Agreement may be amended only by order of the Bankruptcy Court.

10.9    Severability.  If any term, provision covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants

and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

10.10   <u>Counterparts</u>.  This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have executed this Agreement (or are deemed to have so executed this Agreement) as of the day and year written above.

**Marbles Holdings, LLC**
**Marbles LLC**
**Marbles Brain Workshop, LLC**

By:_____
Name:
Title:


**Province, Inc.**

By:_____
Name: Amanda Demby
Title:  Managing Director – Trust Practice


**Official Committee of Unsecured
Creditors of Marbles Holdings, LLC, et
al.**

By: _____
Name:
Title:  Solely in its capacity as Committee
Co-Chair and not in its individual capacity

# Exhibit B to Order Approving Disclosure Statement and Confirming Joint Liquidating Plan

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MARBLES HOLDINGS, LLC, et al.,[1] | ) | Case No. 17-03309 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Honorable Timothy A. Barnes |
| | ) | |
| | ) | |

## NOTICE OF (A) CONFIRMATION; (B) EFFECTIVE DATE; AND (C) BAR DATES FOR FILING ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, AND REJECTION CLAIMS

### PLEASE TAKE NOTICE THAT:

1. **Confirmation of the Plan.** On August \_\_\_, 2017 (the "**Confirmation Date**"), the Joint Liquidating Plan (the "**Plan**")[2] of Marbles Holdings, LLC ("**Holdings**"), Marbles LLC ("**Marbles**") and Marbles Brain Workshop, LLC ("**Workshop**"), debtors and debtors-in possession herein (the "**Debtors**"), and the Official Committee of Unsecured Creditors (the "**Committee**," and together with the Debtors, the "**Plan Proponents**") was confirmed by order of the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "**Bankruptcy Court**") [Docket No. \_\_\_] (the "**Confirmation Order**"), in the above-captioned jointly-administered chapter 11 cases (the "**Chapter 11 Cases**"). The Confirmation Order approves the Plan. Copies of the Confirmation Order, which attaches the Plan as Exhibit A, are available on the website hosted by Garden City Group, LLC ("**GCG**"), the Debtors' solicitation, claims and noticing agent, at http://cases.gardencitygroup.com/mhg/key.php, the Bankruptcy Court's docket, or upon written request to the undersigned counsel.

2. **Effective Date.** Except as otherwise provided by subsequent written notice by the Plan Proponents prior to September \_\_\_, 2017, in accordance with Section 11.02 of the Plan, the "**Effective Date**" of the Plan shall be September \_\_\_, 2017.

3. **Claims Bar Dates.**

   a. **Administrative Expense Claims.** Any request ("**Admin Request(s)**") for payment of an Administrative Expense Claim that first arose or accrued as, to,

---

[1] The debtors in these Chapter 11 cases, along with the last four digits of each debtor's federal taxpayer identification number, are (i) Marbles Holdings, LLC (9547); (ii) Marbles LLC (3081); and (iii) Marbles Brain Workshop, LLC (0303).

[2] Capitalized but undefined terms shall have the meanings set forth in the Plan.

1

or against one or more of the Debtors <u>on or after August 5, 2017</u>,[3] shall, unless another order of the Bankruptcy Court provides for a different date, be filed with the Bankruptcy Court no later than thirty (30) days after the Confirmation Date – i.e., **on or before September      , 2017**. The Administrative Expense Claim of any creditor that fails to timely file an Admin Request shall be released, discharged, and forever barred from assertion against the Debtors, their Estates, the Creditor Trustee, the Creditor Trust, or any of their respective property or otherwise.

Admin Requests must (i) comply with 11 U.S.C. § 503, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the Local Rules for the United States Bankruptcy Court for the Northern District of Illinois (the "**Local Rules**"); (ii) include supporting documentation or an explanation as to why documentation is not available; (iii) set forth with specificity a description of the legal and factual bases for the Administrative Expense Claim; (iv) be in the English language; and (v) be denominated in United States currency. The Admin Request must be filed and noticed for a hearing pursuant to the Local Rules, on a date and time when the Bankruptcy Court normally hears chapter 11 motions or when other matters in the Chapter 11 Cases are scheduled to be heard by the Bankruptcy Court.

b. **Professional Fee Claims.**    All Professionals requesting payment of Professional Fee Claims shall file applications for payment no later than thirty (30) days after the Confirmation Date – i.e., **on or before September      , 2017**. Failure to file an application for allowance of such Professional Fee Claims by such date shall forever bar such Claims from assertion against the Debtors, their Estates, the Creditor Trustee, the Creditor Trust, or any of their respective property or otherwise. Applications for payment of Professional Fee Claims shall comply with any and all applicable Bankruptcy Rules and Local Rules. Any Professional seeking allowance of a Professional Fee Claim shall schedule a hearing on such matter for presentment before the Bankruptcy Court on October 24, 2017 at 11:00 a.m. (Central Time).

c. **Rejection Claims.**  To the extent an executory contract or unexpired lease has not been previously assumed or rejected in accordance with an order of the Bankruptcy Court, proofs of claim for any Claim(s) arising out of the rejection of an executory contract or unexpired lease pursuant to Section 7.01 of the Plan ("**Rejection Claim(s)**") must be filed in the Chapter 11 Cases by no later than thirty (30) days after the Confirmation Date – i.e., **on or before September      , 2017** (the "**Rejection Bar Date**"). Failure to file such Rejection Claims by the Rejection Bar Date shall forever bar such Claims from assertion against the Debtors, their Estates, the Creditor Trustee, the Creditor Trust, or any of their respective property or otherwise.

---

[3] A previous Bankruptcy Court-approved deadline for Admin Requests covered the date of the filing of the Chapter 11 Cases on February 3, 2017 (the "**Petition Date**") through and including August 4, 2017. *See* Docket No. 363 and related notice.

Each Rejection Claim must specifically set forth the full name of the applicable Debtor and the case number of the applicable Chapter 11 Case. The original Rejection Claim with signature must be received either (a) via first-class mail to Marbles Holdings, LLC, et al. c/o GCG, P.O. Box 10362, Dublin, OH 43017-5662, or (b) via hand delivery or overnight courier to Marbles Holdings, LLC et al., c/o GCG, 5151 Blazer Parkway, Suite A, Dublin, OH 43017, on or before the Rejection Bar Date. Further information regarding the requirements for filing a Rejection Claim can be found in that certain *Order Establishing Bar Dates for Filing Proofs of Claim of Prepetition Unsecured and Secured and § 503(b)(9) Administrative Expense Claims* [ECF No. 245], which, along with the Proof of Claim form to be used for any Rejection Claim, can be found on the website hosted by GCG: http://cases.gardencitygroup.com/mhg/key.php.

4.    **Dissolution of the Debtors.**    Pursuant to Section 8.04 of the Plan, on the Effective Date, the Debtors will be deemed dissolved for all purposes, without need of further court order, notice or action, and shall cease to exist as legal entities. The Confirmation Order contains a provision authorizing any applicable state agencies to register the Debtors as dissolved as of the Effective Date.

5.    **Dissolution of the Committee.**    Pursuant to Section 8.03 of the Plan, on the Effective Date, the Committee will be dissolved and its members deemed released from all their duties, responsibilities, and obligations in connection with the Chapter 11 Cases or the Plan and its implementation, and the retention or employment of the Committee's attorneys and other Professionals terminated.

6.    **Creditor Trustee.**    Pursuant to Section 9.03 of the Plan, on the Effective Date, the Creditor Trustee will be Amanda Demby of Province, Inc., 17000 Ventura Blvd, Suite 300, Encino, CA 91316.

7.    **Counsel to the Creditor Trustee.**    After the Effective Date, all inquiries should be directed to counsel for the Creditor Trustee, Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, De 19801, (302) 652-4100, Attn: Bradford J. Sandler, Maxim B. Litvak, and Shirley S. Cho, bsandler@pszjlaw.com, mlitvak@pszjlaw.com, scho@pszjlaw.com.

8.    **Notice.**    A copy of this Notice will be served by First-Class Mail, postage prepaid, to: (a) all Known Creditors[4]; (b) all holders of record of equity security interests in any of the

---

[4] "**Known Creditors**" are comprised of all persons or entities: (a) listed in any of the Debtors' most recently amended bankruptcy schedules ("**Schedules**") and statements of financial affairs as holding liquidated, non-contingent, and undisputed claims as of the Record Date ("**Scheduled**"), or their transferees in accordance with the solicitation and tabulation procedures in the Scheduling Order; (b) who have filed a proof of claim in any of the Chapter 11 Cases on or before the applicable Claims Bar Date, or their transferees in accordance with the procedures set forth below; (c) that are governmental parties listed in the Debtors' creditor matrices but have neither filed a proof of claim nor are Scheduled; (d) that are counterparties to unexpired leases and executory contracts who neither

Debtors; (c) the U.S. Securities and Exchange Commission; (d) the Office of the U.S. Trustee for the Northern District of Illinois; (e) counsel to the Committee; (f) counsel to Spin Master Ltd., the Debtors' pre- and postpetition secured lender; and (g) all other parties who have requested notice and service of pleadings in the Chapter 11 Cases. A copy of this Notice will also be available on the website hosted by GCG at http://cases.gardencitygroup.com/mhg/info.php.

Dated: August ___, 2017

By: /s/ _____

Adam P. Silverman, Esq.
Erich S. Buck, Esq.
Adelman & Gettleman, Ltd.
53 West Jackson Blvd, Suite 1050
Chicago, Illinois 60604
Tel: (312) 435-1050
Fax: (312) 435-1059
*Counsel for the Debtors*

By: /s/ _____

Bradford J. Sandler, Esq.
Maxim B. Litvak, Esq.
Shirley S. Cho, Esq.
Pachulski Stang Ziehl & Jones LLP
919 N. Market Street, 17th Floor
Wilmington, De 19801
Tel: (302) 652-4100
Fax: (302) 652-4400

- and –

Shelly A. DeRousse, Esq.
Devon J. Eggert, Esq.
Freeborn & Peters LLP
311 South Wacker Drive, Suite 3000
Chicago, Il 60606
Tel: (312) 360-6000
Fax: (312) 360-6520
*Counsel for the Committee*

---

filed a proof of claim nor are Scheduled on the Debtors' Schedules F; and (e) any other creditors with whom the Debtors did business after the Petition Date and may therefore hold postpetition administrative expense claims.